Lawrence J. Gornick (SBN 136290)
Dennis J. Canty (SBN 207978 )
**KAISER GORNICK LLP**
100 First St., 25th Floor
San Francisco, CA  94105
Telephone:  (415) 857-7470
Fax:  (415) 857-7499
lgornick@kaisergornick.com
dcanty@kaisergornick.com

Attorneys for Plaintiff

E-filing

FILED

MAR 1 6 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

C12-01311

JEFFREY A. KAISER,

                    Plaintiff,

    vs.

BMW OF NORTH AMERICA, LLC,

                Defendant.

Case No:

**COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL**

Plaintiff alleges as follows:

**PARTIES AND JURISDICTION**

1.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      Plaintiff Jeffrey A. Kaiser ("Plaintiff") is a resident of California.  Defendant BMW of North America, LLC ("Defendant") is a limited liability company organized and existing under the laws of Delaware and having its principal place of business in New Jersey.

3.      This court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the action alleges claims pursuant to 15 U.S.C. § 2310.  The Court has jurisdiction over the supplemental state law claims pursuant to 28 U.S.C. § 1367.

4.      At all relevant times, Defendant conducted regular business in the Northern District of California, and is therefore subject to personal jurisdiction within this District pursuant to 28 U.S.C. § 1391(c).

## BACKGROUND

5.      On or about July 12, 2008, Plaintiff purchased a new BMW 335i automobile from the BMW dealership in Concord, CA (the "Vehicle"). The total purchase price of the car, including tax and registration, was $59,219.33, which was financed through BMW.

6.      In connection with Plaintiff's purchase of the Vehicle, he received an express written warranty in which Defendant undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time.  The warranty provides, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired.

7.      On or about November 6, 2009, with 10,759 miles on the Vehicle, during the warranty period, Plaintiff brought the Vehicle to the Concord, CA BMW dealer after the electronic warning system indicated a problem with the restraint system.  Although repairs were attempted, the electronic warning system continued to indicate problems with the restraint system, resulting in repair attempts for the same nonconformity on April 5, 2010, July 26, 2010, September 4, 2010, and November 16, 2010.

8.      When the restraint system again malfunctioned following the fifth repair attempt, Plaintiff decided to pursue his remedies under California Civil Code §1793.22.

9.      On August 2, 2011 Defendant sent Plaintiff an agreement offering to repurchase the Vehicle for $56,089.62, which included a cash payment and direct payment of the financing balance. This price was calculated using the formula provided by Civil Code Section 1793.2(d)(2).  The

- 2 -

original purchase price was reduced by an amount calculated using the statutory formula of dividing 10,759 miles before the first reported incident by 120,000. This resulted in a $4,864.41 reduction and the repurchase offer of $56,089.62, which Plaintiff accepted.

10. On August 4, 2011, in preparation for the Vehicle repurchase, Plaintiff purchased a 2011 BMW 335i. The total purchase price, including tax and license, was approximately $57,000.

11. Because of the restraint system defect in the Vehicle, Plaintiff has not driven it since August 4, 2011 except as part of his effort to have the Vehicle repurchased by Defendant. However, because of the repurchase dispute with Defendant, Plaintiff continues to make monthly finance payments on the Vehicle in addition to paying for the replacement BMW car.

12. On September 8, 2011, as directed by Defendant, Plaintiff brought the Vehicle to BMW Concord to be repurchased, but was informed by Defendant's agent that the agreed to repurchase price would be further reduced by $3,224.34 to account for "excessive wear and tear". Plaintiff objected that such further reduction was not allowed under Civil Code Section 1793.2 as applied by the California Court of Appeal in *Jiagbogu v. Mercedes-Benz USA* (2004), 118 Cal.App.4th 1235, 1243. Defendant insisted on the further reduction so the repurchase was not completed and Plaintiff maintained possession of the Vehicle.

