1 | STEPHEN A. SCOTT (SBN 67467)
DARA M. TANG (SBN 231413)
2 | HAYES SCOTT BONINOELLINGSON & McLAY, LLP
203 Redwood Shores Pkwy., Ste. 480
3 | Redwood City, California 94065
Telephone: 650.637.9100
4 | Facsimile: 650.637.8071

5 | Attorneys for Defendant
COUNCIL OF BETTER BUSINESS BUREAUS, INC.

6

7

8 |                IN THE UNITED STATES DISTRICT COURT

9 |                 NORTHERN DISTRICT OF CALIFORNIA

10

11 | JEFFREY A. KAISER,                    CASE NO.  C 12-01311 DMR

12 |              Plaintiff,

13 |      v.                              DEFENDANT COUNCIL OF BETTER
                                         BUSINESS BUREAUS, INC.'S
14 | BMW OF NORTH AMERICA, LLC, and      REQUEST FOR JUDICIAL NOTICE IN
    COUNCIL OF BETTER BUSINESS           SUPPORT OF ITS MOTION TO
15 | BUREAUS, INC.,                       DISMISS THE SECOND AMENDED
                                         COMPLAINT
16 |              Defendants.
                                         Date:      December 20, 2012
17 |                                      Time:      11:00 a.m.
                                         Ctrm.:     4, 3rd Floor
18

19 |                    **REQUEST FOR JUDICIAL NOTICE**

20 |      Defendant Council of Better Business Bureaus, Inc. ("BBB") respectfully requests that the

21 | Court take judicial notice of the following documents attached as Exhibits A – C.

22 |      Exhibit A:  BBB AUTO LINE Arbitration Rules California

23 |      Exhibit B: BBB Customer Claim Form signed by Plaintiff

24 |      Exhibit C:  California Code of Regulations Title 16 Professional and Vocational

25 | Regulations Division 33.1 Article 1

26 |      Documents not physically attached to a complaint may nonetheless be considered by the

27 | court on a FRCP 12(b)(6) motion to dismiss if (1) the complaint refers to the document; (2) the

28 | document is "central" to the plaintiff's claim; and (3) no party questions the authenticity of the copy

1  attached to the FRCP 12(b)(6) motion. *See In re Calpine Corporation Securities Litigation* (N.D.

2  Cal. 2008) 288 F.Supp.2d 1054; *see also Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449,

3  453(overruled on other grounds in *Galbraith v. County of Santa Clara* (9th Cir. 2002) 307 F3d

4  1119, 1127.) Defendant may attach to a Rule 12(b)(6) motion the documents referred to in the

5  complaint to show that they do not support plaintiff's claim. *See Branch v. Tunnell*, supra at 454.

6  This prevents "a plaintiff with a legally deficient claim (from surviving) a motion to dismiss simply

7  by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v.*

8  *White Consolidated Industries, Inc.* (3rd Cir.1993) 998 F.2d 1192, 1196. Here, plaintiff references

9  both the BBB Auto Line Rules (Exhibit A) and the BBB Customer Claim Form (Exhibit B)

10  throughout the Second Amended Complaint. These two documents are central to the claims in the

11  Second Amended Complaint. There can be no dispute as to the authenticity of the two documents

12  as the BBB Auto Line Rules are available through its website, and the Customer Claim Form bears

13  plaintiff's signature.

14       Pursuant to Federal Rules of Evidence 201(b), the court may take notice of "a fact that is not

15  subject to reasonable dispute because it (1) is generally known within the trial court's territorial

16  jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

17  reasonably be questioned." Here, Exhibit C is the California Code of Regulations, Title 16,

18  Division 33.1, Article 1, and appropriate for judicial notice.

19  Dated:  October 31, 2012          HAYES, SCOTT, BONINO, ELLINGSON & McLAY, LLP

20

21                                    By:  *//S//* Stephen A. Scott
                                          STEPHEN A. SCOTT
22                                        DARA M. TANG
                                          Attorneys for Defendant
23                                        COUNCIL OF BETTER BUSINESS
                                          BUREAUS, INC.
24

25

26

27

28

# EXHIBIT A



The name Better Business Bureau is a registered service
mark of the Council of Better Business Bureaus, Inc.

© 2008. by the Council of Better Business Bureaus, Inc.
Arlington, VA

# TABLE OF CONTENTS (California)
## BBB AUTO LINE®

What is BBB AUTO LINE? .......................................................1

How do I contact BBB AUTO LINE? ..........................................1

When is my claim filed with BBB AUTO LINE? .............................1

Advising the company about your complaint ...............................1

Efforts to resolve the dispute by settlement ..............................2

What is arbitration? .............................................................2

Who is the arbitrator? ..........................................................2

Technical experts ...............................................................3

How to prepare for arbitration ...............................................3

What will happen at the hearing? ...........................................3

Testimony and evidence you should present ..............................4

Legal and equitable factors the arbitrator
will take into account .........................................................5

BBB AUTO LINE may request information
from manufacturer ............................................................5

Suggestions for preparing your case ......................................5

What to bring to the hearing .................................................6

In summary ......................................................................6

**B**

# BBB AUTO LINE ARBITRATION RULES
## (California)

1. Definitions ...................................................7

2. Jurisdiction of BBB AUTO LINE ...............7

3. Remedies that may be awarded in
   BBB AUTO LINE ........................................8

4. Selecting your arbitrator .........................10

5. Communicating with the arbitrator ........10

6. Qualifying the arbitrator .........................10

7. Your representative .................................11

8. Inspection by the arbitrator ....................11

9. Technical experts ....................................11

10. Hearing notice ..........................................11

11. Manner in which hearing is conducted ...........12

12. Attendance at hearings ..........................12

13. Your absence from the hearing ..............12

14. Record of hearing ...................................12

15. Oath of participants ................................13

16. Hearing procedures ................................13

17. Admission of evidence at the hearing ............14

18. Absentee statements/Documents for
    telephone hearings .................................14

19. Subpoenas ..............................................14

20. Post-hearing admission of evidence ........14

21. Settlement ...............................................15

22. Time limits ...............................................15

23. The decision ............................................15

24. Timely objections ....................................17

25. Confidentiality of records ........................17

26. Legal proceedings/exclusion of liability ........18

27. Complaints ..............................................18

28. Right to discontinue arbitration ..............18

    APPENDIX ................................................18

## WHAT IS BBB AUTO LINE?

BBB AUTO LINE is a dispute resolution program administered by the Better Business Bureau (BBB) system to settle automotive warranty disputes.

**BBB AUTO LINE does not charge a fee to consumers.** To protect impartiality, funding for staff and program administrative costs of BBB AUTO LINE are committed in advance by the participating manufacturers. BBB AUTO LINE staff and arbitrators are independent of manufacturers that participate in BBB AUTO LINE, and perform no duties for these manufacturers other than providing impartial dispute resolution services.

If you are experiencing a problem with your vehicle that has not been resolved to your satisfaction, this booklet will tell you about the BBB AUTO LINE program and how it can help resolve your dispute.

## HOW DO I CONTACT BBB AUTO LINE?

You can reach BBB AUTO LINE by calling 1.800.955.5100.

All documents, correspondence, notices and request for records should be directed to:

BBB AUTO LINE
Council of Better Business Bureaus
4200 Wilson Boulevard, Suite 800
Arlington, VA 22203-1838
Fax:  703.247.9700

## WHEN IS MY CLAIM FILED WITH BBB AUTO LINE?

Your case is officially filed with BBB AUTO LINE once you provide us with the following information:

• Your name and address

• The Vehicle Identification Number (VIN) of your vehicle

• The make, model and year of your vehicle

• A description of the problem with your vehicle

## ADVISING THE COMPANY ABOUT YOUR COMPLAINT

When we open your case, we will send a copy of your claim form to the manufacturer with whom you have a dispute.

## EFFORTS TO RESOLVE THE DISPUTE BY SETTLEMENT

The settlement process is voluntary, and you may proceed to arbitration at any point if your dispute falls within the program's jurisdiction. Please inform your Dispute Resolution Specialist if you do not wish to start or continue settlement discussions.

Upon receipt of the information about your case, a representative from the manufacturer may contact you to discuss settlement options.

You and the manufacturer representative may explore settlement options directly, or you may be assisted by a Dispute Resolution Specialist from BBB AUTO LINE.

The role of BBB AUTO LINE staff is to open communication between you and the manufacturer representative and to facilitate the exchange of offers. We will not comment on whether or not an offer made to you is "fair" or "unfair"; to do so would compromise our neutrality. Only you can decide whether an offer is satisfactory.

In some cases, a pre-hearing "settlement conference" will be held by telephone if all parties are willing to do so. During that telephone conference—which will include you, a manufacturer representative and a BBB AUTO LINE Dispute Resolution Specialist—you will discuss the specific vehicle problems that you wish to arbitrate, hear the

other party's position and explore possibilities for a mutually-agreed settlement of your claim.

If you and the manufacturer representative agree to a settlement, please inform your Dispute Resolution Specialist as soon as possible.

If a settlement is reached at any point, we will send a letter to both parties that summarizes the terms of the settlement. We will follow up with you within 10 days after the date of any action required by the settlement to confirm that the terms of the agreement were carried out.

## WHAT IS ARBITRATION?

Arbitration is an informal process in which two parties present their views of a dispute to an impartial third party, an arbitrator, who will decide how the dispute should be resolved.

## WHO IS THE ARBITRATOR?

BBB AUTO LINE arbitrators are persons from your community who are interested in the fair and expeditious resolution of consumer disputes. They are trained and certified by the Council of Better Business Bureaus.

2

## TECHNICAL EXPERTS

The arbitrator may ask to have an impartial technical expert examine your vehicle.

The consumer or the manufacturer may request that the arbitrator obtain the assistance of an impartial technical expert to inspect your vehicle either before or after the hearing. Requests for a pre-hearing impartial technical inspection must be made in writing and must be received by BBB AUTO LINE at least 10 days before the hearing.

If a request for an impartial technical expert is made prior to the hearing, the arbitrator will be provided with the request as well as all current case documents.

If the arbitrator determines that an impartial technical expert is needed, BBB AUTO LINE staff will make all necessary arrangements.

Whenever an impartial technical expert participates in the BBB AUTO LINE process, all parties will be given an opportunity to review and comment on the findings and credentials of the technical expert.

## HOW TO PREPARE FOR ARBITRATION

Before coming to your arbitration hearing, you should prepare an outline of your argument to help you in your presentation. You may want to use the suggestions at the end of this section to assist you in your preparation.

Also, before the hearing, you should prepare a list of questions you want to ask the manufacturer representative.

Prior to the hearing, you may receive documents and a position statement submitted by the manufacturer. Be sure to review these materials and prepare any questions you have about them.

The arbitrator will receive a copy of your *Customer Claim Form*. You should review a copy of that form before the hearing and be prepared to discuss all of the problems you have listed on it.

## WHAT WILL HAPPEN AT THE HEARING?

The arbitrator will determine the exact format of the hearing, which will include an opportunity for you to:

• State the facts as you see them

• Present documents and witnesses in support of your case

• Question witnesses who testify on behalf of the manufacturer

• Rebut any testimony or evidence presented by the manufacturer's representatives or witnesses

The manufacturer will be given the same

**3**

opportunity to present its case, question you and your witnesses and rebut testimony or evidence presented.

The arbitrator also will ask questions to clear up uncertain areas and to gain a fuller understanding of the dispute.

After each side has presented its case and the questioning is completed, you should be prepared to give a summary of your position, deal with any questions that have not been answered, and tell the arbitrator exactly what you think the decision should be and why.

Remember that the sole purpose of the hearing is to allow the arbitrator to gather and sort the facts in order to make a fair decision. You should be prepared to convince the arbitrator that your position is right.

A cooperative approach works best. You are there because you and the manufacturer have a disagreement, but keep that disagreement factual and within the bounds of normal courtesy and conventional language. Arbitrators may not have technical expertise, so your presentation may be more productive if you can use layman's terms to describe what happened to your vehicle.

Put yourself in the arbitrator's position—a person whose only purpose is to resolve your dispute. Use common sense and professional courtesy as you

4

proceed.

Note: You should arrange for an interpreter if that would help you present your case. If you cannot provide your own interpreter, contact your Dispute Resolution Specialist and we will try to find a volunteer interpreter.

TESTIMONY AND EVIDENCE YOU SHOULD PRESENT

During your presentation at the hearing you should provide testimony and evidence about the following:

• The problems you have experienced with your vehicle

• Why you believe the problems are the responsibility of the manufacturer

• Why you believe you have not contributed to the cause of the problems

• Why the problems represent a substantial impairment to the use, value or safety of your vehicle

• Whether the manufacturer and its dealers, agents or representatives have had a reasonable opportunity to repair your vehicle

## LEGAL AND EQUITABLE FACTORS THE ARBITRATOR WILL TAKE INTO ACCOUNT

In making a decision, the arbitrator will take into account all legal and equitable factors including the following:

- Your vehicle's written warranty
- Federal Trade Commission regulations set out in 16 C.F.R. Part 703
- Division 2 (starting with Section 2101 of the California Commercial Code)
- All provisions of the Song-Beverly Consumer Warranty Act [California Civil Code section 1790 et seq.]. This includes section 1793.2 (d), which is summarized in the appendix of this booklet
- Sections 43204 - 43205.5 of the California Health and Safety Code
- Sections 3396.1 - 3399.6 of the California Code of Regulations
- Any other equitable considerations appropriate in the circumstances

## BBB AUTO LINE MAY REQUEST INFORMATION FROM MANUFACTURER

BBB AUTO LINE staff will request from the manufacturer any pertinent documents in its possession or under its control, such as technical service bulletins, recall or parts replacement notices, U.S. Department of Transportation publications, a vehicle's repair history, and any other documents which it is reasonable that the manufacturer should provide.

BBB AUTO LINE staff will send you any documents submitted by the manufacturer prior to the hearing.

## SUGGESTIONS FOR PREPARING YOUR CASE

Organize your materials in the order you wish to present them. This will help you present your case clearly and logically. List all repair attempts to your vehicle and gather all repair orders that show what was done.

List all the times you spoke to the manufacturer and its dealers, agents or representatives about your vehicle's problems.

For each conversation, note:

- With whom you spoke
- The date of the conversation
- What you were told
- What, if any, actions or repair attempts were made as a result of the conversation

Contact potential witnesses—such as mechanics or sales personnel—and ask them to testify in person

or to submit written statements. Please remember that you are responsible for your witnesses' submission of information. If you want them to testify in person, keep them informed about the time and place of the hearing.

Gather all documents that support your case, including your repair orders, vehicle's maintenance records, etc.

## WHAT TO BRING TO THE HEARING

Collect and bring to the hearing all available materials relating to your vehicle's problems.

If you are missing any documents, you may be able to get copies from your dealer or repair facility, bank or credit card company.

Please bring the original of any documents you have sent to BBB AUTO LINE. While electronically-imaged copies of documents we receive are submitted to the manufacturer and the arbitrator before the hearing, it may be necessary to refer to the original document if there is any difficulty in reading the copy.

If you bring to the hearing any documents that you did not previously send to BBB AUTO LINE, please bring extra copies for the arbitrator and the manufacturer.

Documents that might be useful include:

**6**

- Sales contract/lease agreement
- Your vehicle's warranty
- Your vehicle's repair, service and maintenance records
- Correspondence between you and the manufacturer or its dealers, agents or representatives
- Other documents that may support your case, e.g., newspaper/magazine articles, photographs, court decisions and legal documents, consumer group information, brochures, information about state lemon laws and technical information

Bring anything or anybody that can verify the problem with your vehicle. It is better to be over prepared than under prepared.

The arbitrator will accept all relevant evidence presented at the hearing. The arbitrator will decide the importance of each piece of evidence after the hearing is closed.

## IN SUMMARY

- Organize your case.
- Back up your position with evidence.
- Provide a clear, concise and well-organized presentation supported by relevant facts and good documentation to help the arbitrator fulfill his or her responsibility.

We make every effort to assist persons with disabilities. If you require special assistance, please contact BBB AUTO LINE staff.

# BBB AUTO LINE®
## ARBITRATION RULES

### 1. DEFINITIONS

The following list defines key words as they are used in these Rules.

A. **Arbitration** is a process in which two or more persons agree to let an impartial person or panel decide their dispute.

B. **Arbitrator** refers to the individual or panel selected to conduct your arbitration hearing and make a decision in your dispute. Any action taken and decision made by a panel shall be by majority vote.

C. **Dispute Resolution Specialist** refers to the BBB AUTO LINE staff person assigned to help you and the manufacturer's representative resolve your dispute.

D. **Days** refers to calendar days.

E. **Decision** refers to the written document signed by the arbitrator and mailed to the parties.

F. **Parties** refers to the participants in the dispute. These Rules often refer to the individual parties in an arbitration as the "consumer" and the "manufacturer."

