UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY A. KAISER,<br><br>    Plaintiff,<br><br>  v.<br><br>BMW OF NORTH AMERICA, LLC; and<br>COUNCIL OF BETTER BUSINESS<br>BUREAUS, INC.,<br><br>    Defendants. | No. C 12-01311 DMR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COUNCIL OF BETTER BUSINESS BUREAU, INC.'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE AS MOOT** |

Defendant Council of Better Business Bureaus, Inc. ("BBB") moves the court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Jeffrey A. Kaiser's second amended complaint. BBB also moves to strike the Declaration of Dennis Canty and its attached exhibits from Kaiser's opposition brief. The court held a hearing on December 20, 2012. Having reviewed the relevant legal authority, and the papers and arguments of the parties, the court partially grants BBB's motion to dismiss and denies its motion to strike as moot.

**I. BACKGROUND**

On July 12, 2008, Kaiser purchased a 2008 BMW 335i (the "Vehicle") for $59,219.22. (Second Am. Compl. ("SAC") ¶ 7.)[1] In connection with this purchase, he received an express

---

[1] When reviewing a motion to dismiss, the court "accept[s] as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

...
...

written warranty, under which Defendant BMW[2] undertook to preserve or maintain the utility or performance of the Vehicle or, in the case that there was a failure in utility or performance for a specified period of time, to provide compensation. (SAC ¶ 8.) On November 6, 2009, within the warranty period, Kaiser brought the Vehicle to the dealer after its electronic warning system had indicated a problem with the restraint system. (SAC ¶ 9.) Although the dealer attempted to repair the problem, the problem persisted, resulting in four subsequent repair attempts. (SAC ¶ 9.)

In May 2011, with the system continuing to indicate a malfunction, Kaiser conducted research to determine his rights and the process for making a claim under California's "Lemon Law," the Song Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.* (SAC ¶¶ 10-11.) His research led him to the BBB's website, where he learned that the BBB operates a program called Auto Line and that one of the services that the program offers is processing car warranty claims with certain manufacturers. (SAC ¶ 11.) The BBB website indicates that it is "'an unbiased source to guide [consumers] on matters of trust' and advertises that it provides 'educational information and expert advice.'" (SAC ¶ 12.) The website also sets forth the BBB's "'Standards of Trust', which include 'honestly represent[ing] products and services, including clear and adequate disclosures of all material terms.'" (SAC ¶ 12.) The website further assures customers that BBB's purpose is "'not to act as an advocate for businesses or consumers, but to act as a mutually trusted intermediary to resolve disputes and provide information to assist consumers.'" (SAC ¶ 12.) Additionally, the website indicates that BBB provides its warranty claim service on behalf of approximately 35 car manufacturers in California; that BBB does not charge a fee to consumers; and "to protect impartiality, funding for staff and program administrative costs of BBB AUTO LINE are committed in advance by the participating manufacturers." (SAC ¶ 13.)

On May 10, 2011, Kaiser completed and submitted a claim form regarding his Vehicle to the BBB. (SAC ¶ 16.) For the next few months, Kaiser worked with the BBB warranty claim processing service to negotiate a resolution of his warranty claim. (SAC ¶ 17.) On August 2, 2011, BMW sent Plaintiff an agreement offering to repurchase the Vehicle for $56,089.62, conditioned on

---

[2] Defendant BMW is not a party to this motion.

written warranty, under which Defendant BMW[2] undertook to preserve or maintain the utility or performance of the Vehicle or, in the case that there was a failure in utility or performance for a specified period of time, to provide compensation. (SAC ¶ 8.) On November 6, 2009, within the warranty period, Kaiser brought the Vehicle to the dealer after its electronic warning system had indicated a problem with the restraint system. (SAC ¶ 9.) Although the dealer attempted to repair the problem, the problem persisted, resulting in four subsequent repair attempts. (SAC ¶ 9.)

In May 2011, with the system continuing to indicate a malfunction, Kaiser conducted research to determine his rights and the process for making a claim under California's "Lemon Law," the Song Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.* (SAC ¶¶ 10-11.) His research led him to the BBB's website, where he learned that the BBB operates a program called Auto Line and that one of the services that the program offers is processing car warranty claims with certain manufacturers. (SAC ¶ 11.) The BBB website indicates that it is "'an unbiased source to guide [consumers] on matters of trust' and advertises that it provides 'educational information and expert advice.'" (SAC ¶ 12.) The website also sets forth the BBB's "'Standards of Trust', which include 'honestly represent[ing] products and services, including clear and adequate disclosures of all material terms.'" (SAC ¶ 12.) The website further assures customers that BBB's purpose is "'not to act as an advocate for businesses or consumers, but to act as a mutually trusted intermediary to resolve disputes and provide information to assist consumers.'" (SAC ¶ 12.) Additionally, the website indicates that BBB provides its warranty claim service on behalf of approximately 35 car manufacturers in California; that BBB does not charge a fee to consumers; and "to protect impartiality, funding for staff and program administrative costs of BBB AUTO LINE are committed in advance by the participating manufacturers." (SAC ¶ 13.)

