Lawrence J. Gornick (SBN 136290)
Dennis J. Canty (SBN 207978)
Nicholas A. Deming (SBN 287917)
**KAISER GORNICK LLP**
100 First Street, 25th Floor
San Francisco, CA  94105
Telephone:  (415) 857-7400
Facsimile:  (415) 857-7499
lgornick@kaisergornick.com
dcanty@kaisergornick.com
ndeming@kaisergornick.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| JEFFREY A. KAISER,<br><br>        Plaintiff,<br><br>    vs.<br><br>BMW OF NORTH AMERICA, LLC; and COUNCIL OF BETTER BUSINESS BUREAUS, INC.,<br><br>        Defendants. | Case No: C12-01311-DMR<br><br>**OPPOSITION TO DEFENDANT COUNCIL OF BETTER BUSINESS BUREAUS, INC.'S MOTION FOR LEAVE TO FILE AN ANTI-SLAPP MOTION**<br><br>Date:         May 30, 2013<br>Time:        11:00 a.m.<br>Judge:       Hon. Donna M. Ryu<br><br>Action Filed:  March 16, 2012 |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. PROCEDURAL POSTURE .......................................................................................... 2

    A. SECOND AMENDED COMPLAINT AND BBB'S FIRST MOTION TO DISMISS .......................................................................................................... 2

    B. THIRD AMENDED COMPLAINT AND BBB ANSWER ............................. 3

    C. PLAINTIFF'S RESPONSES TO WRITTEN INTERROGATORIES .......... 5

    D. FILING OF MOTION FOR LEAVE ............................................................... 6

III. LEGAL ANALYSIS ..................................................................................................... 6

    A. THE 60-DAY WINDOW FOR FILING AN ANTI-SLAPP MOTION IS STRICTLY APPLIED AND BBB HAS NO JUSTIFICATION FOR EXTENDING IT. ............................................................................................. 6

        1. BBB Has Not Offered Any Compelling Reason to Extend the 60-Day Deadline. ........................................................................................ 6

        2. Allowing BBB's Untimely Motion Would Contravene the Purpose of the Statute. ............................................................................ 7

        3. Plaintiff Will Be Prejudiced If the Court Allows BBB to File Its Motion. ................................................................................................. 9

    B. BBB'S PROPOSED ANTI-SLAPP MOTION LACKS MERIT. ................. 10

        1. BBB Has the Burden to Prove that Plaintiff's 17200 Claim "Aris[es] From" a Protected Activity. ................................................. 10

        2. BBB Cannot Meet Its Burden Because the Gravamen of Plaintiff's Claim is the BBB Scheme to Aid BMW in Violating the Lemon Law. ................................................................................. 10

        3. References to Protected Activities Are Incidental to the Claim Against BBB. .................................................................................... 13

IV. CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. Cal. 2003) ................................................................... 8

*City of Cotati v. Cashman*, 29 Cal. 4th 69 (2002) ..................................................................... 11

*Gallimore v. State Farm Fire & Casualty Ins. Co.*, 102 Cal. App. 4th 1388 (2002) ............... 13

*Hernandez v. Amcord, Inc.,* 2013 Cal. App. LEXIS 299 (Apr. 18, 2013) ................................ 13

*Kunysz v. Sandler*, 146 Cal. App. 4th 1540 (2007) ..................................................... 1, 7, 8, 9

*Makaeff v.Trump Univ., LLC*, 2013 U.S. App. LEXIS 7719 (9th Cir. Apr. 17, 2013). ......... 1, 9

*Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001) ............................................ 7, 8

*Morin v. Rosenthal*, 122 Cal. App. 4th 673 (2004) ..................................................................... 8

*Olsen v. Harbison*, 134 Cal. App. 4th 278 (2005) ............................................... 1, 6, 7, 8, 9, 10

*People ex rel. Fire Ins. Exch. v. Anapol*, 211 Cal. App. 4th 809 (2012) .......................... 11, 13

*Santa Monica Rent Control Bd. v. Pearl Street, LLC*, 109 Cal. App. 4th 1308 (2003) .......... 10

*Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12 (2010) ................................................. 11

**Other Authorities**

16 C.C.R. § 3398 ........................................................................................................................... 2

California Business and Professions Code § 17200, *et seq.* ....................................................... 3

California Code of Civil Procedure § 425.16 ........................................................... 1, 6, 10, 13

California Code of Civil Procedure § 425.17 ............................................................................ 11