13. Pursuant to California Civil Code §1793.22(c), to maintain all of his legal rights in a lawsuit relating to Civil Code §1793.2(d), a consumer must first arbitrate any dispute if a "qualified third-party dispute resolution process" exists. Civil Code §1793.22(d)(5) states that a "qualified third-party dispute resolution process shall be one that does **all** of the following" nine requirements, including number 5, which "Requires that the manufacturer, when the process orders, under the terms of this chapter, either that the nonconforming motor vehicle be replaced if the buyer consents to this remedy or that restitution be made to the buyer, to replace the motor vehicle or **make restitution in accordance with paragraph (2) or subdivision (d) of Section 1793.2.**" (emphasis added)

14.     California Civil Code §1793.2(d)(2) provides that, when restitution is paid, the buyer is only liable "to pay the manufacturer an amount directly attributable to use by the buyer of the replaced vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity".   §1793.2(d)(2)(C) further provides that "The amount directly attributable to use by the buyer shall be determined by multiplying the actual price of the new motor vehicle paid or payable by the buyer . . . by a fraction having as its denominator 120,000 and having as its numerator the number of miles travelled by  the new motor vehicle prior to the time the buyer first delivered the vehicle . . . for correction of the problem that gave rise to the nonconformity."

15.     The formula detailed in the paragraph above is the one that BMW used to calculate the original $56,089.62 repurchase price contained in the August 2, 2011 offer to Plaintiff.

16.     On November 3, 2011 the dispute between Plaintiff and Defendant regarding the terms of the Vehicle repurchase was arbitrated before a Better Business Bureau ("BBB") Arbitrator in Oakland, CA.   The BBB AUTO LINE holds itself out as a "qualified third-party dispute resolution process" for BMW in California.

17.     Plaintiff presented the Arbitrator with legal authority establishing that the only reduction to the original purchase price allowed under Civil Code §1793.2 was the mileage before first reported incident.  In particular Plaintiff cited to *Jiagbogu v. Mercedes-Benz* (2004) 118 Cal.App.4th 1235,1243:

> Section 1793.2, subdivision (d)(2)(C), and (d)(2)(A) and (B) to which it refers, comprehensively addresses replacement and restitution; specified predelivery offset; sales and use taxes; license, registration, or other fees; repair, towing, and rental costs; and other incidental damages. None contains any language authorizing an offset in any situation other than the one specified. This omission of other offsets from a set of provisions that thoroughly cover other relevant costs indicates legislative intent to exclude such offsets.  (See *Gikas v. Zolin* (1993) 6 Cal.4th 841, 853 [25 Cal. Rptr. 2d 500, 863 P.2d 745].)

18.     On November 14, 2011 the BBB Arbitrator issued his decision, stating: "The manufacturer argued at the arbitration that it is entitled to deduct from the repurchase price the costs to repair or replace those items referenced under the BBB AUTO LINE rules in California since Mr. Kaiser has submitted this dispute to the BBB Auto Line and is obligated to abide by the rules of the BBB AUTO Line".

19.     The Arbitrator then concluded that BMW was allowed to take the further deductions they sought because of Rule 3(F) of the BBB AUTO LINE rules for California, which states "If a repurchase or replacement is awarded, the consumer will be required to turn over the vehicle and provide clear title to the manufacturer. The manufacturer may deduct for any vehicle damages exceeding normal wear and tear that is not caused by the vehicle's nonconformities."

20.     By adding a rule that allows for deduction of wear and tear that is not in accordance with Civil Code §1793.2 (d)(2), the BMW/BBB arbitration process does not meet the requirement of §1793.22(d)(5) and is therefore not a "qualified third-party dispute resolution process". This is true regardless of whether the BBB maintains certification by the Department of Consumer Affairs pursuant to Civil Code §1793.22(d)(9).

21.     On December 16, 2011 Plaintiff notified the BBB AUTO LINE that he was declining the Arbitration Decision.

22.     On December 22, 2011 BMW sent an offer to repurchase the Vehicle for a total price of $52,865.28, which was calculated by reducing the statutory repurchase price of $56,089.62 by a "damage reduction" of $3,224.34.

23.     On December 23, 2011 Plaintiff rejected the offer and requested that Defendant provide the California statutory or case law that it believes allows a further reduction for damage under Civil Code §1793.2.