G. **Shall** is mandatory; **may** is discretionary.

H. **We** and **Us** refer to BBB AUTO LINE staff.

I. **You** refers to the parties involved in the dispute being arbitrated.

### 2. JURISDICTION OF BBB AUTO LINE

A. **Disputes That May Be Arbitrated.** Disputes must arise under a participating manufacturer's written new vehicle warranty and under the Song-Beverly Consumer Warranty Act. Certain disputes that do not fall within the jurisdiction of these Rules may still be eligible for resolution in BBB AUTO LINE – please contact your Dispute Resolution Specialist for more information.

B. **Filing Deadline.** Claims must be received by BBB AUTO LINE within six months of the expiration of the applicable warranty.

C. **Type of Vehicle/Vehicle Use.** Disputes must involve a motor vehicle covered by the Song-Beverly Consumer Warranty Act. The motor vehicle (this includes the chassis or chassis cab of a motor home, and also includes a dealer-owned vehicle, a "demonstrator" or other vehicle sold with a manufacturer's new car warranty) must

- be used or bought for use primarily for personal, family or household purposes OR

7

- have a gross vehicle weight under 10,000 pounds and be bought or used primarily for business purposes by any person or business to which not more than five motor vehicles are registered in California

In addition, the motor vehicle must have been

- purchased or leased at retail in California OR
- purchased or leased by a full-time active duty member of the Armed Forces who was stationed or residing in California at the time of purchase or lease or at the time the claim is filed with BBB AUTO LINE

**D. Specific Disputes That Will Not Be Arbitrated.** The following disputes will not be arbitrated:

- Claims for which BBB AUTO LINE does not receive a Customer Claim Form signed by at least one titled owner/lessee , or signed by the customer's authorized representative if the representative also submits evidence of the customer's authorization
- Claims that include a request for punitive damages or damages for personal injury or mental anguish
- Claims that include allegations of fraud or other violations of law
- Claims involving a vehicle that is the subject of a lawsuit brought against the manufacturer or its authorized dealer

8

- Claims involving a vehicle if the consumer alleges or has alleged that a vehicle defect has caused personal injury
- Claims involving a vehicle if the consumer alleges or has alleged that a vehicle defect has caused property damage where the damage is greater than $500
- Claims that have been previously resolved by settlement or arbitration unless there have been substantive changes (such as a further repair attempt) after the resolution or a repair decision that has not remedied the problem
- Claims concerning vehicles that are no longer owned or leased by the consumer

3. REMEDIES THAT MAY BE AWARDED IN BBB AUTO LINE

**A. The arbitrator may award:**

- Repairs to a vehicle
- Reimbursement for money paid to repair a vehicle
- Repurchase of a vehicle (including collateral charges and incidental damages)
- Replacement with a substantially identical new vehicle (including collateral charges and incidental damages)

BBB AUTO LINE will inform the parties of any modification to this Rule that authorizes the arbitrator to award any other remedy.

**B. Repurchase.** A repurchase will include the following:

- *Purchase price of the vehicle.* This is the actual price paid for the vehicle. It includes any charges for transportation and manufacturer-installed options, but does not include manufacturer rebates, credit card earnings, or charges for nonmanufacturer items installed by a dealer or the consumer.

- *Collateral charges.* These are official fees associated with the sale of the vehicle. They include items such as sales or use tax, license fees, registration fees, and other official fees.

- *Incidental damages.* These are reasonable expenses incident to the vehicle problem for which the manufacturer is repurchasing or replacing the vehicle. Incidental expenses include, but are not limited to reasonable repair, towing and rental car costs actually incurred by the consumer.

- *Prepayment penalties, early termination charges and earned finance charges, if actually paid, incurred, or to be incurred by the buyer.* These do not include charges for which the consumer is justly responsible.

**C.** *Replacement.* A replacement vehicle will be new and substantially identical to the vehicle replaced. The replacement vehicle will be accompanied by all express and implied warranties that normally accompany new motor vehicles of that kind. The manufacturer will also pay for collateral charges [see above definition] in connection with the replacement vehicle (not the original vehicle) as well as incidental damages [see above definition].

The consumer shall not be required to accept a replacement and may elect a repurchase instead.

**D. Deduction for Reasonable Use of the Vehicle.** The arbitrator will use the following formula if the arbitrator chooses to make a deduction for the consumer's use of the vehicle:

$$\text{Vehicle Purchase Price} \times \frac{\begin{array}{c}\text{\# of miles driven by the consumer prior to}\\\text{first delivery to the manufacturer or dealer}\\\text{for repair of the nonconformity that led to}\\\text{repurchase or replacement}\end{array}}{120,000} = \text{Use Deduction}$$

**E. Remedies That Will Not Be Considered.** Arbitrators will not consider or provide the following remedies: punitive damages or multiple damages, attorneys' fees or consequential damages other than as provided in subdivisions (a) and (b) of California Civil Code Section 1794.

9

**F.** If a repurchase or replacement is awarded, the consumer will be required to turn over the vehicle and provide clear title to the manufacturer. The manufacturer may deduct for any vehicle damage exceeding normal wear and tear that is not caused by the vehicle's nonconformities.

## 4. SELECTING YOUR ARBITRATOR

BBB AUTO LINE maintains a pool of individuals who are interested in the fair and expeditious resolution of consumer disputes. These persons have been trained and certified by the Council of Better Business Bureaus. They do not necessarily have mechanical or legal expertise but can call upon the assistance of an expert when necessary. Based on the parties' preferred date for the arbitration hearing, BBB staff will randomly obtain an arbitrator from the pool of arbitrators available on the designated date.

The arbitrator(s) will be selected in an impartial manner that ensures the arbitrator does not have a financial, competitive, professional, family or social relationship with any party (unless, pursuant to Rule 6, all parties are aware of any such relationship and specifically agree that the arbitrator may serve).

**10**

## 5. COMMUNICATING WITH THE ARBITRATOR

You or anyone representing you shall not communicate in any way with the arbitrator about your dispute except (1) at an inspection or hearing for which the other party has received notice or (2) when all other parties are present or have given their written permission.

All other communication with the arbitrator must be sent through BBB AUTO LINE.

Violation of this rule may result in your case being discontinued.

## 6. QUALIFYING THE ARBITRATOR

The arbitrator shall sign a special oath pledging to make an impartial decision in your dispute. If the arbitrator believes that he or she cannot make an impartial decision, the arbitrator shall refuse to serve.

If a financial, competitive, professional, family or social relationship exists (even if the arbitrator believes the relationship is so minor that it will have no effect on the decision), it shall be revealed to everyone, and you may decide whether this arbitrator should serve in your case.

We reserve the right to reject any arbitrator for any reason that we believe will affect the fact and appearance of impartiality of the program.

## 7. YOUR REPRESENTATIVE

You may present your own case or have someone represent you.

If your representative is a lawyer, please give the lawyer's name and address to us at least five days before the hearing. Your Dispute Resolution Specialist will notify the other parties to give them an opportunity to obtain a lawyer, if they decide it necessary. Your failure to give BBB AUTO LINE advance notice may result in a rescheduling of your hearing.

## 8. INSPECTION BY THE ARBITRATOR

The arbitrator may request an inspection of the vehicle involved in your dispute.

It is strongly recommended that the consumer bring the vehicle to the hearing in case the arbitrator would like to inspect it. If the vehicle is inoperable, please call your Dispute Resolution Specialist to discuss whether towing can be arranged. If an inspection has to be scheduled after the hearing, all parties will receive at least three days' notice (unless waived by the parties).

The arbitrator will determine whether a test drive will be taken in the vehicle. A test drive may not be taken unless the consumer has liability insurance that satisfies the minimum requirements

in California. The consumer's liability insurance will apply during any test drive.

During the test drive, all laws will be observed and reasonable safety precautions will be taken.

## 9. TECHNICAL EXPERTS

At the request of the arbitrator, we may obtain an impartial technical expert to inspect your vehicle.

Both parties will have an opportunity to evaluate and comment on the qualifications and findings of the technical expert.

You also have the right to have your own technical expert serve as a witness at your own expense.

## 10. HEARING NOTICE

We will set a date, time (during normal business hours) and a place for your arbitration hearing. The hearing will be set with due regard for the schedule of the parties and the arbitrator as well as the time limits provided by these Rules. Notice of the date, time and place of the hearing will be sent to you at least 10 days in advance of the hearing so parties will receive the notice of the hearing at least five days before the hearing.

If an emergency prevents you from attending the

11

hearing, call us prior to the scheduled hearing time.

We reserve the right to make a final determination as to the time, date and place for the arbitration hearing.

## 11. MANNER IN WHICH HEARING IS CONDUCTED

Although most arbitrations involve in-person hearings, at your request, we may arrange to have your statement and evidence presented by telephone or in writing.

If the consumer asks to present his or her case at an in-person hearing, that request will be honored. If the consumer appears in person, the manufacturer may present its case in person, by telephone or in writing.

If the consumer presents his or her case by telephone, the manufacturer may present its case by telephone or in writing.

If the consumer presents his or her case in writing, the manufacturer must also present its case in writing.

When one or more parties present their case by telephone, a speaker phone or conference call will be used so all parties can effectively participate in the hearing.

12

## 12. ATTENDANCE AT HEARINGS

Arbitration hearings shall be open to observers on reasonable and nondiscriminatory terms.

Unless there is approval by all parties and the arbitrator, no one other than BBB AUTO LINE staff shall be permitted to bring cameras, lights, recording devices or any other equipment into the hearing.

All observers shall be subject to BBB staff's directions regarding proper behavior.

## 13. YOUR ABSENCE FROM THE HEARING

If one party does not attend a hearing after receiving proper notice, the arbitrator will proceed with the hearing and receive evidence from the other party. The party who did not attend the hearing will be given the opportunity to present its position in writing. If that party does not present its case within the time limits set by BBB AUTO LINE, the arbitrator will make a decision without that party's position.

## 14. RECORD OF HEARING

We will maintain basic file information on your arbitration hearing, such as the witnesses' names and documents presented as evidence at the

hearing. Copies of these materials and other official arbitration forms relating to your case will be given to you on request. A reasonable copying fee may be charged.

We will record the hearing if requested by a party or the arbitrator. Copies of the recording will be furnished to a party upon request; a reasonable copying fee may be charged. Requests for a copy of the recording must be made within 60 days after the hearing, since the record may be erased after that time.

15. OATH OF PARTICIPANTS

You and your witnesses shall be placed under oath at the hearing.

16. HEARING PROCEDURES

The arbitrator will decide on the order and procedures for you to present your side of the dispute.

You will be given an opportunity to make a personal presentation of your case, and you may present any witnesses and evidence in support of your case. You may also question the other parties, their witnesses and their evidence. After everyone has

presented his or her case, each party will be given an opportunity to make a closing statement.

Parties should restrict their presentation to no more than an hour.

If the arbitrator determines that additional information is necessary in order to make a fair decision, the arbitrator may direct that this additional evidence be submitted at a subsequent hearing or in any manner deemed appropriate by the arbitrator. The arbitrator will make every effort to obtain all necessary information in a timely manner so that the decision may be rendered within the applicable time limits.

Before the arbitrator makes a decision, you may ask the arbitrator to give you a reasonable number of days to respond to a written statement or document presented by the other party at the hearing. The arbitrator may grant your request at his or her discretion.

If the arbitrator directs that written evidence be submitted after the initial hearing, the evidence shall be sent to BBB AUTO LINE within five days, unless a different time period is specified by the arbitrator. We will send a copy to the other party and solicit a response. We will send both the written evidence and any response to the arbitrator.

When the arbitrator is satisfied that all testimony and evidence have been presented, your hearing

13

will be closed.

## 17. ADMISSION OF EVIDENCE AT THE HEARING

You may present your case without being restricted by courtroom rules of evidence. However, you should be sure your evidence is relevant to your case.

The arbitrator may limit your presentation if the arbitrator believes it is repetitious or irrelevant.

## 18. ABSENTEE STATEMENTS/DOCUMENTS FOR TELEPHONE HEARINGS

If you have a witness who cannot attend the hearing, you may present that person's written statement to the arbitrator. You must make a copy for the other party to read and use for response.

To help resolve your claim promptly, if you present your case by telephone you should submit to BBB AUTO LINE at least seven days before your hearing any written documents on which you will rely. We will provide these documents to the other party before the hearing.

## 19. SUBPOENAS

You may send BBB AUTO LINE a request that the arbitrator subpoena witnesses or evidence that are

relevant to your case. Any request should include a statement as to why the witnesses or evidence are relevant, and why you feel a subpoena is necessary. If the arbitrator agrees with your request, then a subpoena will be sent according to state law. Subpoenas may only be sent to persons within California.

The party requesting a subpoena shall be responsible for any expenses involved in the issuance of the subpoena and shall be responsible for enforcement of the subpoena if the subpoenaed party does not appear.

## 20. POST-HEARING ADMISSION OF EVIDENCE

Before a decision is made, an arbitrator may schedule new or additional hearings or otherwise request new or additional evidence to get all relevant facts about your dispute.

If you have been asked or allowed by the arbitrator to furnish additional evidence in support of your case, the arbitrator will set a deadline by which you must send it to BBB AUTO LINE. We will give the other party an opportunity to respond to your evidence and then will send all materials to the arbitrator. Receipt of all additional materials by the arbitrator shall signal the close of your hearing. In making a decision, the arbitrator may consider the failure of any party to provide

14

requested information or to respond to information submitted.

Before a decision is made, you may contact us with new information that was impossible to present at your original hearing and request that it be considered. Any such new information must be sent to BBB AUTO LINE, which will send it to the other party for their response and then forward the information and any response to the arbitrator.

After the arbitrator has made a decision in your case, no more arguments or evidence may be presented, even if newly discovered or not available at the time of the hearing.

## 21. SETTLEMENT

If all parties voluntarily decide to settle the dispute before the hearing, the settlement will end the dispute and no hearing will be held.

If a settlement is reached after the hearing but before the arbitrator's final decision, be sure to notify your Dispute Resolution Specialist at once.

## 22. TIME LIMITS

We shall make every effort to obtain a decision in your case within 40 days from the time your claim is opened. This time period may be extended:

a. for seven days if the consumer made no attempt to seek redress directly from the manufacturer prior to filing a claim; or

b. for up to 30 days if the arbitrator requests an inspection/report by an independent expert; consultation with a person(s) knowledgeable in the technical, commercial or other areas related to the vehicle; an opportunity for an inspection and test drive; or, further investigation and report by BBB AUTO LINE on any issue relevant to a fair and expeditious decision.

## 23. THE DECISION

When the arbitrator has reached a decision in your case, all parties will receive a written decision accompanied by the arbitrator's reasons for the decision.

### A. Scope of decision

A decision shall be one that the arbitrator considers fair and falls within the scope of these Rules

The decision may order an action to be performed, money to be paid, or a combination of these remedies. The arbitrator may award all or part of what you seek or may decide to award no payment or performance at all.

The arbitrator's decision is not limited to the

15

remedies requested by the consumer.

All decisions requiring performance by the manufacturer will require that performance occur within 30 days after the manufacturer receives notice that the decision has been accepted. The time for performance shall be extended for delays caused by reasons beyond the control of the manufacturer or its representatives, including any delay attributable to any act or omission of the consumer, but only while the reason for the delay continues.

**B.  Decision will be sent to parties**

The arbitrator will normally submit a decision to BBB AUTO LINE within three business days of closing the hearing.

Under special circumstances, the arbitrator may need extra time to submit the decision and we will inform the parties if this occurs.

BBB AUTO LINE will send you a copy of the arbitrator's decision. We will not read a decision to you over the phone.

**C.  Repair decision**

A repair decision will state the conditions/ symptoms to be repaired and it will be the manufacturer's responsibility to determine what repairs are necessary to correct the conditions/ symptoms.

16

If a repair decision is rendered and accepted by the consumer, the consumer should notify BBB AUTO LINE in writing if the repair has not occurred to the consumer's satisfaction. In that case, the arbitrator will be informed of all pertinent facts and may decide to reconsider the decision.

**D.  Mathematical errors/correction**

We reserve the right to correct obvious mathematical errors in the decision.

**E.  Clarifying the decision**

You may request that the arbitrator clarify a decision if you do not understand what action is required by the decision, or if you and the other party disagree about what action is required by the decision. Requests for clarification must be in writing and must be received by BBB AUTO LINE prior to the time that performance is required under the decision.

Appropriate requests for clarification will be sent to the other party for response. We will send the clarification request and any response to the arbitrator, who may either clarify the decision or let the decision stand as written. Before making a decision on a clarification request, the arbitrator may request a telephone conference call with all parties.

You may not ask the arbitrator to clarify the

reasons for decision.

**F. Acceptance or rejection of the decision**

We will send will send the arbitrator's decision to the consumer for acceptance or rejection. Accompanying the decision will be an *Acceptance or Rejection* form. For a decision to be accepted, it must be accepted by all titled owners of the vehicle in question.