On May 10, 2011, Kaiser completed and submitted a claim form regarding his Vehicle to the BBB. (SAC ¶ 16.) For the next few months, Kaiser worked with the BBB warranty claim processing service to negotiate a resolution of his warranty claim. (SAC ¶ 17.) On August 2, 2011, BMW sent Plaintiff an agreement offering to repurchase the Vehicle for $56,089.62, conditioned on

---

[2] Defendant BMW is not a party to this motion.

Kaiser's returning the Vehicle "in good working order and with all original parts and accessories, ordinary wear and tear excepted, and the problem(s) giving rise to the claimed defect excepted." (SAC ¶ 18.) The repurchase price was derived from what Kaiser had paid for the Vehicle, reduced by an amount calculated using a statutory formula set forth in California Civil Code §1793.2(d)(2)(C). (SAC ¶ 18.) Kaiser accepted the offer. (SAC ¶ 18.)

Shortly thereafter, Kaiser received a telephone call from a BMW agent seeking to arrange a time for return of the Vehicle and payment of the refund. (SAC ¶ 22.) During the call, the agent indicated that she would inspect the Vehicle to ensure that there was no excessive wear and tear. (SAC ¶ 22.) The call prompted Kaiser to research his rights under California Lemon Law. (SAC ¶ 23.) His research led him to the case *Jiagbogu v. Mercedes-Benz USA*, 118 Cal. App. 4th 1235, 1243 (2004), which he believes indicates that a manufacturer can reduce a lemon car's repurchase price only by the statutory mileage formula set forth in section 1793.2(d)(2)(C). (SAC ¶ 23.) However, when Kaiser brought the Vehicle to the BMW dealer for repurchase on September 8, 2011, BMW's agent informed him that the agreed repurchase price would be reduced by $3,224.34 to account for "excessive wear and tear." (SAC ¶ 25.) Kaiser objected that state law did not permit this reduction, declined the repurchase offer, and indicated to a BBB Dispute Resolution specialist that he wished to proceed to arbitration with BMW. (SAC ¶¶ 25, 26.)

The dispute between Kaiser and BMW was arbitrated on November 3, 2011. (SAC ¶ 31.) On November 14, 2011, the arbitrator issued a decision in which he determined that, pursuant to Rule 3(f) of the BBB AUTO LINE rules for California, BMW could deduct "for any vehicle damages exceeding normal wear and tear that is not caused by the vehicles nonconformities." (SAC ¶¶ 33, 34.) The decision indicated that Kaiser became bound by the BBB AUTO LINE Arbitration Rules when he submitted his BBB claim form. (SAC ¶ 35.) A week later, Kaiser emailed the BBB, requesting a copy of the Rule 3(f) referenced in the decision. (SAC ¶ 37.) Kaiser was referred to the BBB website, where in addition to Rule 3(f), he found a document entitled "Summary of California Law," which stated that under California Lemon Law, a car manufacturer is entitled to take a reduction for wear and tear. (SAC ¶ 37.) On December 16, 2011, Kaiser declined the arbitration decision. (SAC ¶ 39.)

3

1    On December 22, 2011, BMW sent an offer to repurchase the Vehicle for a total price of
2 $52,865.28, which was calculated by reducing the statutory repurchase price of $56,089.62 by a
3 "damage reduction" of $3,224.34. (SAC ¶ 40.) The following day, Kaiser rejected the offer and
4 requested that BMW provide the California statutory or case law that it believed allows a further
5 reduction for damage under California Civil Code §1793.2. (SAC ¶ 41.) BMW responded to Kaiser
6 on January 3, 2012, stating "'[y]ou had the BBB represent you in this case and we followed their
7 ruling." (SAC ¶ 42.) On February 1, 2012, Kaiser's counsel wrote to BMW, stating that Kaiser had
8 rejected the BBB's arbitration decision and demanding that BMW repurchase his car "in strict
9 conformity with California Civil Code section 1793.2." (SAC ¶ 43.) The correspondence
10 referenced the holding in *Jiagbogu*, as well as the decision in *Gezalyan v. BMW*, 697 F. Supp. 2d
11 1168 (C.D. Cal. 2010), in which Kaiser contends "the court held that BMW had conditioned
12 repurchase of a car on 'numerous conditions not authorized by the Act', including charges to 'repair
13 any physical damage to the car'." (SAC ¶ 44 (quoting *Gezalyan*, 697 F. Supp. 2d at 1170).)
14 Kaiser's counsel again requested that BMW provide legal authority that it believed allows a wear
15 and tear deduction. (SAC ¶ 46.) BMW did not respond. (SAC ¶ 46.)