## I. INTRODUCTION

The Council of Better Business Bureaus, Inc. ("BBB") seeks leave to file a late anti-SLAPP motion under California Code of Civil Procedure ("CCP") § 425.16.  Late anti-SLAPP motions are disfavored by California state courts because: (1) they undercut the purpose of the statute, which is to provide for the "prompt resolution of meritless claims prior to significant expenditure of litigation resources;" (2) they allow for "tactical manipulation of the stays that attend anti-SLAPP proceedings;" and (3) later in a litigation, traditional procedural vehicles for challenging truly meritless claims (e.g., motion for summary judgment) are readily available.  *See Olsen v. Harbison*, 134 Cal. App. 4th 278, 282, 287 (2005); *Kunysz v. Sandler*, 146 Cal. App. 4th 1540, 1543 (2007).  A federal court should be even more reticent in allowing a late anti-SLAPP motion because, as Chief Judge Alex Kozinski recently noted, applying the California anti-SLAPP statute in federal court "cuts an ugly gash through [the Federal Rules'] orderly process." *Makaeff v.Trump Univ., LLC*, 2013 U.S. App. LEXIS 7719, at *50 (9th Cir. Apr. 17, 2013) (Kozinski, C.J. concurring).

A party seeking leave to file a late anti-SLAPP motion must provide a compelling explanation and show extenuating circumstances.  *Platypus Wear, Inc. v. Goldberg*, 166 Cal. App. 4th 772, 776 (2008).  The proponent must also show that leave to file the motion does not frustrate the purpose of the anti-SLAPP statute.  *Id.* at 775–76, 783–84, 787.  Here, BBB cannot make either of the requisite showings.  Further, courts have refused to consider untimely motions where doing so could potentially prejudice the plaintiff.  *Id.* at 787–88; *Olsen v. Harbison*, 134 Cal. App. 4th at 287.

BBB claims that it could not have filed its anti-SLAPP motion on time because it did not discover that Plaintiff's claim was based on constitutionally protected activity until March 18, 2013 when Plaintiff served responses to interrogatories.  But, this is misleading because the key facts which BBB cites in its proposed anti-SLAPP motion as evidence that Plaintiff's claim is purportedly based on protected activity were described in Plaintiff's opposition to BBB's Motion to Dismiss the Second Amended Complaint (served on November 30, 2012) and again in his Third Amended Complaint ("TAC") (served on January 10, 2013).  There is simply no justification for a late anti-SLAPP motion which would completely derail the case when BBB has available a less prejudicial method for testing the merits of Plaintiff's case—a motion for summary judgment.

1    Finally, there is no merit to BBB's proposed anti-SLAPP motion. When BBB attempted to strike Plaintiff's complaint based on a judicial immunity claim, the Court concluded that the gravamen of Plaintiff's complaint is a scheme whereby BBB aided and abetted BMW's violation of California Lemon Law. Nothing has changed. Neither judicial function activity nor other protected activity form the gravamen of Plaintiff's complaint.

## II.   PROCEDURAL POSTURE

**A.   SECOND AMENDED COMPLAINT AND BBB'S FIRST MOTION TO DISMISS**

Plaintiff filed the original complaint on March 16, 2012 against BMW only. On October 2, 2012, Plaintiff filed a Second Amended Complaint ("SAC") which named BBB. [Docket No. 38]. On October 31, 2012, BBB filed a Motion to Dismiss the SAC. [Docket No. 42]. On November 30, 2012, Plaintiff filed an Opposition to BBB's Motion to Dismiss, putting BBB on notice that it might use facts related to the legislative hearings in 1986–1989 as collateral evidence in support of Plaintiff's claims:

> The BBB is certainly in no position to claim ignorance of these legislative developments in California. … [A] BBB representative testified in 1986 before Chairwoman Tanner's committee advocating against amending California's Lemon Law. Moreover, during the rule making process for 16 CCR §3398, a BBB lawyer suggested that the language be changed to allow the arbitrator to permit a further off-set for the consumer's "over-use or abuse" of the car.

[Docket No. 49, 10:17-22].

In the hearing on BBB's Motion to Dismiss, the Court made a pointed effort to pin down the specifics of Plaintiff's allegations. In its Order Denying BBB's Motion, the Court recognized that:

> The gravamen of Kaiser's UCL claim . . . is that BBB entered into a scheme with BMW, and aided and abetted BMW in violating California Lemon Law. The alleged scheme, in which "BBB and BMW cooperated . . . to obtain financial gain," "was used by BMW and others to seek improper reductions in lemon car repurchases, including repurchase of Kaiser's car."

[Docket No. 59, 7:14-17.]