24.     On January 3, 2012 Defendant responded to Plaintiff, stating "You had the BBB represent you in this case and we followed their ruling."

25.     On February 1, 2012 Plaintiff's counsel wrote to Defendant stating:  "Mr. Kaiser has rejected the Repurchase Agreement BMW proposed last year and has also rejected the BBB arbitration decision.  He demands that BMW repurchase his car in strict conformity with California Civil Code section 1793.2."

26.     In the February 1, 2012 correspondence Plaintiff's counsel referenced the holding in *Jiagbogu v. Mercedes-Benz USA* (2004), 118 Cal.App.4th 1235 and also referenced the decision in *Gezalyan v. BMW* (2010) 697 F.Supp.2d 1168, 1170 where the court held that BMW had conditioned repurchase of a car under the Song-Beverly Act on "numerous conditions not authorized by the Act", including charges to "repair any physical damage to the car".

27.     Based on the provisions of Civil Code §1793.22(d)(5) and the holdings in  the *Jiagbogu* and *Gezalyan* cases, Plaintiff's counsel stated in the February 1, 2012 letter to Defendant that its refusal to repurchase the Vehicle without further deductions was a willful violation of the Act and subjects Defendant to civil penalties of two times the actual damages under Civil Code §1794(c).

28.     In the closing paragraph of the February 1, 2011 letter counsel requested that Defendant provide any legal authority that it believes allows a wear and tear deduction.  As of the date of this Complaint Defendant has not responded to the letter.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT

### California Civil Code §1794

29.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

30.     The provisions of Civil Code §1793.2 existed at the time Defendant gave an express warranty on the Vehicle and those provisions were incorporated into the terms of the express warranty by operation of California law.  Accordingly, Defendant's violation of §1793.2 was a breach of warranty.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

31.     As detailed above, the Vehicle had a nonconformity covered by the express warranty that substantially impaired use of the Vehicle and the Vehicle was presented to Defendant's dealer for repair of the nonconformity on five occasions, but the Defendant was unable to repair the nonconformity.

32.     Defendant has acknowledged, prior to, during, and after an arbitration with Plaintiff, its obligation to repurchase the Vehicle based on failure to repair the nonconformity.  Defendant has further acknowledged that under the calculations set forth in California Civil Code §§ 1793.2(d), the repurchase price should be $56,089.62.

33.     Defendant is aware, including from the court holding in *Jiagbogu v. Mercedes-Benz USA* (2004), 118 Cal.App.4th 1235, that deductions from the repurchase price beyond that specifically authorized in Civil Code §1793.2(d) are not allowed.

34.     Defendant is specifically aware from the court's holding in *Gezalyan v. BMW* (2010) 697 F.Supp.2d 1168, 1170, in which it was a party, that a deduction from the repurchase price to "repair any physical damage to the car" is not allowed.

35.     Despite this knowledge, Defendant has refused to make restitution in accordance with Civil Code §1793.2(d)(2) because Defendant insists that the repurchase price  of the Vehicle be reduced to account for cost to repair alleged physical damage to the Vehicle.

36.     Defendant's refusal to make restitution in accordance with Civil Code §1793.2(d)(2) is willful because it is not the result of a good faith and reasonable belief that the facts imposing the statutory obligation were not present. As such, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code §1794(c).

37.     Defendant maintains a dispute resolution process that is certified by the State of California pursuant to Civil Code §1793.22(d)(9).  However, to be a "qualified third-party dispute resolution process" under Civil Code §1793.22(d), the process must satisfy eight other conditions including §1793.22(d)(5), which requires that restitution be made in accordance with §1793.2(d)(2).

1    Because Defendant's dispute resolution process does not satisfy this condition, Plaintiff is also entitled

2    to civil penalties pursuant to §1794(e)(1), which does not require a showing of willfulness.