Failure to return the *Acceptance or Rejection* form to us within 30 days after that form is sent to the consumer shall be considered a rejection of the decision unless we, in writing, extend this period by a reasonable number of days for good cause.

Once the consumer accepts a decision:

- The manufacturer will be bound to abide by the decision and comply with its terms
- The consumer must comply with the terms of the decision

If the consumer rejects a decision:

- The consumer may pursue other legal remedies under state or federal law
- The manufacturer will not be obligated to perform any part of the decision

- The decision may be introduced as evidence by the consumer or the manufacturer in a court action

- BBB AUTO LINE involvement in the case will end

**G. Verification of Performance**

If the consumer accepts the decision, all parties must do what the decision requires within the time limits set by the arbitrator.

The time for performance shall begin when the manufacturer receives written notice of the consumer's acceptance. Within 10 days after the performance date, we shall contact the consumer to verify whether the decision has been performed.

24. TIMELY OBJECTIONS

Any failure to follow these Rules that may significantly affect the independence, impartiality or fairness of the arbitration process should be brought to the attention of BBB AUTO LINE at the earliest opportunity.

25. CONFIDENTIALITY OF RECORDS

It is our policy that records of the dispute resolution process are private and confidential.

17

We will not release the results of your individual case to any person or group that is not a party to the arbitration unless all parties agree or unless such release is required by law or pertinent to judicial or governmental administrative proceedings.

### 26. LEGAL PROCEEDINGS/EXCLUSION OF LIABILITY

In submitting to arbitration under these Rules, the parties agree that the arbitrator and/or impartial technical expert shall not be subpoenaed by either party in any subsequent legal proceeding.

The parties further agree that the BBB (including its employees), the Council of Better Business Bureaus (including its employees), and/or the arbitrator shall not be liable for any act or omission in connection with any BBB AUTO LINE case.

### 27. COMPLAINTS

Any complaints about program operation or performance of a decision should be sent to:

BBB AUTO LINE
Council of Better Business Bureaus
4200 Wilson Boulevard, Suite 800
Arlington, VA 22203-1838

We will investigate complaints concerning program operation, and will inform the complainant of the results of the investigation and any corrective action taken.

We will inform the Arbitration Certification Program (ACP) of the results of the investigation if the case involves a manufacturer certified by the ACP.

For cases involving certified manufacturers, you also may submit a complaint to:

Arbitration Certification Program
Department of Consumer Affairs
State of California
1625 North Market Boulevard
Suite N112
Sacramento, CA 95834

### 28. RIGHT TO DISCONTINUE ARBITRATION

BBB AUTO LINE at all times reserves the right to discontinue administration of arbitration for any case(s) due to the behavior of a party.

### APPENDIX

**Section 1793.2(d) of the Song-Beverly Consumer Warranty Act**

Section 1793.2(d)(2) of the Song-Beverly Consumer Warranty Act (California Civil Code Section 1790

18

et seq.) requires that a vehicle manufacturer, if it is unable to service or repair a vehicle to conform to the manufacturer's written warranties after a reasonable number of attempts, must either repurchase or replace the vehicle.

**What vehicles are covered by Section 1793.2(d)(2)?**

Section 1793.2(d)(2) covers motor vehicles (including a dealer-owned vehicle, a "demonstrator" or other vehicle sold with a manufacturer's new car warranty) that:

1.  are sold or leased with a manufacturer's new vehicle written warranty and

2.  (a) are used or bought for use primarily for personal, family or household purposes,

OR

(b) have a gross vehicle weight under 10,000 pounds and are bought or used primarily for business purposes by any person or business to which not more than five motor vehicles are registered in California.

While Section 1793.2(d)(2) does not cover all parts of a motor home, it does cover the chassis and chassis cab of a motor home.

**When has the manufacturer had a reasonable number of repair attempts?**

Section 1793.2(d)(2) does not provide a test that conclusively establishes when a reasonable number of repair attempts has occurred within the period covered by the manufacturer's written warranty.

Another section of the Song-Beverly Consumer Warranty Act[1] creates a presumption[2] that a reasonable number of repair attempts has been made if, within 18 months from delivery to the first retail buyer/lessee or 18,000 miles on the vehicle odometer, whichever comes first, one or more of the following occurs:

1.  The same nonconformity results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven AND the nonconformity has been subject to repair two or more times by the manufacturer or its agents AND the consumer has at least once directly notified the manufacturer of the need for the repair of the nonconformity[3], OR

2.  The same nonconformity has been subject to repair four or more times by the manufacturer or its agent (such as an authorized dealer), and the consumer has at least once directly notified the manufacturer of the need for repair[3], OR

3.  The vehicle has been out of service more

19

than 30 calendar days (cumulative) since delivery by reason of repair of one or more nonconformities by the manufacturer or its agent (such as an authorized dealer). The 30 day period is extended if repairs cannot be performed due to conditions beyond the control of the manufacturer or agent.

**What is nonconformity?**

Section 1793.22(e)(1) defines "nonconformity" as a failure to conform to a written warranty that "substantially impairs the use, value, or safety of the new motor vehicle to the buyer or lessee."

Section 1794.3 provides that the Song-Beverly Consumer Warranty Act does not apply to any defect or nonconformity in consumer goods caused by the unauthorized or unreasonable use of the goods following sale.

Footnotes:

[1] Section 1793.22, which is known as the Tanner Consumer Protection Act.

[2] A presumption is an inference drawn from certain facts and can be overcome (rebutted) by additional facts.

[3] The consumer is required to directly notify the manufacturer only if the manufacturer has clearly explained this requirement in documents included with the warranty or owner's manual.

20

Cómo Funciona
# BBB AUTO LINE

Para el Estado de California

**BBB AUTO LINE**® es una marca registrada
propiedad del Council of Better Business Bureaus, Inc.

© 2008 por el Council of Better Business Bureaus, Inc.

Arlington, VA

# INDICE (California)
## BBB AUTO LINE

¿Qué es BBB AUTO LINE?......................................................................1

¿Cómo me comunico con BBB AUTO LINE?.............................................1

¿Cuándo se inicia mi reclamo con BBB AUTO LINE?...............................1

Notificación a la compañía acerca de su reclamo...................................1

Esfuerzos para resolver el conflicto mediante un acuerdo......2

¿Qué es arbitraje?..................................................................................2

¿Quién es el árbitro?..............................................................................3

Peritos técnicos......................................................................................3

Cómo prepararse para el arbitraje.........................................................3

¿Qué sucederá en la audiencia?............................................................4

Declaraciones y evidencia que debe presentar......................................4

Cuestiones legales y equitativas que
tomará en cuenta el árbitro....................................................................5

BBB AUTO LINE podría solicitar información
del fabricante.........................................................................................5

Sugerencias para la preparación de su caso..........................................5

Qué llevar a la audiencia........................................................................6

En resumen.............................................................................................7

B

# BBB AUTO LINE REGLAS DE ARBITRAJE PARA EL ESTADO DE CALIFORNIA

1.  Definiciones ....................................8

2.  Jurisdicción de BBB AUTOLINE ......................8

3.  Soluciones que podrían otorgarse en
    BBB AUTO LINE...................................10

4.  Selección del árbitro ..............................11

5.  Comunicación con el árbitro .......................11

6.  Capacitación del árbitro ...........................12

7.  Su representante ................................12

8.  Inspección realizada por el árbitro .................12

9.  Peritos técnicos ................................13

10. Aviso de la audiencia ............................13

11. Manera en que se conduce la audiencia ............13

12. Asistencia a la audiencia ..........................14

13. Su ausencia de la audiencia .......................14

14. Acta de la audiencia ..............................14

15. Juramento de los participantes ...................14

16. Procedimiento de las audiencias .................15

17. Admisión de pruebas en la audiencia ............15

18. Declaración o documentos de las personas
    ausentes para las audiencias telefónicas ........15

19. Citatorios.......................................16

20. Admisión de pruebas después de
    la audiencia....................................16

21. Acuerdo ......................................17

22. Límites de tiempo ..............................17

23. La decisión ....................................17

24. Presentación oportuna de objeciones ...........19

25. Confidencialidad de los datos ..................19

26. Procesos legales/Exclusión
    de responsabilidad ............................20

27. Quejas .......................................20

28. Derecho de suspender el arbitraje ..............20

    Apéndice ......................................21

c

## ¿QUÉ ES BBB AUTO LINE?

BBB AUTO LINE es un programa extrajudicial administrado por el sistema Better Business Bureau (BBB) para llegar a acuerdos en conflictos relacionados con la garantía de automóviles.

**BBB AUTO LINE no carga honorarios a los consumidores.** Para garantizar la imparcialidad, los fondos para los gastos administrativos del programa y del personal de BBB AUTO LINE los designan por adelantado los fabricantes participantes. El personal y los árbitros de BBB AUTO LINE son independientes de las compañías que participan en BBB AUTO LINE y no desempeñan trabajo alguno para estas compañías salvo el de proporcionar servicios imparciales para la resolución de conflictos.

Si usted tiene un problema con su vehículo que no se ha resuelto a su entera satisfacción, este folleto le informará sobre el programa BBB AUTO LINE y cómo puede ayudarlo a resolver el conflicto.

## ¿CÓMO ME COMUNICO CON BBB AUTO LINE?

Puede comunicarse con BBB AUTO LINE llamando al 1.800.955.5100.

Todos los documentos, correspondencias, avisos y

solicitudes de los datos debe enviarse a:

BBB AUTO LINE
Council of Better Business Bureaus
4200 Wilson Boulevard, Suite 800
Arlington, VA 22203-1838
Fax: 703.247.9700

## ¿CUÁNDO SE INICIA MI RECLAMO CON BBB AUTO LINE?

Su caso se abre oficialmente con BBB AUTO LINE una vez que nos proporcione la siguiente información:

• Su nombre y dirección
• El número de identificación de su vehículo (VIN, por sus siglas en inglés)
• La marca, el modelo y el año del vehículo
• La descripción del problema del vehículo

## NOTIFICACIÓN A LA COMPAÑÍA ACERCA DE SU RECLAMO

Cuando BBB AUTO LINE abra su caso, le enviaremos una copia del formulario de reclamo al fabricante con el cual tiene el conflicto.

1

## ESFUERZOS PARA RESOLVER EL CONFLICTO MEDIANTE UN ACUERDO

El proceso para establecer un acuerdo es voluntario y usted puede proceder con el arbitraje en cualquier momento si su disputa está dentro de la jurisdicción del programa. Por favor informe a su Especialista en Resolución de Disputas si no desea iniciar o continuar las conversaciones para llegar a un acuerdo.

Una vez que se reciba la información sobre su caso, un representante del fabricante podría comunicarse con usted para hablar sobre opciones para llegar a un acuerdo.

Usted y el representante del fabricante pueden explorar directamente las opciones para llegar a un acuerdo, o puede recibir asistencia de su Especialista en Resolución de Disputas de BBB AUTO LINE.

El papel del personal de BBB AUTO LINE es el de establecer comunicación entre usted y el representante del fabricante y mediar el intercambio de ofertas. El personal de BBB AUTO LINE no comentará si una oferta que se le haga es "justa" o "injusta"; hacer eso comprometería la neutralidad de BBB AUTO LINE. Sólo usted puede decidir si la oferta es satisfactoria.

En algunos casos, se realizará una sesión previa a la audiencia "conferencia vía telefónica para tratar

2

el acuerdo" si todas las partes están de acuerdo en hacerlo. Durante esa conferencia telefónica, la cual lo incluye a usted, al representante del fabricante y a un Especialista en Resolución de Disputas de BBB AUTO LINE, usted hablará de los problemas específicos del vehículo que desea arbitrar, escuchará la posición de la otra parte y explorará las posibilidades para llegar a un acuerdo mutuo a su reclamo.

Si usted y el representante del fabricante llegan a un acuerdo, por favor informe a su Especialista de Resolución de Disputas de BBB AUTO LINE tan pronto como sea posible.

De llegarse a un acuerdo en cualquier momento, enviaremos una carta a ambas partes que resuma los términos del acuerdo. Haremos seguimiento con usted antes de que transcurran diez días de cualquier medida que el acuerdo requiera para confirmar que los términos del acuerdo se hayan llevado a cabo.

## ¿QUÉ ES ARBITRAJE?

Arbitraje es un proceso informal en el cual dos partes presentan sus puntos de vista de un conflicto a una tercera parte, el árbitro, quien decidirá cómo se resolverá el conflicto.

## ¿QUIÉN ES EL ÁRBITRO?

Los árbitros de BBB AUTO LINE son personas de su comunidad quienes están interesadas en la resolución justa y rápida de conflictos de los consumidores. Están capacitados y certificados por el Concilio de Better Business Bureaus.

## PERITOS TÉCNICOS

El árbitro podría pedir que un perito técnico imparcial examine su vehículo.

El consumidor o el fabricante podrían solicitar que el árbitro obtenga ayuda de un perito técnico imparcial para que inspeccione su vehículo antes o después de la audiencia. Las solicitudes para una inspección técnica imparcial antes de la audiencia deben realizarse por escrito y deben recibirse en BBB AUTO LINE cuando menos diez días antes de la audiencia.

Si se realiza una solicitud para un perito técnico imparcial antes de la audiencia, se proporcionará la solicitud al árbitro así como todos los documentos actuales del caso.

Si el árbitro determina que es necesario un perito técnico imparcial, el personal de BBB AUTO LINE realizará todos los arreglos necesarios.

Siempre que participe un perito técnico imparcial

en el proceso de BBB AUTO LINE, todas las partes tendrán la oportunidad de revisar y comentar sobre las conclusiones y las credenciales del perito.

## CÓMO PREPARARSE PARA EL ARBITRAJE

Antes de asistir a la audiencia de arbitraje, usted debe preparar un resumen de sus argumentos que le ayude en su presentación. Puede usar las sugerencias que se ofrecen al final de esta sección como ayuda para prepararse.

Además, antes de la audiencia, debe preparar una lista de preguntas que desea hacerle al representante del fabricante.

Antes de la audiencia, quizá reciba documentos y una declaración que presenten la posición del fabricante. Asegúrese de revisar esos materiales y preparar las preguntas que tenga sobre ellos.

El árbitro recibirá una copia de su *Formulario de Reclamo del Cliente* (CCF por las siglas en inglés). Usted debe revisar la copia de ese formulario antes de la audiencia y estar preparado para hablar de todos los problemas que ha listado en la misma.

3

## ¿QUÉ SUCEDERÁ EN LA AUDIENCIA?

El árbitro determinará el formato exacto de la audiencia, lo cual incluirá la oportunidad de que usted:

• Exponga los hechos desde su punto de vista

• Presente documentos y testigos para apoyar su caso

• Interrogue a los testigos del fabricante

• Refute cualquier declaración o prueba que haya presentado el representante o los testigos del fabricante

El fabricante tendrá la misma oportunidad de presentar su caso, interrogarlo a usted y a sus testigos y de refutar las declaraciones o las pruebas presentadas.

El árbitro también formulará preguntas para aclarar aquellas áreas que no estén claras y para entender mejor el conflicto.

Después de que cada parte haya presentado su caso y que se termine el interrogatorio, usted debe estar preparado para dar un resumen de su posición, atender cualquier pregunta que no haya sido contestada, y decir al árbitro exactamente cuál decisión piensa que deba ser y por qué.

Recuerde que el único propósito de la audiencia es el de permitir al árbitro que reúna y organice los hechos para poder tomar una decisión justa. Debe

estar preparado para convencer al árbitro de que su posición es correcta.

Una posición cooperativa funciona mejor. Se encuentra allí porque usted y el fabricante tienen un desacuerdo, pero mantenga el desacuerdo objetivo y dentro de los límites de cortesía normal y del lenguaje convencional. Los árbitros pueden no tener experiencia técnica, así que su presentación puede ser más productiva si usted usa términos generales para describir lo que le pasó a su vehículo.

Póngase en el lugar del árbitro: una persona cuyo único propósito es el resolver su conflicto. Use sentido común y cortesía profesional conforme haga su presentación.

Nota: Usted debería tener su propio intérprete si ese le ayudaría a presentar su caso. Si usted no puede proporcionarse uno, póngase en contacto con su Especialista de Resolución de Disputas y nosotros trataremos de encontrar un intérprete voluntario.

## DECLARACIONES Y PRUEBAS QUE DEBE PRESENTAR

Durante su presentación en la audiencia debe proporcionar declaraciones y pruebas sobre lo siguiente:

4

- Los problemas que ha tenido con su vehículo

- Por qué cree que los problemas son responsabilidad del fabricante

- Por qué piensa que usted no ha causado los problemas

- Por qué los problemas representan un impedimento importante para el uso, el valor o la seguridad de su vehículo

- Si el fabricante y sus concesionarios, los agentes o representantes han tenido suficiente oportunidad para reparar su vehículo

## CUESTIONES LEGALES Y EQUITATIVAS QUE TOMARÁ EN CUENTA EL ÁRBITRO

Para tomar una decisión, el árbitro tomará en cuenta todas las cuestiones legales y equitativas incluyendo lo siguiente:

- La garantía escrita del vehículo

- Los reglamentos de la Comisión Federal Comercial establecidos en el código16 C.F.R. Parte 703

- División 2 (comenzando con la Sección 2101 del Código Comercial de California)

- Todas las disposiciones de la ley de limón llamada Song-Beverly Consumer Warranty Act [Código civil de California sección 1790 et seq.]. Esto incluye la sección 1793.2 (d), la cual se resume en el apéndice de este folleto

- Secciones 43204 – 43205.5 del Código de Salud y Seguridad de California

- Secciones 3396.1 – 3399.6 del Código de Reglamentaciones de California

- Cualquier otra consideración equitativa adecuada en tales circunstancias

## BBB AUTO LINE PODRÍA SOLICITAR INFORMACIÓN DEL FABRICANTE

El personal de BBB AUTO LINE solicitará al fabricante los documentos pertinentes que tenga en su poder o bajo su control, como boletines técnicos de servicio, avisos de retiros del mercado o de piezas de repuesto, publicaciones del Departamento de Transporte de Estados Unidos, el historial de reparaciones del vehículo y cualquier otro documento que sea razonable que proporcione el fabricante.

El personal de BBB AUTO LINE le enviará cualquier documento que presente el fabricante para la audiencia.

## SUGERENCIAS PARA LA PREPARACIÓN DE SU CASO

Organice los materiales en el orden que desea presentarlos. Esto le ayudará a presentar su caso con claridad y lógica. Liste todas las reparaciones

5

hechas a su vehículo y reúna todas las órdenes de reparación que muestren qué se le hizo.

Liste todas las ocasiones en las que habló con el fabricante y sus concesionarios, agentes o representantes sobre los problemas del vehículo.

En cada conversación, anote

• Con quién habló

• La fecha en que se llevó a cabo la conversación

• Qué se le dijo y

• Qué medidas o reparaciones se realizaron, si es que las hubo, como resultado de la conversación

Comuníquese con testigos potenciales; como mecánicos o vendedores; y pídales que declaren en persona o que presenten sus declaraciones por escrito. Recuerde que usted es responsable por presentar la información de sus testigos. Si desea que declaren en persona, manténgalos informados del día, la hora y el lugar de la audiencia.

Reúna todos los documentos que apoyen su caso, incluyendo el historial de mantenimiento del vehículo.

## QUÉ LLEVAR A LA AUDIENCIA

Reúna y lleve a la audiencia todos los materiales disponibles relacionados con los problemas del vehículo.

6

Si le falta algún documento, podría conseguir copias del concesionario, del taller mecánico, del banco o de la compañía de la tarjeta de crédito.

Lleve los documentos originales que haya enviado a BBB AUTO LINE. Aunque las copias electrónicas de los documentos que recibimos se les presentan al fabricante y al árbitro, podría ser necesario consultar los documentos originales si hubiera algún problema para leer una copia.

Si lleva a la audiencia documentos que no ha enviado previamente a BBB AUTO LINE, lleve suficientes copias adicionales para el árbitro y el fabricante.

Los documentos que pueden ser útiles incluyen:

• Contrato de venta/acuerdo de alquiler

• La garantía del vehículo

• El historial de reparaciones, servicio y mantenimiento del vehículo

• La correspondencia entre usted y el fabricante o sus concesionarios, agentes o representantes

• Otros documentos que podrían apoyar su caso, por ejemplo, artículos de periódicos o revistas, fotografías, decisiones de los tribunales y documentos legales, folletos, información de grupos de consumidores, información sobre las leyes limón estatales e información técnica

Lleve todos los materiales o las personas que puedan verificar el problema del vehículo. Es mejor estar preparado de más que de menos.

El árbitro aceptará todas las pruebas relevantes presentadas en la audiencia. El árbitro decidirá la importancia de cada prueba después de que la audiencia se cierre.

## EN RESUMEN

• Organice su caso.

• Apoye su posición con pruebas.

• Una presentación clara, concisa y bien organizada apoyada por todos los hechos relevantes y una buena documentación ayudarán al árbitro a cumplir con sus responsabilidades.

BBB AUTO LINE hace todo lo posible por ayudar a las personas con discapacidades. Si usted necesita ayuda especial, comuníquese con el personal de BBB AUTO LINE.

**BBB AUTO LINE®**
REGLAS DE ARBITRAJE

## 1. DEFINICIONES

La lista siguiente define palabras clave que se usan en estas Reglas.

A. **Arbitraje** es un proceso mediante el cual dos o más personas están de acuerdo en permitir a una persona o panel imparcial decidir su conflicto.

B. **Árbitro** se refiere a la persona o al panel seleccionado para realizar la audiencia de su arbitraje y tomar una decisión sobre su conflicto. Toda acción y decisión tomada por el panel deberá ser por mayoría de votos.

C. **Especialista de Resolución de Disputas** refiere al la persona del BBB asignada a asistir a usted y al representante de la empresa participante a resolver su queja.

D. **Días** se refieren a días civiles.

E. **Decisión** se refiere a los documentos por escrito firmados por el árbitro y *enviados por correo* a todas las partes.

F. **Partes** se refiere a los participantes en el conflicto. Estas Reglas con frecuencia se refieren a las partes individuales de un arbitraje como el "consumidor" y el "fabricante".

G. **Deberá** es obligatorio; **podría** es a discreción.

8

H. **Nosotros** se refiere al personal del BBB AUTO LINE.

I. **Usted** se refiere a las partes involucradas en el conflicto a arbitrarse.

## 2. JURISDICCIÓN DE BBB AUTO LINE

A. **Conflictos que pueden arbitrarse.** Los conflictos deben surgir bajo la garantía escrita del fabricante participante y bajo el acto de la garantía al consumidor llamado en Inglés Song-Beverly Consumer Warranty Act. Ciertos reclamos que no se someten a la jurisdicción de estas Reglas pueden todavía ser elegibles para una solución – por favor póngase en contacto con su Especialista de Resolución de Disputas para mas información.

B. **Fecha límite para presentar reclamos.** BBB AUTO LINE debe recibir los reclamos en un plazo de seis meses antes del vencimiento de la garantía correspondiente.

C. **Tipo de vehículo/uso del vehículo.** Los conflictos se deben incluir vehículos de motor y estar cubiertos por el acto de la garantía al consumidor Song-Beverly. El vehículo motor (esto incluye el chasis o la cabina del chasis de una casa rodante, y también incluye vehículos propiedad del concesionario, un vehículo de demostración o de otro tipo que se venda con la garantía de automóvil nuevo del fabricante) tiene que

- usar o comprar para usar principalmente para fines personales, familiares o domésticos, O

- tenga un peso bruto menor de 10,000 libras (4,545 kilogramos) y se compre o use principalmente para fines comerciales por una persona o negocio que no tenga más de cinco vehículos de motor registrados bajo el estado de California

Además, el vehículo de motor debe haberse

- comprado o alquilado en venta al por menor en California O

- comprado o alquilado a un miembro tiempo completo del servicio activo de las Fuerzas Armadas quién fué destacado o reside en California en el momento de la compra o alquiler, o en el momento que la queja ha sido presentada con el BBB AUTO LINE

**D.   Conflictos específicos que no serán arbitrados.** Los siguientes conflictos no se arbitraran:

- Quejas para los cuales el BBB AUTO LINE no recibe el Formulario de Reclamo del Consumidor (CCF) firmado por lo menos por uno de los dueños titulares/arrendatario, o firmado por el representante autorizado del consumidor si el representante presenta evidencia de dicha autorización del consumidor

- Los reclamos que incluyan una solicitud por daños punitivos o daños por lesiones personales o por angustia mental

- Los reclamos que incluyan acusaciones de fraude o de otras infracciones a la ley

- Los reclamos  que se traten de vehículos que están sujetos a una demanda judicial establecida contra el fabricante o un concesionario autorizado

- Los reclamos que se traten de vehículos que el cliente dice tienen defectos que han causado una lesión personal

- Los reclamos que se traten de vehículos que el cliente esté dice tienen defectos que han causado daños materiales por más de $500

- Los reclamos que se han resuelto previamente mediante un acuerdo o arbitraje a menos que haya habido cambios sustanciales (como reparaciones adicionales) después de la resolución o de que una decisión de repararlo no haya remediado el problema

- Los reclamos relacionados con vehículos que ya no son propiedad ni están alquilados por el consumidor

6

## 3. SOLUCIONES QUE PUEDEN OTORGARSE EN BBB AUTO LINE

### A. El árbitro podría otorgar:

- Reparaciones al vehículo

- Reembolso del dinero pagado por reparar el vehículo

- La recompra del vehículo (incluyendo cargos colaterales y daños imprevistos)

- El reemplazo con un vehículo nuevo sustancialmente idéntico (incluyendo cargos colaterales y daños imprevistos)

BBB AUTO LINE informará a las partes cualquier modificación a esta Regla que autorice al árbitro a conceder cualquier otra solución.

### B. Recompra. La recompra incluirá lo siguiente:

- *Precio de compra del vehículo.* Éste es el precio pagado por el vehículo. Incluye todos los cargos de transporte y opciones instaladas por el fabricante, pero no incluye los reembolsos del fabricante, las ganancias acumuladas en tarjetas de crédito ni los cargos por artículos que no son de fábrica que hayan sido instalados por el concesionario o el consumidor.

- *Cargos colaterales.* Éstos son las cuotas oficiales relacionadas con la venta del vehículo. Incluyen cosas como impuestos sobre venta o uso, las cuotas de matrícula y otras cuotas oficiales.

- *Daños imprevistos.* Éstos son los gastos razonables que surjan por el problema del vehículo que el fabricante recomprará o reemplazará. Los gastos imprevistos incluyen, entre otros, los costos razonables de reparación, remolcado y de alquiler de automóvil en que haya incurrido el consumidor.

- *Las penalizaciones por pago anticipado, los cargos por cancelación temprana y los cargos incurridos por financiamiento, si fueron pagados, incurrieron o en los que el comprador incurrirá.* Esto no incluye los cargos por los que el consumidor es justamente responsable.

### C. Reemplazo. Un vehículo de reemplazo será nuevo y sustancialmente idéntico al que se reemplaza. El vehículo de reemplazo estará acompañado de todas las garantías expresas e implícitas que normalmente acompañan a un vehículo de motor nuevo de ese tipo. El fabricante también pagará los cargos colaterales [vea la definición anterior] en relación al vehículo de reemplazo (no al vehículo original) así como los daños imprevistos [vea la definición anterior].

No deberá pedírsele al consumidor que acepte

10

un reemplazo pudiendo elegir una recompra.

**D. Deducción por el uso razonable del vehículo.** El árbitro usará la siguiente fórmula si decidiera hacer una deducción por el uso que el consumidor hizo del vehículo:

Número de millas conducidas por el consumidor antes de la primera entrega al fabricante o al distribuidor para la reparación de la inconformidad que condujo a readquirir o el reemplazo del vehículo

$$\frac{}{120,000} \times$$

Precio de compra del vehículo = Deducción de uso razonable

**E. Soluciones que no se considerarán.** Los árbitros no considerarán ni proporcionarán las siguientes soluciones; daños punitivos o daños múltiples, honorarios de abogados ni daños resultantes que no sean los que se establecen en las subdivisiones (a) y (b) de la Sección 1794 del Código Civil de California.

**F.** Si se otorga la recompra o el reemplazo, el consumidor tendrá que entregar el vehículo y proporcionar el título al fabricante. El fabricante puede deducir los daños al vehículo que excedan el desgaste y uso normales que no hayan sido causados por el problema del vehículo.

## 4. SELECCIÓN DEL ÁRBITRO

BBB AUTO LINE mantiene un grupo de personas que están interesadas en la resolución rápida y justa de conflictos de los consumidores. El Concilio de Better Business Bureaus ha capacitado y certificado a estas personas. No son necesariamente peritos mecánicos o legales pero pueden solicitar la ayuda de peritos siempre que sea necesario. De acuerdo con las fechas preferidas de ambas partes para la audiencia del arbitraje, el personal de BBB obtendrá aleatoriamente un árbitro del grupo de árbitros disponibles en la fecha señalada.

El árbitro o los árbitros se seleccionarán de una manera imparcial que garantice que no tenga(n) relación financiera, competitiva, profesional, familiar ni social con alguna de las partes (a menos que, en relación con la Regla 6, todas las partes tengan conocimiento de dicha relación y específicamente estén de acuerdo en que el árbitro actúe como tal).

## 5. COMUNICACIÓN CON EL ÁRBITRO

Usted o cualquier persona que lo represente no deberá comunicarse en forma alguna con el árbitro en relación al conflicto excepto (1) en la inspección o la audiencia para la cual la otra parte haya recibido notificación, o bien (2) cuando todas las

11

partes estén presentes o hayan dado su permiso por escrito.

Toda otra comunicación con el árbitro debe realizarse a través de BBB AUTO LINE.

La infracción a esta regla podría causar la cancelación de su caso.

## 6.  CAPACITACIÓN DEL ÁRBITRO

El árbitro deberá firmar un juramento especial comprometiéndose a tomar una decisión imparcial en el conflicto. Si el árbitro considera que no puede tomar una decisión imparcial, deberá rehusarse a prestar sus servicios.

Si existiera alguna relación financiera, competitiva, profesional, familiar o social (aun si el árbitro considera que es tan insignificante que no afectará su decisión), esto debe informarse a todos, y usted puede decidir si este árbitro debe participar en su caso.

BBB AUTO LINE se reserva el derecho a rechazar a un árbitro por cualquier motivo que considere afecte la credibilidad del programa.

## 7.  SU REPRESENTANTE

Usted puede presentar su propio caso o permitir que alguien más lo represente.

**12**

Si su representante es un abogado, proporcione el nombre y la dirección a BBB AUTO LINE cuando menos 5 días antes de la audiencia. Su Especialista de Resolución de Disputas notificará a las otras partes para darles la oportunidad de obtener un abogado, si así lo desearan. El no avisar por anticipado a BBB AUTO LINE podría causar que se vuelva a programar su audiencia.

## 8.  INSPECCIÓN EFECTUADA POR EL ÁRBITRO

El árbitro puede solicitar una inspección del vehículo involucrado en su conflicto.

Se recomienda encarecidamente que el consumidor lleve el vehículo a la audiencia en caso de que el árbitro desee inspeccionarlo. Si el vehículo está inoperable, llame a su Especialista De Resolución de Disputas para decidir si puede remolcarse. Si tiene que programarse una inspección después de la audiencia, todas las partes serán notificadas cuando menos tres días antes (a menos que lo dispensen todas las partes).

El árbitro determinará si se debe realizarse una prueba de manejo en el vehículo. Sin embargo, no podrá realizarse la prueba a menos que el consumidor tenga seguro contra terceros que satisfaga los requisitos mínimos de California. El seguro contra terceros del consumidor cubrirá al vehículo durante las pruebas de manejo.

Durante la prueba de manejo, se observarán todas las leyes y se tomarán todas las precauciones de seguridad razonables.

## 9. PERITOS TÉCNICOS

A solicitud del árbitro, BBB AUTO LINE puede conseguir a un perito técnico imparcial para inspeccionar el vehículo.

La conclusión del perito se presentará por escrito o en persona, a discreción de BBB AUTO LINE. Ambas partes tendrán la oportunidad de evaluar y comentar la capacitación y la conclusión del perito.

Usted también tiene el derecho a que su propio perito técnico sirva como testigo por cuenta suya.

## 10. AVISO DE LA AUDIENCIA

BBB AUTO LINE establecerá la fecha, la hora (durante horas laborales normales) y el lugar para la audiencia de su arbitraje. La audiencia se programará con el debido respeto de los horarios de las partes y del árbitro así como de los límites de tiempo establecidos por estas reglas. El aviso de la fecha, la hora y el lugar de la audiencia se le enviará cuando menos diez días antes de la audiencia. Las partes recibirán el aviso cuando menos cinco días antes de la audiencia.

Si una emergencia le impidiera asistir a la audiencia, llame a BBB AUTO LINE antes de la fecha programada para la audiencia.

BBB AUTO LINE se reserva el derecho a tomar la decisión final de la hora, la fecha y el lugar para la audiencia del arbitraje.

## 11. MANERA EN QUE SE CONDUCE LA AUDIENCIA

Aunque la mayoría de los arbitrajes se realizan con audiencias en persona, BBB AUTO LINE, a petición suya, podría hacer arreglos para que usted presente su declaración y pruebas por teléfono o por escrito.

Si el consumidor pide presentar su caso en una audiencia en persona, se honrará esa solicitud. Si el consumidor se presenta en persona, el fabricante puede presentar su caso en persona, por teléfono o por escrito.

Si el consumidor presenta su caso por teléfono, el fabricante puede presentar su caso por teléfono o por escrito.

Si el consumidor presenta su caso por escrito, el fabricante también tendrá que presentar su caso por escrito.

13

Cuando una o más partes presenten su caso por teléfono, se usará un teléfono con bocina o una llamada tipo conferencia de manera que todas las partes puedan participar eficazmente en la audiencia.

## 12. ASISTENCIA A LA AUDIENCIA

Las audiencias de arbitraje deberán estar abiertas a observadores bajo términos razonables y no discriminatorios.

A menos que los aprueben todas las partes y el árbitro, nadie, aparte de BBB AUTO LINE, tendrá permitido llevar cámaras, lámparas, dispositivos de grabación ni ningún otro equipo a la audiencia.

Todos los observadores deberán estar sujetos a las instrucciones de BBB AUTO LINE en relación a la conducta adecuada.

## 13. SU AUSENCIA DE LA AUDIENCIA

Si una parte no asiste a la audiencia después de recibir el debido aviso de BBB AUTO LINE, el árbitro procederá con la audiencia y recibirá las pruebas de la otra parte. La parte que no asistió a la audiencia tendrá la oportunidad de presentar su posición por escrito dentro de los límites establecidos por BBB AUTO LINE. Si esa parte no

presenta su caso dentro de los límites de tiempo establecidos, el árbitro tomará una decisión sin tomar en cuenta la posición de esa parte.

## 14. ACTA DE LA AUDIENCIA

BBB AUTO LINE mantendrá información básica del expediente de su audiencia de arbitraje, como los nombres de los testigos y los documentos presentados como prueba durante la audiencia. A petición suya, se le proporcionarán copias de estos materiales y demás formularios oficiales de arbitraje relacionados con el caso. Podría cobrarse una cuota razonable por las copias.

BBB AUTO LINE audiograbará la audiencia si así lo solicitara una de las partes o el árbitro. Las copias de la cinta de audio se le proporcionarán a dicha parte si las solicita; podría cobrarse una cuota razonable por las copias. Las solicitudes de las copias de la grabación deben realizarse antes de que transcurran 60 días de la audiencia, ya que las cintas se borran después de ese tiempo.

## 15. JURAMENTO DE LOS PARTICIPANTES

Usted y sus testigos deberán estar bajo juramento durante la audiencia.

14

## 16.  PROCEDIMIENTOS DE LAS AUDIENCIAS

El árbitro decidirá el orden y los procedimientos en que usted presentará su parte del conflicto.

Usted tendrá la oportunidad de hacer una presentación personal de su caso, y puede presentar testigos y pruebas para apoyar su caso. También puede interrogar a las otras partes, a sus testigos y preguntar sobre sus pruebas. Después de que todos hayan presentado su caso, cada parte tendrá la oportunidad de hacer declaraciones finales.

Las partes deben limitar sus presentaciones a un máximo de una hora.

Si el árbitro determina que se necesita información adicional para tomar la decisión final, él podría establecer que se presenten estas pruebas adicionales en una audiencia subsiguiente o en la forma en que él lo considere apropiado. El árbitro hará todo lo posible para obtener toda la información necesaria con prontitud para así presentar la decisión dentro del límite de tiempo pertinente.

Antes de que el árbitro tome la decisión final, usted puede pedirle que le dé un número razonable de días para contestar a la declaración por escrito que presente la otra parte en la audiencia. El árbitro puede conceder su solicitud a su discreción.

Si el árbitro decide que se presenten pruebas

por escrito después de la audiencia inicial, estas pruebas deberán enviarse a BBB AUTO LINE en menos de cinco días, a menos que el árbitro especifique otro límite de tiempo. BBB AUTO LINE enviará una copia a la otra parte y solicitará una respuesta. Tanto las pruebas por escrito como las contestaciones deberán enviarse al árbitro a través de BBB AUTO LINE.

Cuando el árbitro esté convencido de que se han presentado todas las declaraciones y las pruebas, se cerrará la audiencia.

## 17. ADMISIÓN DE PRUEBAS EN LA AUDIENCIA

Usted puede presentar su caso sin las restricciones de las reglas de pruebas de los tribunales. Sin embargo, debe estar seguro de que sus pruebas sean relevantes al caso.

El árbitro podría limitar su presentación si piensa que es repetitiva o irrelevante.

## 18. DECLARACIONES O DOCUMENTOS DE LA PERSONA AUSENTE PARA LAS AUDIENCIAS TELEFÓNICAS

Si tiene un testigo que no puede asistir a la audiencia, puede presentar la declaración escrita de dicha persona al árbitro. Debe hacer copias

15

para que la otra parte la lea y la use para contestar.

Para ayudar a resolver su reclamo con prontitud, si presenta su caso por teléfono debe presentar a BBB AUTO LINE todos los documentos escritos que utilizará cuando menos siete días antes de la audiencia. BBB AUTO LINE le proporcionará estos documentos a la otra parte antes de la audiencia.

## 19.  CITATORIOS

Puede enviar a BBB AUTO LINE una solicitud para que el árbitro cite a testigos o pruebas que sean relevantes a su caso. Todas las solicitudes deben incluir una declaración explicando por qué el testigo o las pruebas son relevantes, y por qué cree que es necesario un citatorio. Si el árbitro está de acuerdo con su solicitud, se enviará un citatorio de acuerdo a la ley estatal. Los citatorios sólo pueden enviarse a personas dentro de California.

La parte que solicite el citatorio deberá ser responsable de los gastos involucrados en la emisión de dicho citatorio y deberá ser responsable de hacer cumplir el citatorio si la persona que recibiera el citatorio no aparece.

**16**

## 20.  ADMISIÓN DE PRUEBAS DESPUÉS DE LA AUDIENCIA

Antes de tomarse una decisión, el árbitro puede programar audiencias nuevas o adicionales o solicitar pruebas nuevas o adicionales para reunir todos los hechos relevantes acerca del conflicto.

Si el árbitro le ha pedido o permitido presentar pruebas adicionales para apoyar su caso, él establecerá una fecha de entrega para la cual tiene que enviarlas a BBB AUTO LINE.  BBB AUTO LINE le dará a la otra parte la oportunidad de contestar a sus pruebas y después le enviará todos los materiales al árbitro. Al momento que el árbitro reciba todos los materiales adicionales, se cerrará su audiencia. Al tomar una decisión, el árbitro puede tomar en cuenta el que alguna de las partes no haya presentado información solicitada o que no haya contestado a la información presentada.

Antes de que se tome una decisión, usted puede comunicarse con BBB AUTO LINE si tiene información nueva que le fue imposible presentar en su audiencia original y solicitar que se tome en cuenta. Toda información nueva debe enviarse a BBB AUTO LINE, quien la enviará a la otra parte para que la conteste y después la envíe al árbitro.

Después de que el árbitro tome una decisión en su caso, no pueden presentarse más argumentos ni pruebas, incluso si éstas fueran recién descubiertas o no hubieran estado al momento de la audiencia.

## 21. EL ACUERDO

Si todas las partes deciden voluntariamente llegar a un acuerdo antes de la audiencia, dicho acuerdo terminará el conflicto y no se realizará la audiencia.

Si se llega a un acuerdo después de la audiencia pero antes de la decisión final del árbitro, asegúrese de avisar de inmediato a BBB AUTO LINE.

## 22. LÍMITES DE TIEMPO

BBB AUTO LINE deberá hacer todo lo posible por obtener una decisión en su caso antes de 40 días a partir del día que se inicie su reclamo. Este período de tiempo puede extenderse:

a. por siete días si el consumidor no hizo nada para solicitar alguna reparación directamente del fabricante antes de presentar el reclamo; o

b. por hasta 30 días si el árbitro solicita una inspección o informe de un perito técnico independiente; consultas con personas con conocimientos de las áreas técnica, comercial u otra relacionada con el vehículo; la oportunidad para inspeccionar y hacer una prueba de manejo en el vehículo; o bien, más investigación e informes de BBB AUTO LINE en cualquier asunto que sea relevante para una decisión justa y rápida.

## 23. LA DECISIÓN

Cuando el árbitro llegue a una decisión sobre su caso, todas las partes recibirán la decisión por escrito acompañada de las razones del árbitro para tomar dicha decisión.

### A. Alcance de la decisión

La decisión deberá ser aquélla que el árbitro considere justa y que esté dentro de estas Reglas.

La decisión podría estipular que se ejecute una acción, se pague dinero o la combinación de estas soluciones. El árbitro puede conceder todo o parte de lo que usted solicita o puede decidir no conceder pago alguno o que se tome medida alguna.

La decisión del árbitro no está limitada a las soluciones solicitadas por el consumidor.

Todas las decisiones que requieran que se tome alguna medida por parte del fabricante requerirán que ésta se lleve a cabo antes de que transcurran 30 días después de que el fabricante reciba el aviso de que se ha aceptado la decisión. El tiempo para tomar las medidas deberá extenderse por retrasos causados por razones ajenas al control del fabricante o su representante, incluyendo los retrasos atribuidos a algún acto u omisión del consumidor, pero sólo mientras continúe existiendo la razón para el retraso.

17

**B. La decisión se le enviará a las partes**

El árbitro normalmente enviará su decisión a BBB AUTO LINE a más tardar en tres días hábiles a partir del cierre de la audición.

Bajo circunstancias especiales, el árbitro podría necesitar tiempo adicional para presentar la decisión y si esto ocurriera, BBB AUTO LINE informará a las partes.

BBB AUTO LINE enviará una copia de la decisión del árbitro. BBB AUTO LINE no leerá la decisión por teléfono.

**C. Decisión de reparación**

Una decisión de reparación establecerá las condiciones o síntomas que deben repararse y será responsabilidad del fabricante determinar qué reparaciones son necesarias para corregir dicha condición o síntoma.

Si se emite una decisión de reparación y el consumidor la acepta, éste deberá notificar a BBB AUTO LINE por escrito si la reparación no se realizó a satisfacción del consumidor. En este caso, el árbitro recibirá la información de todos los datos pertinentes y podría reconsiderar su decisión.

**D. Corrección matemática y de errores**

BBB AUTO LINE se reserva el derecho a corregir

18

los errores matemáticos obvios en la decisión.

**E. Aclaración de la decisión**

Usted puede solicitar que el árbitro aclare una decisión si no entendiera alguna medida que exija dicha decisión, o si usted y la otra parte no están de acuerdo sobre las medidas que exige la decisión. Las solicitudes de aclaración deben estar por escrito y presentarse en BBB AUTO LINE antes de la fecha en la que se tienen que tomar las medidas que requiere la decisión.

Las solicitudes adecuadas de aclaración se enviarán a las otras partes para que las contesten. BBB AUTO LINE enviará la solicitud de aclaración y las respuestas al árbitro, quien puede aclarar la decisión o reafirmar la decisión tal como se escribió. Antes de tomar una decisión sobre una solicitud de aclaración, el árbitro podría solicitar una conferencia telefónica con todas las partes.

No se puede pedir al árbitro que aclare las razones de la decisión.

**F. Aceptación o rechazo de la decisión**

BBB AUTO LINE enviará la decisión del árbitro al consumidor para que la acepte o rechace. Anexo a la decisión, estará un formulario de *Aceptación* o *Rechazo*. Para que una decisión sea aceptada, debe ser aceptada por todos los propietarios titulares del vehículo en cuestión.

El no devolver el formulario de *Aceptación* o *Rechazo* a BBB AUTO LINE antes de que transcurran 30 días de habérsele enviado al consumidor deberá considerarse como el rechazo a la decisión a menos que BBB AUTO LINE, por escrito, extienda este período por un número razonable de días debido a una buena causa.

Una vez que el consumidor *acepte* la decisión:

• El fabricante estará obligado a cumplir con la decisión y acatar sus términos

• El consumidor deberá acatar los términos de la decisión

Si el consumidor *rechaza* la decisión:

• El consumidor puede buscar otras soluciones legales bajo la ley estatal o federal

• El fabricante no estará obligado a cumplir con parte alguna de la decisión

• La decisión puede presentarse como prueba del consumidor o del fabricante en una acción judicial y

• La participación de BBB AUTO LINE en el caso terminará

**G. Verificación del cumplimiento**

Si el consumidor acepta la decisión, todas las partes deberán hacer lo que la decisión requiera

dentro de los límites de tiempo establecidos por el árbitro.

El plazo para el cumplimiento de la decisión deberá comenzar cuando el fabricante reciba el aviso por escrito de la aceptación del consumidor. Antes de que transcurran 10 días de la fecha del cumplimiento de la decisión, BBB AUTO LINE deberá comunicarse con el consumidor para verificar que se haya cumplido la decisión.

**24. PRESENTACIÓN OPORTUNA DE OBJECIONES**

Cualquier incumplimiento de estas reglas que pueda afectar considerablemente la independencia, la imparcialidad o la justicia del proceso de arbitraje deberán informarse a BBB AUTO LINE a la mayor brevedad posible.

**25. CONFIDENCIALIDAD DE LOS DATOS**

Es norma de BBB AUTO LINE el que los datos del proceso de resolución de conflictos se mantengan en privado y confidenciales.

BBB AUTO LINE no divulgará los resultados de su caso individual a ninguna persona ni grupo que no sea una de las partes del arbitraje a menos que todas las partes estén de acuerdo o a menos

19

que dicha divulgación sea necesario por ley o para procesos administrativos gubernamentales o judiciales pertinentes.

## 26. PROCESOS LEGALES/ EXCLUSIÓN DE RESPONSABILIDAD

Al participar en el arbitraje bajo estas Reglas, todas las partes acuerdan que el árbitro y/o los peritos técnicos no podrán ser emplazados por ninguna de las partes en ningún proceso legal subsiguiente.

Las partes acuerdan además que el BBB (incluyendo sus empleados), el Council of Better Business Bureaus (incluyendo sus empleados) y/o el árbitro no deberán ser responsables civilmente por ningún acto u omisión relacionado con algún caso del BBB AUTO LINE.

## 27. QUEJAS

Todas las quejas sobre la operación del programa o el cumplimiento de una decisión deberán enviarse a:

BBB AUTO LINE
Council of Better Business Bureaus
4200 Wilson Boulevard, Suite 800
Arlington, VA 22203-1838

**20**

BBB AUTO LINE investigará las quejas relacionadas con la operación del programa e informará al demandante los resultados de la investigación y todas las medidas correctivas que se hayan tomado.

BBB AUTO LINE también informará al Programa de Certificación de Arbitrajes (Arbitration Certification Program, ACP) los resultados de la investigación si el caso se tratara de un fabricante certificado por el ACP.

En los casos que se traten de fabricantes certificados, también puede presentar su queja con:

Arbitration Certification Program
Department of Consumer Affairs
State of California
1625 North Market Blvd
Suite N 112
Sacamento, CA 95334

## 28. DERECHO A SUSPENDER EL ARBITRAJE

BBB AUTO LINE se reserva en todo momento el derecho a suspender la administración de arbitraje de cualquier caso debido a la conducta de alguna de las partes.

APÉNDICE

## Sección 1793.2(d) de la Ley de Limón
## (Song-Beverly Consumer Warranty Act)

Sección 1793.2(d)(2) de la Ley de Limón llamada Song-Beverly Consumer Warranty Act (Sección 1790 del Código Civil de California et seq.) exige que el fabricante del vehículo, si no puede dar servicio o reparar el vehículo para acatar las garantías escritas del fabricante después de un número razonable de intentos, debe recomprar o reemplazar el vehículo.

## ¿Qué vehículos están cubiertos por la Sección 1793.2(d)(2)?

La Sección 1793.2(d)(2) cubre vehículos de motor (incluyendo los vehículos propiedad de concesionarios, de demostración u otros vehículos vendidos con la garantía de los automóviles nuevos del fabricante) que:

1. se vendan o alquilen con la garantía escrita de un vehículo nuevo y

2. (a) se usen o compren para usos personales, familiares o domésticos principalmente, O BIEN

(b) tengan un peso bruto vehicular menor a 10,000 libras (4,545 kilogramos) y que se

compren o usen principalmente para fines comerciales por una persona o negocio que no tenga más de cinco vehículos de motor registrados en el estado de California.

Aunque la Sección 1793.2(d)(2) no cubre todas las partes de una casa rodante, sí cubre el chasis y la cabina del chasis de la casa rodante.

## ¿Cuándo ha realizado el fabricante un número razonable de intentos de reparación?

La Sección 1793.2(d)(2) no ofrece una prueba que establezca de manera contundente cuándo se han realizado un número razonable de intentos de reparación dentro del periodo cubierto por la garantía escrita del fabricante.

Otra sección de la ley de limón (Song-Beverly Consumer Warranty Act[1] crea la suposición[2] de que se han realizado un número razonable de intentos de reparación si, antes de 18 meses a partir de la fecha de entrega al primer comprador al por menor/arrendatario o 18,000 millas del odómetro del vehículo, lo que ocurra primero, sucede una o más de las siguientes situaciones:

1. Los mismos resultados anormales en una condición que probablemente cause la muerte o una lesión física grave si se conduce el vehículo Y que la anomalía haya estado sujeta a reparaciones dos o más veces con el fabricante o sus agentes Y que el consumidor haya

21

notificado directamente cuando menos una vez al fabricante o de la necesidad de la reparación de la anomalía[3]; O BIEN

2. El fabricante o su agente (como un concesionario autorizado) ha reparado la misma anomalía cuatro o más veces y el consumidor ha notificado directamente cuando menos una vez al fabricante sobre la necesidad de reparación[3], O BIEN

3. El vehículo ha estado fuera de servicio más de 30 días civiles (acumulativos) desde la entrega debido a reparaciones del fabricante o su agente (como un concesionario autorizado) de una o más anomalías. El período de 30 días se extiende si las reparaciones no pueden realizarse debido a condiciones fuera del control del fabricante o agente.

## ¿Qué es una anomalía?

La Sección 1793.22(e)(1) define "anomalía" como la falta de conformidad a la garantía escrita que "impide considerablemente el uso, el valor o la seguridad de un vehículo nuevo de motor al comprador o arrendatario".

La Sección 1794.3 establece que la Ley de Limón (Song-Beverly Consumer Warranty Act) no se aplica a ningún defecto o anomalía en bienes de consumo que sea causada por el uso no autorizado o irrazonable del bien después de la venta.

22

Notas:

[1] Sección 1793.22, la cual se conoce como la Ley Tanner de Protección al Consumidor (Tanner Consumer Protection Act).

[2] Una suposición es una conclusión deducida de ciertos datos y puede superarse (refutarse) con datos adicionales.

[3] El consumidor tiene que notificar directamente al fabricante sólo si el fabricante ha explicado claramente este requisito en los documentos incluidos en la garantía o en el manual del propietario.



# EXHIBIT B

From: TA:10.100.0.2:25673,4159819445     Page: 2/15     Date: 5/10/2011 4:32:05 PM

## Customer Claim Form

| Case number: |
| Contact date: |
| Start date: |

**Please make any necessary corrections to the information below, <u>print</u> or verify your VIN number and lienholder/leasing company information at the bottom of this page, and complete the missing information in Section 4 on the next page (attach additional sheets as needed).**

### SECTION 1: CUSTOMER INFORMATION

Titled owner: Jeffrey A. Kaiser

Mailing address: 41 Vernal Ct.

City: Alamo                           State: CA        Zip code: 94507

Day phone: ( 415   ) 646-7174        Evening phone: ( 925   ) 997-0307     Cell phone: (   )

Fax: (   )                E-mail address: jkaiser@lskg-law.com

### SECTION 2: VEHICLE INFORMATION

Make: BMW               Model: 335I Convertible     Year: 2008        Current mileage: 17,500

Name(s) that appears on the vehicle title:  Jeffrey A. Kaiser

Selling dealer/city/state:  Concord BMW

Primary Servicing dealer/city/state: Concord BMW

Acquired as   xx new   ☐ used   ☐ demo   ☐ leased        Is the vehicle in your possession? x☐ yes   ☐ no

Purchase/lease date:   7/12/08                               Mileage at purchase/lease: 0

First repair attempt date: 11/6/09                 First repair attempt mileage:  10,759

| How often is the vehicle used for business purposes (percentage): | 0 % | Number of vehicles registered in California by vehicle owner/lessee: 3 | Transmission type: x Automatic  ☐ Manual |

Has the vehicle been in an accident/had body damage?   yes   x no        Date of accident:    n/a

Description of damage:

### SECTION 3: DESIRED OUTCOME (Describe what you want done to resolve your concern)

Sell back the car to BMW

**Please complete the missing information in the box below and on page 2.**

VEHICLE INDENTIFICATION NUMBER  _WBAWL735X8PX59756_____
Page 1 of 2

Lienholder/Leasing Company _____

**Page 1 of 2**

## SECTION 4: VEHICLE PROBLEMS (List primary problem first)

| Problem | Servicing dealer(s) | # of repair attempts | List the date, mileage, and days out of service for each repair attempt | Does the problem exist now? |
|---|---|---|---|---|
| Restraint System Malfunction | Concord BMW | 5 | 11/6/09<br>4/5/10<br>7/26/10<br>9/4/10<br>11/16/10 | Yes |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Total days out of service for all problems:** _Many_

Signature of Titled Owner(s) _[signature]_     Date _5/10/11_
I am submitting this dispute for resolution in the BBB AUTO LINE program, and I agree to arbitrate the dispute under the BBB AUTO LINE Arbitration Rules.

**Please mail or fax this completed form with copies of all available repair orders, your vehicle registration, your sales agreement or lease agreement, and any other relevant documents (e.g., written correspondence with the manufacturer, etc.) to:**

**BBB AUTO LINE**
**4200 Wilson Blvd., Suite 800**
**Arlington VA, 22203-1838**
**Fax: 703-247-9700**

# EXHIBIT C

BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
TITLE 16. PROFESSIONAL AND VOCATIONAL REGULATIONS
DIVISION 33.1. ARBITRATION CERTIFICATION PROGRAM
ARTICLE 1.

§ 3396.1. Definitions

(a) "Applicable law" means the portions of the Song-Beverly Consumer Warranty Act (Civil Code
Sections 1790-1795.7) that pertain to express and implied warranties and remedies for breach;
the portions of Division 2 (commencing with Section 2101) of the Commercial Code that pertain
to express and implied warranties and remedies for breach; the portions of Sections 43204,
43205 and 43205.5 of the Health and Safety Code that pertain to automobile emissions
warranties; Chapter 9 of Division 1 of the Business and Professions Code, pertaining to
certification of dispute resolution processes, and this subchapter.

(b) "Applicant" means a manufacturer seeking certification of an arbitration program sponsored
and used by the manufacturer, or an arbitration program and a manufacturer jointly seeking
certification of an arbitration program used by the manufacturer.

(c) "Arbitration program" means a "dispute resolution process," as that term is used in Civil
Code Sections 1793.22(c)-(d) and 1794(e), and Business and Professions Code Section 472,
established to resolve disputes involving written warranties on new motor vehicles. The term
includes an "informal dispute settlement procedure," as that term is used in Section 703.1(e) of
Title 16 of the Code of Federal Regulations, established to resolve disputes involving written
warranties on new motor vehicles. The term includes an "informal dispute settlement
mechanism," as that term is used in 15 U.S.C. 2310(a)(1), and an "informal dispute settlement
procedure," as that term is used in Section 703.1(e) of Title 16 of the Code of Federal
Regulations, established to resolve disputes involving written warranties on new motor vehicles.
The term includes those components of a program for which the manufacturer has
responsibilities under Article 2 of this subchapter.

(d) "Arbitrator" means the person or persons within an arbitration program who actually decide
disputes.

(e) "Arbitration Certification Program" means the Arbitration Certification Program of the
Department of Consumer Affairs.

(f) "Certification" means a determination by the Arbitration Certification Program, made
pursuant to this subchapter, that an arbitration program is in substantial compliance with Civil
Code Section 1793.22(d), Chapter 9 of Division 1 of the Business and Professions Code, and this
subchapter.

(g) "Consumer" means any individual who buys or leases a new motor vehicle from a person
(including any entity) engaged in the business of manufacturing, distributing, selling, or leasing
new motor vehicles at retail. The term includes a lessee for a term exceeding four months,
whether or not the lessee bears the risk of the vehicle's depreciation. The term includes any
individual to whom the vehicle is transferred during the duration of a written warranty or under
applicable state law to enforce the obligations of the warranty. The name of the registered owner
or class of motor vehicle registration does not by itself determine the purpose or use.

1

(h) "Days" means calendar days unless otherwise stated.

(i) "Independent automobile expert" means an expert in automotive mechanics who is certified in the pertinent area by the National Institute for Automotive Service Excellence (NIASE). The expert may be a volunteer, or may be paid by the arbitration program or the manufacturer for his or her services, but in all other respects shall be in both fact and appearance independent of the manufacturer.

(j) "Manufacturer" means a new motor vehicle manufacturer, manufacturer branch, distributor or distributor branch, required to be licensed pursuant to Article 1 (commencing with Section 11700) of Chapter 4 of Division 5 of the Vehicle Code, or any other person (including any entity) actually making a written warranty on a new motor vehicle.

(k) "New motor vehicle" means a new motor vehicle which is used or bought for use primarily for personal, family or household purposes. "New motor vehicle" also means a new motor vehicle with a gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person, including a partnership, limited liability company, corporation, association, or any other legal entity, to which not more than five motor vehicles are registered in this state. The term includes a dealer-owned vehicle, a "demonstrator," and any other motor vehicle sold or leased with a manufacturer's new car warranty. The term does not include a motorcycle, or a motor vehicle which is not registered under the Vehicle Code because it is to be operated or used exclusively off the highways. The term "new motor vehicle" also includes the chassis and chassis cab of the motor home, and that portion of a motor home devoted to its propulsion, but does not include any portion of a motor home designed, used or maintained primarily for human habitation. A "motor home" is a vehicular unit built on, or permanently attached to, a self-propelled motor vehicle chassis, chassis cab or van, which becomes an integral part of the completed vehicle, designed for human habitation for recreational or emergency occupancy. A "demonstrator" is a vehicle assigned by a dealer for the purpose of demonstrating qualities and characteristics common to vehicles of the same or similar model and type.

(l) "Nonconformity" means any defect, malfunction or failure to conform to the written warranty.

(m) "Substantial nonconformity" means any defect, malfunction or failure to conform to the written warranty which substantially impairs the use, value or safety of the new motor vehicle to the consumer.

(n) "Written warranty" means either:

(1) any written affirmation of fact or written promise made by a manufacturer to a consumer in connection with the sale or lease of a new motor vehicle which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect-free or will meet a specified level of performance over a specified period of time;

(2) any undertaking in writing made by a manufacturer to a consumer in connection with the sale or lease of a new motor vehicle to refund, repair, replace, or take other remedial action with respect to the vehicle in the event that the vehicle fails to meet the specifications set forth in the undertaking, which written affirmation, promise or undertaking becomes part of the basis of the bargain.

2

ARTICLE 2. MINIMUM STANDARDS FOR MANUFACTURERS

§ 3397.1. General Duties

(a) The manufacturer shall fund and staff the arbitration program at a level sufficient to ensure fair and expeditious resolution of all disputes.

(b) The manufacturer shall take all steps necessary to ensure that the arbitration program, and its arbitrators and staff, are sufficiently insulated from the manufacturer and the sponsor (if other than the manufacturer), so that the decisions of the arbitrators and the performance of the staff are not influenced by either the manufacturer or the sponsor.

(c) The manufacturer shall comply with any reasonable requirements imposed by the arbitration program to fairly and expeditiously resolve warranty disputes, and shall perform all obligations to which it has agreed concerning the handling and resolution of disputes.

(d) The manufacturer shall comply with the provisions of both this part and Article 3 of this subchapter insofar as they impose obligations on the manufacturer.

§ 3397.2. Disclosures by Manufacturer to Consumers

(a) The manufacturer shall include together, either in its written warranty or in a separate section of materials accompanying each vehicle sold or leased in California, in clear and readily understood language, the following information about the manufacturer's arbitration program and how to use it:

(1) Either

(A) a form addressed to the arbitration program containing spaces requesting the information which the program may require for prompt resolution of warranty disputes, or

(B) a telephone number of the arbitration program which consumers may use without charge.

(2) The name and address of the arbitration program.

(3) A brief description of the arbitration program's procedures and how to use them. The Arbitration, Certification Program may reproduce such materials to inform the public about each program.

(4) The time limits adhered to by the arbitration program.

(5) The types of information which the arbitration program may require for prompt resolution of warranty disputes.

(6) If applicable, a clear statement explaining any requirement imposed by the manufacturer that the consumer resort to the arbitration program before invoking rights or remedies conferred by 15 USC Section 2310 or Civil Code Section 1793.22(b), together with a disclosure that the consumer is not required to resort to the program if the consumer chooses to seek

3

redress by pursuing rights and remedies not created by those laws.

(7) Any limits on the scope of the decision, if authorized by Section 3398.10(d).

(8) A statement that if the consumer accepts the decision of the arbitration program, the manufacturer will be bound by the decision, and will comply with the decision within a reasonable time not to exceed 30 days after the manufacturer receives notice of the consumer's acceptance of the decision.

(9) A statement that the consumer may reject the decision and go to court, and that the decision and any findings will be admissible in any court action.

(b) The form described in subdivision (a)(1)(A) of this section may request any information reasonably necessary to decide the dispute including:

(1) The consumer's name, address and telephone number.

(2) The brand name and vehicle identification number (VIN) of the vehicle.

(3) The approximate date of the consumer's acquisition of the vehicle.

(4) The name of the selling dealer or the location where the vehicle was acquired.

(5) The current mileage.

(6) The approximate date and mileage at the time the problem was first brought to the attention of the manufacturer or any of its repair facilities.

(7) A brief statement of the nature of the problem and whether the problem is continuing.

(8) The names if known of any other dealers where the vehicle was serviced.

(9) A statement of the relief that is sought.


§ 3397.3. Resolution of Disputes Directly by Manufacturer

(a) The manufacturer shall take steps reasonably calculated to make consumers aware of the arbitration program's existence at the time consumers experience warranty disputes.

(b) Nothing contained in this subchapter shall limit the manufacturer's option to encourage consumers to seek redress directly from the manufacturer as long as the manufacturer does not expressly require consumers to seek redress directly from the manufacturer. The manufacturer shall proceed fairly and expeditiously to attempt to resolve all disputes submitted directly to the manufacturer.

(c) Whenever a dispute is submitted directly to the manufacturer, the manufacturer shall, within a reasonable time, decide whether and to what extent it will attempt to satisfy the consumer, and shall inform the consumer of its decision. In its notification to the consumer of its decision, the manufacturer shall include the information specified in subdivision (a) of Section 3397.2.

(d) Disputes settled after the arbitration program has received notification of the dispute shall be subject to Sections 3398.9(b) and 3398.12(b).

§ 3397.4. Manufacturer's Duty to Aid in Investigation

(a) The manufacturer shall respond fully and promptly to reasonable requests by the arbitration program for information relating to disputes.

(b) The manufacturer shall fully and promptly respond to reasonable requests by the arbitration program for any pertinent documents in its possession or under its control, such as:

(1) technical service bulletins;

(2) recall or parts replacement notices;

(3) U.S. Department of Transportation publications;

(4) repair records for a particular vehicle; and

(5) any other documents which it is reasonable that the manufacturer should provide.

§ 3397.5. Manufacturer's Duties Following Decision

(a) The decision shall be binding on the manufacturer if the consumer elects to accept the decision.

(b) The manufacturer shall perform any decision of an arbitration program within the time prescribed by the decision, which shall be a reasonable time not to exceed 30 days after the manufacturer is notified that the consumer has accepted the decision. Delays caused by reasons beyond the control of the manufacturer or its representatives, including any delay directly attributable to any act or omission of the consumer, shall extend the period for performance, but only while the reason for the delay continues.

(c) When the decision of the arbitration program provides that the nonconforming motor vehicle be replaced or that restitution be made to the consumer, and the decision is subject to Civil Code Section 1793.2(d), the manufacturer shall either replace the vehicle if the consumer consents to this remedy or make restitution, and shall do so in accordance with Civil Code Section 1793.2(d)(2)(A), (B) and (C).

(d) The manufacturer shall not attempt to negotiate a settlement with the consumer between the time a decision of an arbitration program is disclosed to the manufacturer and the time the decision is disclosed to the consumer.

ARTICLE 3. MINIMUM STANDARDS FOR ARBITRATION PROGRAMS

§ 3398.1. Organization of Arbitration Program

5

(a) The arbitration program shall be funded and competently staffed at a level sufficient to ensure fair and expeditious resolution of all disputes.

(b) The arbitration program shall not charge consumers any fee for use of the program.

(c) The manufacturer, and the sponsor of the arbitration program (if other than the manufacturer), shall take all steps necessary to ensure that the arbitration program, and its arbitrators and staff, are sufficiently insulated from the manufacturer and the sponsor, so that the decision of the arbitrators and the performance of the staff are not influenced by either the manufacturer or the sponsor.

(d) Steps necessary to insulate the arbitration program from influence by the manufacturer or sponsor shall include, at a minimum:

(1) committing funds in advance,

(2) basing personnel decisions solely on merit, and

(3) not assigning conflicting manufacturer or sponsor duties to program staff persons.

(e) Steps necessary to insulate the arbitration program from influence by the manufacturer or sponsor also shall include steps necessary to insulate the program's arbitrators from influence. At the very least, no employee, agent or dealer of the manufacturer shall communicate directly or otherwise participate substantively regarding the merits of any dispute with the arbitrator who is to decide that dispute, except:

(1) the information that is communicated is disclosed to the consumer and the consumer is afforded an opportunity to explain or rebut the information and to submit additional information before a decision is rendered, or

(2) as permitted by Section 3398.8.

(f) The arbitration program shall impose any other reasonable requirements necessary to ensure that the members and staff act fairly and expeditiously in each dispute.

(g) An arbitration program shall maintain both the fact and appearance of impartiality.


§ 3398.2. Qualification, Selection and Training of Arbitrators

(a) Arbitrators shall be persons interested in the fair and expeditious resolution of consumer disputes.

(b) No arbitrator deciding a dispute shall be a party to the dispute, or an employee or agent of a party other than for purposes of deciding disputes.

(c) No arbitrator deciding a dispute shall be a person who is or may become a party in any legal action, including but not limited to a class action in which the arbitrator is a representative of the class that relates to the product or complaint in dispute, or an employee or agent of such person other than for purposes of deciding disputes.

6

(d) For purposes of subdivisions (b) and (c) of this section, a person shall not be considered a "party" solely because he or she acquires or owns an interest in a party solely for investment, and the acquisition of ownership of an interest which is offered to the general public shall be prima facie evidence of its acquisition or ownership solely for investment.

(e) When one or two arbitrators are deciding a dispute, all shall be persons having no direct involvement in the manufacture, distribution, sale or service of any product. When three or more arbitrators are deciding a dispute, at least two-thirds shall be persons having no direct involvement in the manufacture, distribution, sale or service of any product. "Direct involvement" shall not include acquiring or owning an interest solely for investment, and the acquisition or ownership of an interest which is offered to the general public shall be prima facie evidence of its acquisition or ownership solely for investment.

(f) A person who is otherwise qualified to serve as an arbitrator under subdivisions (a) through (e) of this section shall not be disqualified solely because the person is a dealer of the manufacturer.

(g) Where arbitrators are selected from a list of arbitrators, selection shall be on a random basis.

(h) The arbitration program shall provide each arbitrator who is assigned to decide disputes with the text and an explanation of the applicable law (Section 3396.1(a)).

(i) The arbitration program shall provide each arbitrator with relevant training, including periodic updates and refresher courses, which shall include training in the principles of arbitration; training in the applicable law including the rights and responsibilities of arbitrators under this subchapter (including the right to request an inspection or other action under Section 3398.5(f)); and training in what a decision must and may include (Sections 3398.9 and 3398.10).

(j) An arbitrator who does not meet the qualifications in this section or who cannot demonstrate both the fact and appearance of fairness and impartiality in deciding disputes shall disqualify himself or herself.


§ 3398.3. Written Operating Procedures

(a) The arbitration program shall establish written operating procedures which shall include all of the arbitration program's policies and procedures that implement the standards set forth in this subchapter. The written procedures shall be updated at reasonable intervals to reflect the procedures in effect.

(b) The arbitration program shall provide one copy of the written operating procedures without charge to a consumer who (1) has notified the program of a dispute and (2) either has requested more information about the arbitration program or has requested a copy of the program's written operating procedures, and also to each of the program's arbitrators.

(c) The arbitration program shall provide one copy of the written operating procedures for a reasonable charge to any other person upon request.

7

§ 3398.4. Duties on Receipt of Dispute

(a) Upon notification of a dispute, including a dispute over which the program believes it does not have jurisdiction, the arbitration program shall immediately notify both the manufacturer and the consumer of its receipt of the dispute.

(b) Notification shall be deemed to have occurred when the arbitration program has received notice of the consumer's name and address, the brand name and vehicle identification number of the vehicle (if requested by the program), and a statement of the nature of the problem or other complaint.

(c) At the time the arbitration program notifies the consumer of its receipt of the dispute, the program shall provide the consumer with the following information in clear and readily understood language:

(1) The information specified in Section 3397.2(a) on how to use the arbitration program.

(2) A statement of any other steps that the consumer must take, including the submission of additional information or materials, to enable the arbitration program to investigate and decide the dispute.

(3) A statement of the kinds of additional information and materials, such as copies of repair invoices, reports of inspection, technical service bulletins and other relevant information and documents, that the arbitration program will consider in investigating and deciding the dispute, and of the consumer's right to provide additional information or materials.

(4) A statement of the consumer's right to obtain a copy of the arbitration program's written operating procedures upon request and without charge.

(5) A description of the steps the arbitration program will take and the time periods within which those steps normally are taken.

(6) Any limits on the scope of the decision, if authorized by Section 3398.10(d).

(7) A toll-free telephone number to obtain information on the status of the dispute.

(d) If authorized by the arbitration program's written operating procedures (Section 3398.3(a)), the staff of the arbitration program may decide that the program does not have jurisdiction to decide a dispute. In this event, the program:

(1) shall explain to the consumer in writing the reasons that the program has so decided,

(2) shall inform the consumer that an arbitrator will consider a written appeal of this decision made by the consumer within 30 days after the date the written notification of the decision was transmitted to the consumer, and

(3) shall explain how to file a written appeal.


§ 3398.5. Investigation of Facts

8

(a) The arbitration program shall investigate, gather and organize all information necessary for a fair and expeditious decision in each dispute.

(b) The arbitration program shall not require from any party any information not reasonably necessary to decide the dispute.

(c) When the consumer's complaint, or the manufacturer's response, or any evidence gathered by or submitted to the arbitration program, raises any of the following issues, the program shall investigate those issues:

(1) Whether the program has jurisdiction to decide the dispute.

(2) Whether there is a nonconformity (Section 3396.1(1)).

(3) Whether the nonconformity is a substantial nonconformity (Section 3396.1(m)).

(4) The cause or causes of a nonconformity.

(5) Whether the causes of a nonconformity include unreasonable use of the vehicle.

(6) The number of repair attempts.

(7) The time out of service for repair.

(8) Whether the manufacturer has had a reasonable opportunity to repair the vehicle.

(9) Factors that may affect the reasonableness of the number of repair attempts.

(10) Other factors that may affect the consumer's right to a replacement of the vehicle or restitution under Civil Code Section 1793.2(d)(2).

(11) Facts that may give rise to a presumption under Civil Code Section 1793.2(d)(2).

(12) Factors that may rebut any presumption under Civil Code Section 1793.22(b).

(13) Whether a further repair attempt is likely to remedy the nonconformity.

(14) The existence and amount of any incidental damages, including but not limited to sales taxes, license fees, registration fees, other official fees, prepayment penalties, early termination charges, earned finance charges, and repair, towing and rental costs, actually paid, incurred or to be incurred by the consumer.

(15) Factors that may affect the manufacturer's right to an offset for mileage under Civil Code Section 1793.2(d).

(16) Facts for determining the amount of any offset for mileage under Civil Code Section 1793.2(d) if an offset is appropriate.

(17) Factors that may affect any other remedy under the applicable law.

(18) Any other issue that is relevant to the particular dispute.

(d) The investigation required by this section may be conducted by the arbitrator or arbitrators who decide the dispute, or by other program staff, or by the arbitrator or the arbitrators and other program staff.

(e) If the arbitration program determines that the program does not have jurisdiction to decide the dispute, the program's investigation of the dispute need not include other issues.

(f) The arbitrator or a majority of the arbitrators may at any time request of the arbitration program any or all of the following at no cost to the consumer:

(1) An inspection and written report on the condition of the vehicle by an independent automobile expert (Section 3396.1(i)).

(2) Consultation with any other person or persons knowledgeable in the technical, commercial or other areas relating to the vehicle, provided that the consultation does not violate Sections 3398.1(c) and (e).

(3) An opportunity for the arbitrator, or one or more of the arbitrators, to personally inspect and test drive the vehicle.

(4) Further investigation and report by the arbitration program on any issue relevant to a fair and expeditious decision.

(g) The staff of the arbitration program may arrange for a visual inspection and test drive of the vehicle or an inspection and report on the vehicle by an independent automotive expert or a consultation with any other expert at no cost to the consumer.


§ 3398.6. Resolution of Contradictory Information

(a) When information which will or may be used in the decision, submitted by one party or by a consultant, independent automobile expert or any other source, tends to contradict facts submitted by the other party, the arbitration program shall clearly, accurately, and completely disclose to both parties the contradictory information (and its source), and shall provide to both parties an opportunity to explain or rebut the information and to submit additional information or materials.

(b) If it appears to the arbitrator at a meeting held to decide a dispute that one party to the dispute or a consultant, independent automobile expert or any other person has submitted information that contradicts facts submitted by the other party (whether submitted prior to the meeting or at the meeting), and that this fact has not been disclosed to that other party, the arbitrator may (and at the request of the other party shall) defer any decision until the arbitration program has complied with subdivision (a) of this section and both parties have had a reasonable opportunity to explain or rebut the information and to submit additional information or materials.

(c) The arbitration program shall develop and implement fair procedures by which any party may correct an error in the proceeding, provided that the other party has a reasonable opportunity to comment on the correction.

(d) The time limit for deciding disputes (Section 3398.9(a)) shall not be extended during any exchange, rebuttal or explanation of contradictory information under subdivision (a) of this section, but the Arbitration Certification Program may take into account circumstances leading to reasonable delays.

§ 3398.7. Meetings to Decide Disputes

(a) Meetings of the arbitrator or panel of arbitrators held to hear and decide disputes shall be open to observers on reasonable and nondiscriminatory terms. The identity of the parties and products involved in disputes need not be disclosed at these meetings.

(b) The arbitration program shall give the consumer and the manufacturer at least five days advance notice of the date, time and location of any meeting at which their dispute will or may be decided.

(c) The arbitration program shall furnish to each arbitrator, at least five days before the meeting, a copy of all of the program's records pertaining to the dispute that are available to the program at that time. Upon the Arbitration Certification Program's request, the program also shall furnish a copy of those records to the Arbitration Certification Program.

(d) Upon request by the Arbitration Certification Program, the arbitration program shall notify the Arbitration Certification Program of the date, time and location of the meeting or meetings held to decide particular disputes or classes of disputes.

(e) Only the arbitration program's staff and the arbitrator may participate in a meeting held to hear and decide disputes, except that the parties to the dispute or their representatives may make oral presentations or correct errors when permitted under Section 3398.8.

(f) If a request is made under Section 3398.5(f), the meeting may be continued for a reasonable period not to exceed 30 days; the arbitration program, as part of its investigation of the facts (Section 3398.5(a)), shall take all steps reasonable and necessary to comply with the request, and shall gather and organize the resulting information for use by the arbitrator in deciding the dispute.

§ 3398.8. Oral Presentations by Parties to Disputes

(a) The arbitration program may allow an oral presentation by a party to a dispute (or a party's representative) only if:

(1) Both the manufacturer and the consumer expressly agree to the presentation.

(2) Prior to the agreement, the arbitration program fully discloses to the consumer the following information:

(A) That the presentation by either party will take place only if both parties so agree, but that if they agree, and one party fails to appear at the agreed upon time and place, the presentation by the other party may still be allowed.

(B) That the arbitrator will decide the dispute whether or not an oral presentation is made.

11

(C) The proposed date, time and place for the presentation.

(D) A brief description of what will occur at the presentation, including the parties' rights to bring witnesses and/or counsel.

(3) Each party has the right to be present during the other party's oral presentation.

(b) Nothing contained in this section shall preclude the arbitration program from allowing an oral presentation by one party, if the other party fails to appear at the agreed upon time and place, as long as all of the requirements of subdivision (a) of this section have been satisfied. In that event, the arbitrator may either decide the dispute or give the absent party an opportunity to explain or rebut any contradictory information and submit additional materials before a decision is made.

(c) Notwithstanding subdivision (a) of this section, a party may correct an error at a meeting if all parties are personally present or represented and all parties expressly consent.


§ 3398.9. Decision-Making Timelines and Procedures

(a) If the dispute has not been settled (subdivision (b) of this section), the arbitration program shall, as expeditiously as possible but at least within 40 days after receiving notification of the dispute, and except where extensions are permitted under subdivision (c) of this section, disclose to the consumer and the manufacturer its decision and the reasons therefor (Section 3398.10(e)).

(b) For purposes of subdivision (a) of this section, a dispute shall be deemed settled when the arbitration program has ascertained from the consumer that:

(1) the manufacturer and the consumer have entered into an agreement settling the dispute,

(2) the consumer is satisfied with the terms of the settlement agreement, and

(3) the agreement contains a specified reasonable time for performance. Section 3398.12(b) on the program's duty to verify performance shall apply in the event of a settlement made after the program has received notification of the dispute.

(c) The arbitration program may delay the performance of its duties under subdivision (a) of this section beyond the 40-day standard in the following situations:

(1) For a seven-day period in those disputes in which the consumer has made no attempt to seek redress directly from the manufacturer.

(2) If and to the extent that the delay is due solely to failure of a consumer to provide promptly his or her name and address, the brand name and vehicle identification number (VIN) of the vehicle, and a statement of the nature of the defect or other complaint.

(3) For a reasonable period not to exceed 30 days to enable the arbitration program to respond to a request made under subdivision (f) of Section 3398.5.

§ 3398.10. Content of Decision

(a) The arbitrator shall render a fair decision based upon the information gathered by the arbitration program in its investigation of the facts (Section 3398.5) and upon any information submitted by the parties under Section 3398.8 at the meeting to decide disputes.

(b) The decision shall take into account all legal and equitable factors, including but not limited to the written warranty, the applicable law, and any other equitable considerations appropriate in the circumstances.

(c) The decision shall include any remedies which the arbitrator finds appropriate under the circumstances, including repair, replacement, refund, reimbursement for expenses, compensation for damages, and any other remedies available under the written warranty or the applicable law, and need not be limited to the specific relief sought by the consumer.

(d) Nothing in this section requires that decisions must consider or provide remedies in the form of awards of punitive damages or multiple damages under Civil Code Section 1794(c), attorney's fees under Civil Code Section 1794(d), or consequential damages other than (1) incidental damages to which the consumer is entitled under Civil Code Section 1793.2(d)(2), or (2) any other remedies provided under Civil Code Section 1794(a) and (b), provided that any limit on the scope of the remedies, pursuant to this subdivision, shall be limited to those authorized in this subdivision, and shall be disclosed with the information required under Sections 3397.2(a) and 3398.4(c).

(e) The decision shall be in writing and shall include a brief statement of the reasons therefor. The statement of reasons shall include the arbitrator's determination of each issue identified in Section 3398.5(c) relevant to the particular dispute.

(f) The decision shall prescribe a reasonable time, not to exceed 30 days after the manufacturer (or its agents) is notified that the consumer has accepted the decision, within which the manufacturer or its agents must perform the terms of the decision.

(g) No agreement to arbitrate shall limit an arbitrator's authority to provide any remedies, except as authorized by this section.


§ 3398.11. Replacement and Refund

(a) If the dispute involves the fact or allegation of a substantial nonconformity (Section 3396.1(m)) that has not been rectified, this section shall apply.

(b) In determining whether the consumer is entitled to a replacement or refund, the arbitrator shall take into account the standards expressed in Civil Code Section 1793.2(d) and 1793.22, if those standards are applicable under the circumstances of the dispute. For purposes of this section, "take into account" means to be aware of the standards; to understand how they might apply to the circumstances of the particular dispute; and to apply them if it is legally proper and fair to both parties to do so.

(c) If the decision provides for a replacement or refund, and is subject to Civil Code Section 1793.2(d), the decision shall require the manufacturer to replace the motor vehicle or make

13

restitution in accordance with Civil Code Sections 1793.2(d)(2)(A), (B) and (C). The decision shall include payment of incidental damages to the extent authorized by the applicable law including Commercial Code Sections 2711 to 2715 inclusive, and Civil Code Sections 1793.2(d)(2) and 1794(a) and (b); and shall include all reasonable repair, towing and rental car costs, any sales or use tax, license fees, registration fees, other official fees, prepayment penalties, early termination charges and earned finance charges, if actually paid, incurred or to be incurred by the consumer (but need not include charges for which the consumer is justly responsible). If the arbitrator decides that the manufacturer is entitled to an offset for mileage, the offset shall be calculated in conformance with Civil Code Section 1793.2(d)(2)(C).

(d) The arbitration program may adopt procedures by which the staff of the program may calculate the exact amount of the mileage offset and any damages in conformance with the decision of the arbitrator and Civil Code Section 1793.2(d)(2)(A), (B) and (C). In the exercise of these duties, the staff may only act in a clerical or ministerial capacity, and may not exercise any decision-making function, which shall be performed by the arbitrator only.

§ 3398.12. Acceptance and Performance of Decision

(a) The arbitration program shall inform the consumer, at the time of the disclosure of the decision (Section 3398.9(a)), in clear and readily understood language, of each of the following:

(1) The consumer may either accept or reject the decision.

(2) If the consumer accepts the decision, the manufacturer is bound by the decision.

(3) If the consumer rejects the decision, or accepts the decision and the manufacturer does not promptly perform the terms of the decision, the consumer may seek redress by pursuing his or her legal rights and remedies, including use of the small claims court.

(4) The consumer has 30 calendar days after the arbitration program transmits the notification described in Section 3398.9(a) in which to accept the decision. If no decision is made within that period, the consumer's failure to accept the decision will be considered a rejection of the decision and the manufacturer shall not be bound to perform it.

(5) If the decision provides for a further repair attempt or any other action by the manufacturer, the program will ascertain from the consumer whether performance has occurred.

(6) The arbitration program's decision and findings are admissible in evidence in any court action.

(7) The consumer may obtain a copy of the arbitration program's written operating procedures upon request and without charge.

(8) The consumer may obtain copies of all of the arbitration program's records relating to the dispute, at a reasonable cost.

(9) The consumer may regain possession without charge of all documents which the consumer has submitted to the program, except where good accounting practice requires that the manufacturer retains original documents upon which disbursements have been made.

14

(10) If the consumer has a complaint regarding the operation of the arbitration program, the consumer may register a complaint with the Arbitration Certification Program.

(11) The address and telephone number of the Arbitration Certification Program.

(b) If the manufacturer is required to perform any obligations as part of a settlement, or if the manufacturer is obligated to take any action to implement a decision, the program shall ascertain from the consumer, within 10 days after the date set for performance, whether such performance has occurred.

(c) If the consumer asserts that the manufacturer's performance of a further repair attempt has not occurred to the consumer's satisfaction, the arbitration program shall promptly inform the arbitrator who decided the dispute of all of the pertinent facts. In that event the arbitrator (or a majority of the arbitrators) may decide to reconsider the decision. A decision under this subdivision to reconsider a decision may be made at any time and need not be made at a meeting to decide disputes (Section 3398.7).

(d) If the arbitrator decides to reconsider the decision, the decision to reconsider shall be deemed to constitute notification of the dispute (Section 3398.4), and the program shall investigate the dispute and in all respects treat it as a new dispute, except that the program shall expedite all phases of the process, and the same arbitrator or arbitrators, if reasonably possible, shall decide the dispute.

§ 3398.13. Recordkeeping by Arbitration Programs

(a) The arbitration program shall maintain records on each dispute of which it has received notification, which shall include all of the following:

(1) Name, address and telephone number of the consumer.

(2) Name, address, and telephone number of contact person of the manufacturer.

(3) Make and vehicle identification number of the vehicle involved.

(4) The date of receipt of the dispute and the date of disclosure to the consumer of the decision.

(5) All letters and other written documents submitted by either party.

(6) All other evidence collected by the arbitration program relating to the dispute, including summaries of relevant and material portions of telephone calls and meetings between the program and any other person (including any experts or consultants described in Section 3398.5(f), and any letter and summaries of any oral communication by the program to the parties to resolve contradictory information (Section 3398.6).

(7) A summary of any relevant and material information presented by either party at an oral presentation under Section 3398.8.

(8) The decision of the arbitrator, with information as to date, time and place of meeting, the identity of arbitrators voting, and the reasons for the decision, with the reasons for any dismissal for lack of jurisdiction or decision to reconsider, and information on any voluntary settlement.

15

(9) A copy of the disclosure to the parties of the decision.

(10) The fact and date of completion of any performance required by the decision or by any settlement made after the program has received notification of the dispute.

(11) Copies of follow-up letters (or summaries of relevant and material portions of follow-up telephone calls) to the manufacturer and the consumer and responses thereto.

(12) Any other documents and communications (or summaries of relevant and material portions of oral communications) relating to the dispute.

(b) The arbitration program shall maintain a current index of each manufacturer's disputes grouped under brand name and subgrouped under product model.

(c) The arbitration program shall maintain a current index for each manufacturer which shows:

(1) All disputes in which the manufacturer has promised some performance (either by settlement or in response to a program decision) and has failed to comply.

(2) All disputes in which the manufacturer has refused to abide by a program decision.

(3) All disputes in which the consumer has registered a complaint regarding the decision, its performance by the manufacturer, or the operation of the program.

(d) The arbitration program shall maintain a current index which shows all disputes delayed beyond the time allowed under Section 3398.9.

(e) The arbitration program shall compile semiannually and maintain statistics which show the number and percentage of disputes in each of the following categories:

(1) Resolved by staff of the arbitration program and manufacturer has complied.

(2) Resolved by staff of the arbitration program, time for compliance has occurred, and manufacturer has not complied.

(3) Resolved by staff of the arbitration program and time for compliance has not yet occurred.

(4) Decided by arbitrator and manufacturer has complied.

(5) Decided by arbitrator, time for compliance has occurred, and manufacturer has not complied.

(6) Decided by arbitrator and time for compliance has not yet occurred.

(7) Decided by arbitrator with no relief to the consumer.

(8) No jurisdiction.

(9) Decision delayed beyond 40 days under Section 3398.9(c)(1).

(10) Decision delayed beyond 40 days under Section 3398.9(c)(2).

(11) Decision delayed beyond 40 days under Section 3398.9(c)(3).

(12) Decision delayed beyond 40 days for any other reason.

(13) Decision still pending.

(14) Decision accepted by consumer.

(15) Decision rejected by consumer.

(16) Reconsideration requested by consumer per Section 3398.12(d) granted, and the results.

(17) Reconsideration requested by consumer per Section 3398.12(d) not granted.

(f) The individual dispute records, indexes and statistics required by this section shall be organized and maintained so as to facilitate ready access and review by the Arbitration Certification Program at any time, including access to and review of individual dispute files and other program materials.

(g) The arbitration program shall retain all records specified in subdivisions (a)-(c) of this section for at least four years after final disposition of the dispute.


§ 3398.14. Confidentiality of Records

(a) The statistical summaries specified in Section 3398.13(e) shall be available to any person for inspection and copying.

(b) Except as provided under subdivisions (a), (d) and (e) of this section and Sections 3398.7(a) and 3399.5, all records of the arbitration program may be kept confidential, or made available only on such terms and conditions, or in such form, as the arbitration program shall permit.

(c) The policy of the arbitration program with respect to records made available at the program's option shall be set out in the program's written operating procedures (Section 3398.3); the policy shall be applied uniformly to all requests for access to or copies of such records.

(d) Upon request, the arbitration program shall provide to either party to a dispute:

(1) Access to all records relating to the dispute.

(2) Copies of any records relating to the dispute, at reasonable cost.

(e) The arbitration program shall make available to any person, upon request, information relating to the qualifications of program staff and the qualifications and method of selection of arbitrators.

(f) Nothing in this section affects the right of any party under any applicable statute to subpoena any records relating to the dispute.

17

§ 3398.15. Compliance by Program

(a) An arbitration program shall promptly take reasonable action to correct violations of the minimum standards prescribed in this subchapter whenever violations become known to the program.

(b) An arbitration program shall:

(1) Investigate each complaint concerning the operation of the program, whether directed to the program by or for a consumer or by the Arbitration Certification Program;

(2) Furnish the Arbitration Certification Program with a copy of every written complaint concerning the operation of the program; and

(3) Inform both the Arbitration Certification Program and the consumer of the facts of the complaint, the results of the investigation, and any corrective steps taken.

(c) The manufacturer and the arbitration program shall establish written policies and procedures for referring unresolved complaints from consumers regarding the operation of the program to the Arbitration Certification Program.

(d) An arbitration program shall cooperate in good faith with the Arbitration Certification Program and its staff in all matters within the purview of this subchapter.

ARTICLE 4. CERTIFICATION PROCEDURE

§ 3399.1. Application for Certification

(a) Upon receiving a request for an application for certification, the Arbitration Certification Program will inform the prospective applicant that the Arbitration Certification Program is available to confer with the prospective applicant in advance of the filing of an application for the purpose of discussing questions relating to the application. However, no application shall be decided in advance of filing.

(b) An applicant seeking certification of an arbitration program shall file with the Arbitration Certification Program an application with all information and materials required by this subchapter. The application shall consist of (1) a completed "Application for Certification" following in the format prescribed in Appendix A, signed by or on behalf of each party to the application, and (2) the materials required by Section 3399.2 and Appendix A. The application need not include any confidential or proprietary data; provided, however, that the applicant shall have the burden of demonstrating that the arbitration program is in substantial compliance with Civil Code Section 1793.22(d), Chapter 9 of Division 1 of the Business and Professions Code, and this subchapter.

(c) Within 30 days after receipt of the application, the Arbitration Certification Program will both acknowledge receipt of the application and notify the applicant whether or not the application is complete. If the application is not complete, the Arbitration Certification Program will state what additional information or materials must be provided. If the applicant does not

provide the information and materials requested by the Arbitration Certification Program within 30 days, the Arbitration Certification Program may deem the application as withdrawn.

(d) After receipt of the application, the Arbitration Certification Program may, in its discretion, schedule an informal conference with the applicant to discuss the application, the accompanying materials and information, and any additional materials and information that may be required by this subchapter. The informal conference is not an evidentiary hearing or a forum for the determination whether certification is appropriate.

(e) After the Arbitration Certification Program has accepted the application for certification as complete, the Arbitration Certification Program will conduct a review of the arbitration program described in the application, which will include one or more on-site inspections of any program that is already operating, to determine whether the certification which is requested should be granted.

(f) The Arbitration Certification Program will make a determination whether to certify an arbitration program or to deny certification not later than 90 days after the date the Arbitration Certification Program accepts the application for certification as complete.

(g) If the Arbitration Certification Program determines that the arbitration program is in substantial compliance with Civil Code Section 1793.22(d), Chapter 9 of Division 1 of the Business and Professions Code, and this subchapter, the Arbitration Certification Program will certify the arbitration program.

(h) If the Arbitration Certification Program determines that the arbitration program is not in substantial compliance with Civil Code Section 1793.22(d), Chapter 9 of Division 1 of the Business and Professions Code, or this subchapter, the Arbitration Certification Program will deny certification, and will state, in writing, the reasons for the denial and the modifications in the operation of the program that are required in order for the program to be certified.

(i) If the Arbitration Certification Program denies certification of the arbitration program, the applicant may either reapply for certification or request a hearing. A request for a hearing shall be filed with the Arbitration Certification Program within 30 days after service of the notice of denial.

§ 3399.2. Materials to Accompany Application

(a) The application shall be accompanied by the following materials:

(1) The arbitration program's written operating procedures (Section 3398.3(a)).

(2) All other written manuals, publications and documents prepared by or for the manufacturer or the arbitration program, or either of them, which constitute or describe the arbitration program's operating procedures in whole or in part, including but not limited to the policies and procedures that implement this subchapter.

(3) All written agreements between the manufacturer and the arbitration program (including exchanges of correspondence) which define the relationship between the manufacturer and the arbitration program, including but not limited to agreements relating to handling and referring disputes; responding to requests from the program, the manufacturer or the consumer for

19

information; implementing the decisions of the program; and responding to complaints about the decision or the operation of the arbitration program.

(4) All written warranties on new motor vehicles offered by the manufacturer for sale or lease in California at the time the manufacturer has applied for certification; and all owner's manuals, books, pamphlets and other materials provided by the manufacturer to consumers which describe the manufacturer's current written warranties, the protections and benefits they provide to consumers, the steps which consumers must follow to obtain warranty service, or the procedures used by the manufacturer for handling complaints from consumers regarding vehicles sold or leased in California. Where documents are substantially similar for several models of vehicles, the applicant need only submit one example of each document, provided that the applicant clearly identifies the models to which the exemplar applies.

(5) All published descriptions of the arbitration program, its purposes, or its availability and use, provided to consumers by either the manufacturer or the arbitration program.

(6) Examples of the notices, disclosures and other documents prescribed by Sections 3397.2(a), 3398.2(h), 3398.4(c), and 3398.12(a), and of any disclosures given pursuant to Civil Code Sections 1793.22(b) or (c).

(b) The application shall include an index of the materials that accompany the application.


§ 3399.4. Reports to the Arbitration Certification Program by Arbitration Programs

(a) The arbitration program shall notify the Arbitration Certification Program in writing of any material changes in the information or materials submitted in or with the application for certification or subsequently at the request of the Arbitration Certification Program, and shall do so either before or within a reasonable time after the change becomes effective.

(b) The arbitration program shall provide to the Arbitration Certification Program, six months after certification and annually thereafter, a report on disputes closed during the reporting period, which shall contain the following information in the case of each dispute (including disputes over which the program did not exercise jurisdiction):

(1) The name, address, and telephone number of the consumer.

(2) The name of the manufacturer of the vehicle.

(3) The office where the dispute was processed.

(4) The number or other identification of the dispute used by the process, if one exists.

(5) With respect to each dispute:

(A) the date when notification of the dispute was received by the program;

(B) the dates of all meetings held to decide the dispute;

(C) the date of decision of the arbitrator;

20

(D) the fact and date of performance of the decision by the manufacturer; and

(E) the elapsed time in days between (A) and (C).

(6) The nature of the consumer's request for relief categorized by one or more of the following:

(A) repair;

(B) replacement;

(C) return and restitution;

(D) either replacement or return and restitution;

(E) reimbursement of expenses;

(F) other.

(7) The nature of the decision or decisions categorized by one or more of the following:

(A) repair;

(B) replacement;

(C) return and restitution;

(D) either replacement or return and restitution;

(E) reimbursement of expenses;

(F) no relief;

(G) other.

(8) Any report of any information required by this subchapter (other than the annual audit required under Section 3399.3), or any portion thereof, may be submitted in electronic form compatible with the Arbitration Certification Program's computer system.

(c) The period covered by the annual report required by subdivision (b) of this section may coincide with the same period covered by the annual audit required by Section 3399.3, and the two reports may be submitted separately or as a single document.


§ 3399.5. Review of Program Operations by the Arbitration Certification Program

(a) The Arbitration Certification Program will conduct a review of the operation and performance of each certified program at least once annually. The review may consist of:

(1) An examination of updates of all information and materials required in the application and periodic reports.

(2) One or more on-site inspections of the program's facilities, records and operations, including the records of individual disputes, interviews of the program's staff and arbitrators, and attendance at meetings held to decide disputes.

(3) Evaluation of the qualifications, training, and performance of arbitrators.

(4) Investigation and analysis of complaints from any source regarding the operation of the program.

(5) An evaluation of consumer satisfaction based on the results of an annual random mail or telephone survey by the Arbitration Certification Program.

(6) An evaluation of other information obtained through the Arbitration Certification Program's monitoring and inspection or which is relevant to continuing certification.

(b) All of the statistical summaries and other records of the arbitration program shall be available for inspection and copying by the Arbitration Certification Program.

(c) The arbitration program, on request by the Arbitration Certification Program, shall forward to the Arbitration Certification Program, without charge, a copy of all or any portion of the records of any individual dispute or disputes.

(d) The Arbitration Certification Program may, in its discretion, schedule an informal conference with an arbitration program to discuss an apparent lack of compliance with Civil Code Section 1793.22(d), Chapter 9 of Division 1 of the Business and Professions Code, or this subchapter, and any modifications in the operation of the program that the Arbitration Certification Program believes may be required in order for the program to be in substantial compliance. The informal conference is not an evidentiary hearing or a forum for the determination whether certification or decertification is appropriate.

§ 3399.6. Decertification

(a) If it appears to the Arbitration Certification Program that an arbitration program is not in substantial compliance with Civil Code Section 1793.22(d), Chapter 9 of Division 1 of the Business and Professions Code, or this subchapter, the Arbitration Certification Program may issue a; written notice of causes for decertification. The notice will specify the reasons for the notice and prescribe the modifications in the operation of the arbitration program which, if timely made, will enable the program to retain its certification. The written notice will be served on the party or parties to the original application designated to receive notices from the Arbitration Certification Program.

(b) No arbitration program shall be decertified unless and until either:

(1) a decision to decertify is made by the Arbitration Certification Program pursuant to the notice of causes for decertification after a hearing under subdivision (c) of this section, or

(2) the expiration of 180 days after service of the notice of causes for decertification as provided in subdivision (d) of this section.

(c) The entity or entities on whom service of the notice of causes for decertification is made, or

any of them, shall have a right to a hearing upon written request filed with the Arbitration Certification Program within 30 days after service of the notice. The date of service shall be deemed to be the date of transmittal by the Arbitration Certification Program. If a request is made, the program will be decertified only if a decision to decertify the program is made by the Arbitration Certification Program after a hearing. The Arbitration Certification Program will conclude the decertification proceedings within 180 calendar days after service of its written notice of causes for decertification.

(d) The decertification shall become effective 180 days after the notice is served. However, the Arbitration Certification Program will withdraw the notice prior to its effective date if the Arbitration Certification Program determines, after a public hearing, that the entity or entities have made the modifications in the operation of the program required in the notice of decertification, and the program is in substantial compliance with the requirements of Civil Code Section 1793.22(d), Chapter 9 of Division 1 of the Business and Professions Code, and this subchapter.

(e) Any person may request copies of all notices and decisions issued by the Arbitration Certification Program under this section.