16    On March 16, 2012, Kaiser filed this action against BMW and, on August 3, 2012, amended
17 his complaint to incorporate causes of action against BBB. [Docket Nos. 1, 22.] Kaiser filed a
18 second amended complaint on October 2, 2012, [Docket No. 38], which alleges three causes of
19 action against BBB: (1) unlawful, unfair, or fraudulent business practices in violation of California
20 Business and Professions Code § 17200 *et seq.*, ("UCL" claims) (SAC ¶¶ 68-75); (2) false or
21 misleading advertising in violation of California Business and Professions Code § 17500 *et seq.*,
22 (SAC ¶¶ 76-80); and (3) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 17500,
23 *et seq.*, (SAC ¶¶ 81-85). BBB now moves to dismiss Kaiser's claims against it for failure to state a
24 claim. [Docket No. 42 (Def.'s Mot.).] BBB also moves to strike the Canty Declaration and its
25 attached exhibits in Kaiser's opposition brief. [Docket No. 55.]

26    During the motion hearing, Kaiser made several representations to the court which are
27 pertinent to the pending motion and the case as a whole. Kaiser explained that all of his claims
28 against BBB center solely on an alleged scheme in which BBB actively and knowingly aided and

abetted BMW to defeat the consumer protections of California's Lemon Law. Specifically, Kaiser claims that BBB misrepresents itself to the public as a neutral entity with legal expertise which provides unbiased advice and claims warranty services. Kaiser alleges that BBB uses these false representations to gain consumer trust so that consumers partake in its warranty claims processing program. Once consumers sign on to the program, BBB takes the position that BMW, as well as other car companies that participate in BBB's claims warranty services, may make deductions from the statutorily mandated repurchase price for excessive wear and tear, in violation of California's Lemon Law. This action, in turn, supports the participating car company's withholding of full legal compensation from the consumer. Kaiser asserts that BBB's actions deprived him of the full refund to which he was entitled, caused him to pay storage costs for the unusable Vehicle, and forced him to continue paying off the principal and interest on his car loan.

Kaiser also clarified at the hearing that he seeks relief under each of the three theories of liability available under his first cause of action under the UCL: unlawful, unfair, and fraudulent business acts or practices. With respect to unlawfulness, Kaiser contends that BBB is secondarily liable for actively aiding and abetting BMW's refusal to provide him with the repurchase compensation due for the Vehicle, as required by California's Lemon Law. Kaiser did not further elaborate upon the theories underlying his unfair and fraudulent business practice theories, except to reiterate that all three UCL theories challenge the same conduct -- namely, that BBB actively and knowingly aided and abetted BMW in the aforementioned scheme.

With respect to his second cause of action for false or misleading advertising, Kaiser acknowledged during the hearing that he had failed to plead reasonable reliance, and conceded that the claim consequently was defective as currently drafted.[3] Kaiser has stipulated to dismiss his third cause of action under the Consumer Legal Remedies Act, (*see* Pl's. Opp'n 17). Therefore, this order focuses solely on BBB's motion to dismiss Kaiser's UCL claim.

## II. LEGAL STANDARD

---

[3] Kaiser also affirmed that he did not rely upon BBB's allegedly incorrect summary of California's Lemon Law, which he did not learn of until after he signed on to BBB's claims service.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). A claim has facial plausibility when a Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

"[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).[4]

### III. DISCUSSION

#### A. Arbitral Immunity

---

[4] BBB's motion to dismiss includes, *inter alia*, arguments that Kaiser lacks standing to bring his § 17200 claim and that arbitral immunity bars all of Kaiser's claims against BBB. (Def.'s Mot. 9-11, 13-14.) Ninth Circuit law characterizes dismissal on either of these grounds as dismissal for failure to state a claim. *See Sacks v. Dietrich*, 663 F.3d 1065, 1070 (9th Cir. 2011); *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1022 (9th Cir. 2009).

BBB contends that Kaiser's UCL claim is barred by the doctrine of arbitral immunity because it is "premised on Kaiser's dissatisfaction with the Arbitration Decision." (Def.'s Mot. 11.) Arbitral immunity provides that "'arbitrators are immune from civil liability for acts within their jurisdiction arising out of their arbitral functions in contractually agreed upon arbitration hearings.'" *Sacks v. Dietrich*, 663 F.3d 1065, 1069 (9th Cir. 2011) (quoting *Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987)). Like judicial immunity, this doctrine aims "'to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants.'" *Id.* (quoting *Wasyl, Inc.*, 813 F.2d at 1582). Immunity does not extend to all acts of an arbitrator; it covers only those acts "'within the scope of [the arbitrator's] duties and within their jurisdiction.'" *Id.* (quoting *Wasyl, Inc.*, 813 F.2d at 1582). Whether a claim triggers immunity turns on "'whether the claim at issue arises out of a decisional act.'" *Id.* at 1070 (quoting *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1159 (10th Cir. 2007)). If the claim effectively challenges a decisional act of an arbitrator, immunity applies. *Id.*

The gravamen of Kaiser's UCL claim, as set forth above, is that BBB entered into a scheme with BMW, and aided and abetted BMW in violating the California Lemon Law. The alleged scheme, in which "BBB and BMW cooperated . . . to obtain financial gain," "was used by BMW and others to seek improper reductions in lemon car repurchases, including repurchase of Kaiser's car." (SAC ¶¶ 71-72.) This claim is not grounded in Kaiser's dissatisfaction with or in an attempt to challenge BBB's arbitration. It instead is based upon an alleged conspiracy between BBB and BMW to defraud consumers through, *inter alia*, deceptive advertising. Arbitral immunity therefore does not bar the claim.

**B. The Agreement to Limit the BBB's Liability**

BBB also argues that Kaiser's UCL claim is barred because he agreed to limit BBB's liability when he agreed to arbitrate with BBB. (Def.'s Mot. 12-13.) BBB points out that the Customer Claim Form that Kaiser signed provides that he agreed "to arbitrate the dispute under the BBB AUTO LINE Arbitration Rules" and that Rule 26 of the BBB's arbitration rules provides that "BBB . . . shall not be liable for any act or omission in connection with any BBB AUTO LINE case." However, as explained above, Kaiser's cause of action does not seek to impose liability on

7

1 BBB for an act or omission arising from BBB's arbitration of his dispute with BMW; his claim is
2 not based on the arbitration at all. Consequently, the rules embedded in the arbitral agreement which
3 Kaiser signed are inapposite to this case and do not bar his claim.

### C. Injury in Fact

According to BBB, Kaiser lacks standing to bring his UCL claim because he suffered no injury in fact. (Def.'s Mot. 13-15.) A private party has standing to bring a UCL claim only if he "'has suffered injury in fact and has lost money or property' as a result" of alleged unfair competition. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321-22 (2011) (quoting Cal. Bus. & Prof. Code §§ 17204, 17535) (citations omitted); *see Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227, 228-29 (2006). To satisfy this requirement, a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that the economic injury was the result of, i.e., *caused by,* the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp.*, 51 Cal. 4th at 322. Among the "innumerable" ways a party may show economic injury is by demonstrating one of the following:

> [that he or she] (1) surrender[ed] in a transaction more, or acquire[d] in a transaction less, than he or she otherwise would have; (2) ha[d] a present or future property interest diminished; (3) [was] deprived of money or property to which he or she ha[d] a cognizable claim; or (4) [was] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Id.* at 323 (citation omitted). To prove that the business practice at the heart of a claim caused the economic injury, the party must "show[] a causal connection *or* reliance on the alleged misrepresentation." *Id.* at 326 (citations and quotation marks omitted). However, the party need not show that the practice was "the sole or even the decisive cause of the injury-producing conduct." *Id.* at 327 (citation and quotation marks omitted).

Kaiser's UCL claim alleges that BBB misrepresented that it acts as a neutral entity with legal expertise which provides unbiased advice and claims warranty services. It thereby gained Kaiser's trust so that he used BBB's warranty claims processing program. Once Kaiser had signed on to the program, BBB took a position that, in violation of California's Lemon Law, BMW may make deductions for excessive wear and tear from the statutorily mandated repurchase price. According to Kaiser, this stance validated BMW's position, and supported BMW's ability to deprive Kaiser of the

8

refund to which he was entitled. It also caused Kaiser to pay storage costs for the Vehicle and forced him to continue paying off the principal and interest on his car loan. Kaiser has alleged sufficient facts to claim that he has suffered economic injury which resulted, at least in part, from BBB's actions. He therefore meets the injury in fact standing requirement for his UCL claim. *See Kwikset Corp.*, 51 Cal. 4th at 324-325; *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 854 (2008) (holding that allegation by Plaintiff that he "expended money due to the defendant's acts of unfair competition" pleads economic harm sufficient to establish UCL standing).

### D. Sufficiency of Pleading

BBB also alleges that Kaiser's UCL claim fails as a matter of law because he has neither alleged a violation of an underlying statute to serve as a predicate for bringing the claim, nor alleged that the business practices that serve as the basis for Kaiser's allegations are unfair or fraudulent. (Def.'s Mot. 13, 15-16; Def.'s Reply 8.) The UCL provides remedies that are "'cumulative . . . to the remedies or penalties available under all other laws of [California].'" *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) (quoting § 17205). Its scope embraces "'any unlawful, unfair *or* fraudulent business act or practice[;]'" its coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Id.* at 180 (quoting § 17200) (emphasis added) (citation and quotation marks omitted). Because the statute "is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as unfair or deceptive even if not unlawful and vice versa." *Id.*

An unlawful UCL claim must allege that the Plaintiff has committed "anything that can properly be called a business practice and that at the same time is forbidden by law. . . . A practice is forbidden by law if it violates any law, civil or criminal, statutory or judicially made, federal, state or local." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1474 (2006) (citations and quotation marks omitted). Although vicarious liability has no application in UCL actions, a party may be found liable for another's unlawful act "if the evidence establishes [the] defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal." *The People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984) (citations omitted). In the present matter, Kaiser alleges that

9

BBB is secondarily liable under the unlawful prong of the UCL for BMW's violation of California's Lemon Law, because BBB allegedly "aided and abetted" BMW's refusal to provide him with the repurchase compensation legally due for the Vehicle. Kaiser therefore has stated an adequate claim under the "unlawful" prong of the UCL.

A claim for relief under the UCL's "unfair" prong must allege that a business practice "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell*, 142 Cal. App. 4th at 1473 (citations omitted); *accord Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 928 (N.D. Cal. 2012). The determination whether a business practice is unfair "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. . . ." *Id.* (brackets and ellipses in original) (citations and quotation marks omitted). Kaiser alleges that BBB engaged in a knowing scheme with BMW aimed at depriving Kaiser of the full mandated repurchase price for defective cars to which Kaiser believes he is entitled pursuant to California's Lemon Law. If true, this conduct was unethical and oppressive to Kaiser, the consumer, and caused him significant harm. The alleged conduct is also devoid of any utility or benefit for the public as a whole. Kaiser therefore has stated a valid "unfair" UCL claim.

A claim for relief from "fraudulent" conduct under the UCL "focuses on the likely impact of defendants' alleged deceptive conduct on members of the public. To be actionable, a 'fraudulent' representation may include a false statement, or one which, though strictly accurate, nonetheless has the likely effect of misleading or deceiving the public." *Garcia v. Sony Computer Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012) (citations and quotation marks omitted). The claim also requires that a plaintiff plead reliance on the defendant's misrepresentations. *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1168 (C.D. Cal. 2011) (citations and quotation marks omitted). As discussed previously, during the motion hearing, Kaiser conceded that he had failed to plead reliance on BBB's alleged fraudulent conduct. Kaiser therefore has failed to state a claim pursuant to the fraudulent prong of the UCL.

**E. Defendant's Motion to Strike**

Along with his opposition brief, Kaiser filed a declaration from his attorney to which are appended several exhibits. (*See generally* Canty Decl., Nov. 30, 2012.) These include postings from BBB's website, communications between BBB and Kaiser, lemon law statutes from other states, and legislative history. A motion to dismiss under Rule 12(b)(6), such as the motion at bar, examines the sufficiency of the complaint. Under only narrow circumstances may a court look to materials beyond the complaint without turning the motion to dismiss into a motion for summary judgment. *See  Branch v. Tunnell*, 14 F.3d at 454. These include matters of public record and documents whose contents are alleged in the complaint, whose authenticity no party questions, but which are not physically attached to the pleading. *Id.* In its analysis of BBB's motion to dismiss, the court has not examined or turned to the Canty Declaration. The court therefore denies BBB's motion to strike as moot.

### IV. Conclusion

For the reasons stated above, the court grants in part and denies in part BBB's motion to dismiss and denies its motion to strike as moot. The court dismisses with prejudice Kaiser's claim under the Consumer Legal Remedies Act and dismisses with leave to amend his false or misleading advertising claim. The court also grants Kaiser leave to amend the fraud contention in his UCL claim. Kaiser shall file any amended complaint by January 22, 2013.

IT IS SO ORDERED.

Dated: January 7, 2013



_____
DONNA M. RYU
United States Magistrate Judge

11