The Court also clearly elucidated Plaintiff's § 17200 allegations:

> Kaiser explained that all of his claims against BBB center solely on an alleged scheme in which BBB actively and knowingly aided and abetted BMW to defeat the consumer protections of California's Lemon Law. Specifically, Kaiser claims that BBB misrepresents itself to the public as a neutral entity with legal expertise

> which provides unbiased advice and claims warranty service. Kaiser alleges that BBB uses these false representations to gain consumer trust so that consumers partake in its warranty claims processing program. Once consumers sign on to the program, BBB takes the position that BMW, as well as other car companies that participate in BBB's claims warranty services, may make deductions from the statutorily mandated repurchase price for excessive wear and tear, in violation of California's Lemon Law. This action, in turn, supports the participating car company's withholding of full legal compensation from the consumer. Kaiser asserts that BBB's actions deprived him of the full refund to which he was entitled, caused him to pay storage costs for the unusable Vehicle, and forced him to continue paying off the principal and interest on his car loan.

[Docket No. 59, 4:27-5:11].

### B.   THIRD AMENDED COMPLAINT AND BBB ANSWER

On January 10, 2013, Plaintiff filed a Third Amended Complaint ("TAC"). [Docket No. 60]. The TAC retained the identical claim against BBB for violations of California Business and Professions Code § 17200, *et seq*.

Plaintiff supplemented the TAC with collateral facts in support of its allegations, but the gravamen of the claim remained the same. Plaintiff maintained his allegations that:

> 81. The BBB aided and abetted BMW in violating California law, in particular Civil Code §1793.2, and otherwise engaging in unfair competition by contracting with BMW and other car manufacturers to facilitate California warranty claims, by soliciting consumers through misleading and deceptive information to retain the BBB for that service, and by publishing incorrect summaries of California Lemon Law to enable BMW and other car manufacturers to take improper deductions on lemon car repurchases under the cover of the BBB's representations. The BBB and BMW cooperated in a common scheme in misrepresenting California Lemon Law to consumers in order to obtain financial gain.
>
> 82. The BBB furnished the means and otherwise induced car companies, including BMW, to violate California law, and in particular Civil Code §1793.2, by promoting itself to consumers as being an expert in California Lemon Law, as being neutral and trustworthy, and by then publishing information that falsely represents the Lemon Law to California consumers. This conduct was meant to mislead and confuse consumers and was used by BMW and others to seek improper reductions in lemon car repurchases, including repurchase of Plaintiff's car.

[Docket No. 60, ¶81-82].

In support of these allegations, Plaintiff supplemented his 'Background' section with the collateral facts he explained in his opposition to BBB's motion to dismiss showed the depth of BBB's

1  involvement in the legislative process.  These incidental facts, which were all grouped together,

2  included BBB's influence at the 1986–1987 Assembly Bill 2057 hearings:

> 48. BMW has been aided and enabled by the BBB, which has itself actively sought to limit the Lemon Law rights of California consumers for at least 25 years.
>
> 49. Between 1982 and 1987 various problems were identified in how the California Lemon Law was being applied by car manufacturers.  This prompted Assemblymemember Sally Tanner to introduce AB 2057, a bill to substantially clarify and strengthen the car Lemon Law.  These amendments were initially opposed by several car companies, car industry organizations, and the BBB.

[Docket No. 60, ¶48-49].

Plaintiff also noted BBB's involvement in the 1988–1989 rule-making process, which he had referenced in his opposition to BBB's motion to dismiss:

> 52. In 1989, the California Department of Consumer Affairs, through its Bureau of Automotive Repair, engaged in the rule making process mandated by Bus. & Prof. Code §472.1, which resulted in the creation of 16 CCR §§3396-3399.6.  Again, the BBB participated in the process and encouraged inclusion of language reducing consumer rights that directly conflicts with Bus. & Prof. Code §472,1 and Civil Code §1793.22(d).  In the Final Statement of Reasons, the Arbitration Review Program notes that on July 13, 1989, BBB lawyer Alan Cohen sent a letter recommending that §3398.10(c) be amended to allow an arbitration program to use an arbitration agreement to limit the content of any decision which an arbitrator might make.  Mr. Cohen also recommended that the arbitrator be permitted to off-set, in an award to repurchase or replace a vehicle, any amount attributable to the consumer's over-use or abuse of a vehicle.  Neither recommendation appears in the language of the final version of 16 CCR §§3396-3399.6.  Instead, the Regulations mandate that any offset be calculated pursuant to the mileage formula found in Civil Code 1793.2(d)(2)(C).

[Docket No. 60, ¶52].

On the same day Plaintiff filed the TAC, BBB's counsel requested, and Plaintiff provided, a "redlined" version which underlined and highlighted in red the above changes to the TAC.  *See* Declaration of Dennis J. Canty in Support of Plaintiff's Opposition to BBB's Motion for Leave to File Anti-SLAPP Motion, Exhibits 1 and 2.  BBB filed an answer to the TAC on  January 28, 2013.

4

OPPOSITION TO BBB'S MOTION FOR LEAVE TO FILE ANTI-SLAPP MOTION

### C. PLAINTIFF'S RESPONSES TO WRITTEN INTERROGATORIES

On March 18, 2013, Plaintiff served BBB with Responses to BBB's Interrogatories. [Docket No. 77, Exh. B]. In crafting responses to BBB's Interrogatories, Plaintiff repeated the same collateral evidence that was referenced in his opposition to BBB's motion to dismiss the SAC and in the TAC. Attached to Plaintiff's responses was a chart, Exhibit A, which stated the "facts supporting plaintiff's claims" of BBB's unfair, unlawful, and fraudulent business practices, with references to related witnesses and documents. [Docket No. 77, Exh. B].

Plaintiff stated—as he did in the TAC, and as was consistent with his opposition to BBB's motion to dismiss in October, 2012—that BBB opposed the 1987 amendments to the California Lemon Law:

> A. For the past 20 years, BBB has sought to undermine the 1987 amendments to CA lemon law.
>
> 1. BBB opposed the 1986–1987 California legislation that amended the lemon law. Existing law allowed car manufacturers a reduction in the repurchase price of a lemon car (a "Reduction") to account for the consumer's use of the car before the defect was first reported. This legislation was necessary for the protection of consumers because car companies were unfairly taking advantage of this vague, subjective standard, and taking excessive Reductions, for things such as excessive wear and tear.

[Docket No. 77, Exh. B, p. 19].

Plaintiff also stated—as he did in the TAC, and as was consistent with his opposition to BBB's motion to dismiss in October, 2012—that BBB engaged in the 1988–1989 rule-making process, at which time BBB encouraged inclusion of language reducing consumer rights and recommended the arbitrator be permitted to off-set for over-use of a vehicle:

> 4. The Department of Consumer Affairs ("DCA") was charged with implementing the new law, and it conducted a rule making process in 1988-1989. BBB participated in and influenced the rulemaking process. For instance, BBB proposed language that would allow arbitrators to provide car companies with further Reductions for over-use or abuse of leased vehicles.

[Docket No. 77, Exh. B, p. 19–20].

### D.     FILING OF MOTION FOR LEAVE

An Anti-SLAPP motion must be filed within 60 days of service of the complaint.  Cal. Civ. Proc. Code § 425.16.  The deadline to file an anti-SLAPP motion was March 11, 2013.  BBB filed its Motion for Leave on April 17, 2013.

### III.     LEGAL ANALYSIS

### A.     THE 60-DAY WINDOW FOR FILING AN ANTI-SLAPP MOTION IS STRICTLY APPLIED AND BBB HAS NO JUSTIFICATION FOR EXTENDING IT.

California Code of Civil Procedure, Section 425.16 sets forth a 60-day window in which an anti-SLAPP motion must be filed.  This time period commences upon service of the complaint and reopens upon service of an amended complaint.  *Olsen v. Harbison*, 134 Cal. App. 4th 278, 283 (2005).  Subsection 425.16(f) expressly provides that an anti-SLAPP motion shall not be filed after this 60-day time period expires unless the court affirmatively exercises discretion to permit it.  *Id.* at 286.  A party seeking leave to file a late anti-SLAPP motion must provide a compelling explanation and show extenuating circumstances.  *Platypus Wear, Inc. v. Goldberg*, 166 Cal. App. 4th 772, 776 (2008).  The proponent must also show that leave to file the motion does not frustrate the purpose of the anti-SLAPP statute.  *Id.* at 775–76, 783–84, 787.  Here, BBB cannot make either of the requisite showings.  Further, courts have refused to consider untimely motions where doing so could potentially prejudice the plaintiff.  *Id.* at 787–88;  *Olsen v. Harbison*, 134 Cal. App. 4th at 287.

The Court should deny BBB's motion because: (1) BBB has failed to articulate any circumstances justifying its untimely filing; (2) Allowing BBB's late filing would controvert the purpose of the anti-SLAPP statute; and (3) Plaintiff would be prejudiced if the motion were granted.

#### 1.     BBB Has Not Offered Any Compelling Reason to Extend the 60-Day Deadline.

Courts must exercise caution in extending the 60-day anti-SLAPP deadline because the rationale underlying the statute is premised on the crucial assumption that the motion will be filed on time.  *See Platypus Wear, Inc.*, 166 Cal. App. 4th at 787 ("the Legislature's act in allowing an interlocutory appeal of the denial of an anti-SLAPP motion is clearly tied to the fact that the statute contemplates that most such motions will be filed within 60 days").  It is the anti-SLAPP proponent who shoulders the burden of showing "extenuating circumstances justifying the late filing." *Id.* at 775.

1     BBB claims that "it was simply not clear that Plaintiff was basing its claim on constitutionally
2  protected activity" until March 18, 2013, when Plaintiff served his interrogatory responses. [Docket
3  No. 76, 11:26]. But, this is misleading because the facts BBB cites in support of its anti-SLAPP
4  motion are the same facts that Plaintiff has articulated in his opposition to BBB's motion to dismiss
5  the SAC, and again in his TAC. In fact, at BBB's request, Plaintiff even provided a redlined copy of
6  the TAC on January 10, 2013. The background references to the legislative hearings were underlined
7  in a bright red font. In *Platypus Wear, Inc.*, 166 Cal. App. 4th at 778–89, 786, the court rejected the
8  defendant's claim that the purported bases for an anti-SLAPP motion were not known until discovery,
9  because those bases were sufficiently identified in the complaint.

10    Even where the facts purportedly giving rise to an anti-SLAPP motion truly were first revealed
11 during discovery, courts have not extended the 60-day deadline. In *Kunysz v. Sandler*, 146 Cal. App.
12 4th 1540 (2007), the court was unwilling to extend the strict anti-SLAPP deadline, even where
13 previously unavailable facts came to light and new case law was decided in support of defendant's
14 motion after expiration of the 60-day limit. *Id.* at 1543–44 (acknowledging that while it may be
15 frustrating to defendant that he was only just able to obtain facts not previously available and novel
16 case law supporting his motion, these are not reason enough to disregard the 60-day deadline).

17    **2.     Allowing BBB's Untimely Motion Would Contravene the Purpose of the Statute.**
18    The anti-SLAPP statute was enacted "to allow early dismissal of meritless first amendment
19 cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l v.*
20 *Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). There are two purposes for confining anti-SLAPP
21 motions to the 60-day time period. The first is to "require the presentation and resolution of the anti-
22 SLAPP claim at the *outset* of the litigation *before* the parties have undertaken the expenses of litigation
23 that begin to accrue after the pleading stage of the lawsuit." *Olsen*, 134 Cal. App. 4th at 287
24 (emphasis added). The second is to "avoid tactical manipulation of the stays that attend anti-SLAPP
25 proceedings." *Id.* BBB's motion would conflict with both purposes.

26    As BBB agrees, "[t]he parties have already engaged in substantial discovery." [Docket No. 76,
27 2:22-23; 12;13-14]. Significant litigation efforts have already been incurred, including the time and
28 expense of opposing the original BBB motion to dismiss. Allowing the late motion would enable

1  BBB to essentially derail the lawsuit. Discovery is currently scheduled to close on July 30, 2013. If
2  BBB were allowed to file its motion on June 1, 2013, it would likely seek an immediate discovery
3  stay. *See, e.g.*, *Metabolife*, 264 F.3d at 846 (noting that "filing of an anti-SLAPP motion automatically
4  stays all further discovery[,]" thereby effectively forcing plaintiff to immediately offer proof "before
5  the plaintiff can conduct discovery"). Then, after its motion is denied, BBB will immediately appeal,
6  which will stay the entire case. *See, e.g.*, *Batzel v. Smith*, 333 F.3d 1018, 1024–26 (9th Cir. 2003)
7  (finding that a district court's denial of an anti-SLAPP motion is an immediately appealable final
8  decision and recognizing that if a defendant files an anti-SLAPP motion to strike, all discovery
9  proceedings are stayed).

10  All of this is precisely what the 60-day limitation period sought to avoid. At this point, BBB's
11  proper remedy is a motion for summary judgment.

12  BBB's reference to § 425.16 being "construed broadly" does nothing to support the filing of a
13  late anti-SLAPP motion. [Docket No. 76, 11:1]. While § 425.16(a) does mention that it should be
14  "construed broadly," the rule of liberal interpretation as contemplated in § 425.16 "is a rule for
15  resolution of ambiguity" with regard to the statute's text. Courts have been quick to point out that this
16  language is "not a philosopher's stone that allows a court to supply any meaning favorable to the
17  proponent of the anti-SLAPP motion." *Olsen*, 134 Cal. App. 4th at 282, 286 (dismissing defendant's
18  appeal from denial of late motion; noting that "the motion comes too late without legitimate excuse").
19  As the *Olsen* court explained, "[t]he SLAPP statute is intended to provide an aggrieved defendant with
20  a shield through the prompt resolution of meritless claims prior to the significant expenditure of
21  litigation resources, not a sword to be wielded whenever it becomes strategically convenient." *Id.* at
22  282.

23  The cases BBB cites actually showcase examples of late anti-SLAPP motions being *denied*, not
24  granted. [Docket No. 76, 10] (citing *Olsen v. Harbison*, 134 Cal. App. 4th 278 (2005) (affirming
25  denial of late anti-SLAPP motion for lack of "legitimate excuse"); *Kunysz v. Sandler*, 146 Cal. App.
26  4th 1540 (2007) (upholding denial of late anti-SLAPP motion even in light of new facts and law);
27  *Morin v. Rosenthal*, 122 Cal. App. 4th 673 (2004) (ruling that denial of late anti-SLAPP motion was
28  not an abuse of discretion where defendants spent time, energy and resources engaging in "procedural

1  maneuvering")).  Even under the broadest reading, the anti-SLAPP statute's 60-day deadline is clear-
2  cut.  BBB's motion is untimely and should not be considered.

### 3. Plaintiff Will Be Prejudiced If the Court Allows BBB to File Its Motion.

In opposing an anti-SLAPP motion, a plaintiff is not required to demonstrate prejudice.  *Olsen*, 134 Cal. App. 4th at 287.  However, the opponent of an untimely anti-SLAPP motion is prejudiced by litigation expenses incurred prior to the untimely motion, derailment of the discovery process, the threat of immediate appeal from a denial, and stay of the case.  On the other hand, tardy anti-SLAPP proponents are not prejudiced because they have alternative vehicles available—such as summary judgment—through which they may raise the same issues.  *See, e.g*, *Kunysz*, 146 Cal. App. 4th at 1543 (the issues raised by defendant's "anti-SLAPP motion could just as easily have been raised by, for example, a motion for summary judgment or a motion for judgment on the pleadings").  This is especially true where, as here, the motion will be heard near the close of discovery.

Indeed, even timely application of the anti-SLAPP statute in federal court has now been questioned by the Ninth Circuit.  Subjecting federal litigants to application of the California anti-SLAPP framework causes unique hardships due to the stripping away of federal procedural protections.  As Chief Judge Alex Kozinski of the Ninth Circuit Court of Appeals recently noted, applying the California anti-SLAPP statute in federal court is wrought with unintended consequences because it shreds the procedural safeguards which are otherwise held firmly in place by the Federal Rules.  *Makaeff v.Trump Univ., LLC*, 2013 U.S. App. LEXIS 7719, at *50–51(Kozinski, C.J. concurring).  As Judge Kozinski aptly explained in his concurring opinion:

> The California anti-SLAPP statute cuts an ugly gash through this [the Federal Rules'] orderly process.  Designed to extricate certain defendants from the spiderweb of litigation, it enables them to test the factual sufficiency of a plaintiff's case prior to any discovery; it changes the standard for surviving summary judgment by requiring a plaintiff to show a 'reasonable probability' that he will prevail, rather than merely a triable issue of fact; it authorizes attorneys' fees against a plaintiff who loses the special motion by a standard far different from that applicable under Federal Rule of Civil Procedure 11; and it gives a defendant who loses the motion to strike the right to an interlocutory appeal, in a clear contravention of Supreme Court admonitions that such appeals are to be entertained only very sparingly because they are so disruptive of the litigation process . . . The Federal Rules contemplate that the sufficiency of a plaintiff's case will be tested prior to discovery only for legal sufficiency.  If a plaintiff's

> case vaults that hurdle, the Federal Rules provide for a period for discovery before defendant can test plaintiff's case for factual sufficiency. The Federal Rules don't contemplate that a defendant may get a case dismissed for factual insufficiency while concealing evidence that supports plaintiff's case.

*Id.*

The current anti-SLAPP scheme is "a hybrid procedure where neither the Federal Rules nor the state anti-SLAPP statute operate as designed." *Id.* at *53. For this reason, federal courts should be particularly reticent to allow untimely anti-SLAPP motions.

### B. BBB'S PROPOSED ANTI-SLAPP MOTION LACKS MERIT.

In considering whether to entertain a tardy anti-SLAPP Motion, a court may consider its merits as a factor. *Olsen*, 134 Cal. App. 4th at 286. Here, BBB is very unlikely to succeed on the merits because its alleged liability is not based on a protected activity.

#### 1. BBB Has the Burden to Prove that Plaintiff's 17200 Claim "Aris[es] From" a Protected Activity.

California Code of Civil Procedure, Section 425.16 states:

> A cause of action against a person *arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution* in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

CCP 425.16(b) (emphasis added).

In ruling on a § 425.16 special motion to strike, a court must first determine "whether the plaintiff's cause of action arose from an act taken by the defendant in furtherance of the defendant's right of petition or free speech." *See, e.g.*, *Santa Monica Rent Control Bd. v. Pearl Street, LLC*, 109 Cal. App. 4th 1308, 1316 (2003). The defendant bears the burden on this question. *Id.* at 1317. "If the court determines the cause of action did not arise from such protected activity, *the motion to strike must be denied*." *Id.* (emphasis added).

#### 2. BBB Cannot Meet Its Burden Because the Gravamen of Plaintiff's Claim is the BBB Scheme to Aid BMW in Violating the Lemon Law.

In the context of an anti-SLAPP motion, the gravamen of the challenged claim is "the acts on which liability is alleged to be based." *People ex rel. Fire Ins. Exch. v. Anapol*, 211 Cal. App. 4th 809,

823 (2012) ("*Fire Ins. Exch.*") (internal citation omitted).  As the California Supreme Court has explained:

> [The phrase] "cause of action . . . arising from" means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.  In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech.

*City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (internal citations omitted).

Thus, it is established law that "a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant." *Fire Ins. Exch.*, 211 Cal. App. 4th at 822 (internal quotation marks and citations omitted).  Rather, "[i]f the allegations of protected activity are merely *incidental* to a cause of action based essentially on nonprotected activity, the allegations will *not* transform the nonprotected cause of action into an action subject to the anti-SLAPP law." *Id.* (emphasis added).  Allegations are incidental "[w]here the defendant's protected activity *will only be used as evidence* in the plaintiff's case, and none of the claims are based on it." *Id.* (emphasis added) (internal quotation marks omitted).

BBB's sole basis for the motion is that Plaintiff has detailed certain BBB interactions with legislative and administrative governmental bodies in the TAC and again in discovery responses.[1]

---

[1] BBB does not claim that Plaintiff's allegations of misrepresentations subject the TAC to a special motion to strike.  To the extent that BBB may make such a claim, it is without merit.  Subsection 425.17(c) exempts claims based on representations such as alleged in this case from a § 425.16 attack.  The elements of this exception are as follows:  (1) the cause of action is against a person primarily engaged in the business of selling services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's services; (3) the statement or conduct was made for the purpose of promoting the person's services; and (4) the intended audience for the statement were actual or potential customers.  *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 30 (2010); C.C.P. § 425.17(c).  Each element is satisfied in this case as follows: (1) BBB is in the business of providing warranty claims processing services; (2) Plaintiff's claim is based on BBB's representations regarding its services; (3) BBB made these representations in the course of promoting these services; and (4) the intended audience for these representations were potential customers, including Plaintiff.  [Docket No. 59, 4:27-5:9].

Plaintiff alleges in the TAC that:

> The BBB aided and abetted BMW in violating California law, in particular Civil Code §1793.2, and otherwise engaging in unfair competition by contracting with BMW and other car manufacturers to facilitate California warranty claims, *by soliciting consumers through misleading and deceptive information to retain the BBB for that service* . . .

[Docket No. 60, ¶81] (emphasis added).

> The BBB furnished the means and otherwise induced car companies, including BMW, to violate California law, and in particular Civil Code §1793.2, *by promoting itself to consumers as being an expert in California Lemon Law, as being neutral and trustworthy…* .

[Docket No. 60, ¶82] (emphasis added).

> This conduct was meant to mislead and confuse consumers and was used by BMW and others to seek improper reductions in lemon car repurchases, including repurchase of Plaintiff's car.

[Docket No. 60, ¶82].

However, Plaintiff does not allege that these activities are the basis of BBB's liability. Indeed, the Court acknowledged in the January 7, 2013 Order on BBB's motion to dismiss that the gravamen of Plaintiff's claim against BBB is that it entered into a scheme with BMW and aided and abetted BMW in violating the California Lemon Law:

> Kaiser claims that BBB misrepresents itself to the public as a neutral entity with legal expertise which provides unbiased advice and claims warranty services. Kaiser alleges that BBB uses these false representations to gain consumer trust so that consumers partake in its warranty claims processing program. Once consumers sign on to the program, BBB takes the position that BMW, as well as other car companies that participate in BBB's claims warranty services, may make deductions from the statutorily mandated repurchase price for excessive wear and tear, in violation of California's Lemon Law. This action, in turn, supports the participating car company's withholding of full legal compensation from the consumer.

[Docket No. 59, 4:27-5:9].

> The gravamen of Kaiser's UCL claim, as set forth above, is that BBB entered into a scheme with BMW, and aided and abetted BMW in violating the California Lemon Law. The alleged scheme, in which "BBB and BMW cooperated . . . to obtain financial gain," "was used by BMW and others to seek improper reductions in lemon car repurchases, including repurchase of Kaiser's car."

[Docket No. 59, 7:14-17].

1    Evidence of BBB's involvement with the California Lemon Law legislative and rule-making
2 process may be relevant because it tends to establish that BBB is not neutral and its advice is not
3 unbiased.  It may also be relevant to the extent BBB claims that it did not knowingly aid and abet
4 BMW.  Long-term participation in the legislative and rulemaking process tends to establish knowledge
5 of the applicable laws and recognition of conduct that violates them.  However, such incidental
6 references to a protected activity do not subject an otherwise ordinary tort claim to a § 425.16 attack.
7 Accordingly, BBB's liability is not based on any protected activities.

8    **3.    References to  Protected Activities Are  Incidental to the Claim Against BBB.**
9    As noted above, references to protected activity are incidental "[w]here the defendant's
10 protected activity will only be used as evidence in the plaintiff's case, and none of the claims are based
11 on it."  *Fire Ins. Exch.*, 211 Cal. App. 4th at 822; *see also Gallimore v. State Farm Fire & Casualty*
12 *Ins. Co.*, 102 Cal. App. 4th 1388, 1399 (2002) (protected communicative acts may serve as evidence of
13 liability without invoking the anti-SLAPP law where plaintiff does not seek relief from these
14 communicative acts).
15    Involvement with the Lemon Law legislative and rule making process may be relevant because
16 BBB's position favoring manufacturers tends to establish that—contrary to the representations that
17 BBB made in the course of aiding and abetting BMW—it is not neutral and its advice is not unbiased.
18 This evidence may also be relevant because it tends to establish BBB's deep understanding of the
19 California Lemon Law, which BBB appears to deny.  [Docket 77-1, 18:12-16].
20    It can be expected that BBB will seek to exclude references to its involvement with the Lemon
21 Law legislative and rule-making process from evidence under the Noerr-Pennington doctrine.  *See*
22 *generally Hernandez v. Amcord, Inc.*, 2013 Cal. App. LEXIS 299 (Apr. 18, 2013).  However,
23 exclusion of this evidence will not eliminate Plaintiff's claim against the BBB because, again, the
24 claim is not based on the allegedly protected activity.  Indeed, BBB appears to admit that the aiding
25 and abetting claim cannot possibly be based on the purportedly protected activities at hand.  As it
26 states in its proposed anti-SLAPP motion, "BBB could not have aided and abetted BMW through such
27 constitutionally protected activities when it did not even have a relationship with BMW at the time."
28 [Docket No. 77-1, 18:1-6].  Thus, even if BBB had never participated in the Lemon Law legislative

and rule making process, Plaintiff's claim regarding the BBB scheme to aid BMW in violating the law would be exactly the same.

## IV.　　CONCLUSION

Based on the foregoing, Plaintiff respectfully submits that the Court should deny BBB's motion to file a late anti-SLAPP motion.

Dated: April 30, 2013　　　　　　　　　KAISER GORNICK LLP

　　　　　　　　　　　　　　　　　By: /s/ Lawrence J. Gornick
　　　　　　　　　　　　　　　　　　　LAWRENCE J. GORNICK
　　　　　　　　　　　　　　　　　　　DENNIS J. CANTY
　　　　　　　　　　　　　　　　　　　NICHOLAS A. DEMING

　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　JEFFREY A. KAISER

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Roger S. Raphael<br>Shahram Nassi<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>One Sansome Street, Suite 1400<br>San Francisco, CA 94104<br>Telephone: (415) 362-2580<br>Facsimile: (415) 434-0882<br>raphael@lbbslaw.com<br>nassi@lbbslaw.com<br><br>Attorneys for BMW OF NORTH AMERICA, LLC | Stephen A. Scott<br>Dara M. Tang<br>HAYES SCOTT BONINO ELLINGSON & McLAY, LLP<br>203 Redwood Shores Pkwy., Ste. 480<br>Redwood City, CA 94065<br>Telephone: (650) 637-9100<br>Facsimile: (650)637-8071<br>sscott@hayesscott.com<br>dtang@hayesscott.com<br><br>Attorneys for COUNCIL OF BETTER BUSINESS BUREAUS, INC. |

By: /s/ Lawrence J. Gornick
Lawrence J. Gornick