3      38. Pursuant to Civil Code §1793.2(2)(A), in addition to the statutory repurchase price of

4    $56,089.62 and civil penalties, Plaintiff is entitled to incidental damages, which include the fact that

5    Plaintiff purchased a replacement vehicle but still has made monthly payments on the unusable

6    Vehicle since repurchase was wrongly refused by Defendant on September 8, 2011.

7      39. Pursuant to Civil Code §1794 Plaintiff is entitled to his reasonable attorney's fees and

8
9    costs.

  WHEREFORE, Plaintiff prays for judgment against the Defendant as hereinafter set forth.

10

11   ### SECOND CLAIM FOR RELIEF

12   ### BREACH OF EXPRESS WARRANTY
     ### 15 U.S.C. §2310(d) and California Civil Code §1794.
13

14     40. Plaintiff incorporates by reference and realleges each paragraph set forth above.

15     41. In accordance with Defendant's warranty, and within a reasonable time, Plaintiff

16   brought the Vehicle on five occasions to Defendant's dealer in Concord, CA to perform warranty

17   repairs.   Each time Plaintiff delivered the Vehicle, he notified Defendant's dealer of the

18   characteristics of the problem.  However, each time the Defendant's dealer failed to adequately repair

19   the Vehicle, thereby breaching the terms of the written warranty on each occasion.

20
21     42. Plaintiff has been damaged by Defendant's failure to comply with its obligations under

22   the express warranty and therefore brings this claim pursuant to 15 U.S.C. §2310(d) and California

23   Civil Code §1794.

24     43. Defendant's failure to comply with its obligations under the express warranty were

25   willful, in that Defendant was aware of its obligation to adequately repair the Vehicle or repurchase

26   the Vehicle pursuant to Civil Code §1793.2 (d)(2), but it intentionally declined to fulfill that

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  obligation.  Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages

2  pursuant to Civil Code §1794(c).

3      44.    Defendant does not maintain an informal dispute resolution process for the purpose of

4  resolving claims for breach of express warranty claims that complies with the requirements of 15

5  U.S.C. §2310(a) and the rules and regulations adopted pursuant thereto by the Federal Trade

6  Commission.

7      WHEREFORE, Plaintiff prays for judgment against the Defendant as hereinafter set forth.

8  ### THIRD CLAIM FOR RELIEF

9
10 ### BREACH OF IMPLIED WARRANTY OF FITNESS AND MECHANTABILITY
   ### 15 U.S.C. §2310(d) and California Civil Code §1794.

11
12     45.    Plaintiff incorporates by reference and realleges each paragraph set forth above.

13     46.    Pursuant to 15 U.S.C. §2301 and Civil Code §§1792 and 1791.1, the sale of the Vehicle

14 was accompanied by Defendant's implied warranties of fitness and merchantability.  The duration of

15 the implied warranty is coextensive in duration with the express written warranty provided by

16 Defendant.

17     47.    The implied warranty means and includes that the Vehicle is fit for the ordinary

18 purposes for which such goods are used and will conform to the promises or affirmation of fact made

19
20 on the container or label.

21     48.    Plaintiff has been damaged by Defendant's failure to comply with its obligations under

22 the implied warranty and therefore brings this claim pursuant to 15 U.S.C. §2310(d) and Civil Code

23 §1794.

24     49.    Defendant does not maintain an informal dispute resolution process for the purpose of

25 resolving claims for breach of implied warranty claims that complies with the requirements of 15

26 U.S.C. §2310(a) and the rules and regulations adopted pursuant thereto by the Federal Trade

27
28 Commission.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff prays for relief as follows:

1.      Restitution damages pursuant to Civil Code §1793.2 as proven at trial;

2.      Incidental damages pursuant to Civil Code §1793.2 as proven at trial;

3.      Civil penalties pursuant to Civil Code §1794.

4.      Attorneys' fees, expenses, and costs pursuant to Civil Code §1794;

5.      Pre- and post-judgment interest; and

6.      Such further relief as this Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


Respectfully submitted this 15th day of March 2012.

KAISER GORNICK LLP

By: _____

LAWRENCE J. GORNICK
DENNIS J. CANTY

Attorneys for Plaintiff
JEFFREY A. KAISER

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL