United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY A. KAISER,<br><br>    Plaintiff,<br><br>    v.<br><br>BMW OF NORTH AMERICA, LLC, et al.,<br><br>    Defendants.<br>_____/ | No. C-12-01311 DMR<br><br>**ORDER ON JOINT DISCOVERY LETTER OF FEBRUARY 28, 2013 [DOCKET NO. 69], JOINT DISCOVERY LETTER OF MARCH 8, 2013 [DOCKET NO. 70], and JOINT DISCOVERY LETTER OF APRIL 30, 2013 [DOCKET NO. 84]** |

    Before the court are the joint discovery letters of Plaintiff Jeffrey Kaiser ("Plaintiff") and Defendant BMW of North America, LLC ("BMW") dated February 28, 2013 ("Feb. 28 Letter") [Docket No. 69] and March 8, 2013 ("March 8 Letter") [Docket No. 70]. In both letters, Plaintiff seeks discovery from BMW. The court held a hearing on April 18, 2013, after which the parties were ordered to meet and confer on several remaining issues. The parties met and conferred, then submitted another joint discovery letter on April 30, 2013 ("April 30 Letter") [Docket No. 84] regarding two issues about which they were unable to agree. The court finds that the matters raised in the April 30 Letter are appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b).

    For the reasons stated below and at the hearing, Plaintiff's motions to compel responses to these requests are granted in part and denied in part.

# I. BACKGROUND

This case arises from Plaintiff's purchase of a BMW car (the "Vehicle") for $59,219.22 in July 2008. In connection with this purchase, Plaintiff received an express written warranty (the "Warranty"), under which BMW undertook to preserve or maintain the utility or performance of the Vehicle or, in the case that there was a failure in utility or performance for a specified period of time, to provide compensation. In November 2009, after five trips to the repair shop over the course of a year, the dealer failed to fix problems with the Vehicle's restraint system. In May 2011, Plaintiff submitted to optional procedures for warranty claims processing through Defendant Council of Better Business Bureaus ("BBB"), which is not a party to these discovery disputes. Subsequently, BMW sent Plaintiff an agreement offering to repurchase the Vehicle for $56,089.62, but later informed Plaintiff that the repurchase price would be reduced by $3,224.34 to account for excessive wear and tear. Plaintiff rejected this repurchase offer and submitted to arbitration before a BBB arbitrator, as required by the Warranty. The arbitrator concluded that BMW was entitled to reduce the repurchase price to account for excessive wear and tear. Plaintiff then brought this lawsuit asserting five causes of action: (1) violation of the Song-Beverly Consumer Warranty Act (colloquially known as the California "Lemon Law"); (2) breach of express warranty; (3) breach of implied warranty of fitness and merchantability; (4) unfair, fraudulent, and unlawful business practices, Cal. Bus. and Prof. Code § 17200 (the "UCL"); and (5) violation of the Consumers Legal Remedies Act.[1]

# II. DISCUSSION

## A. Discovery Regarding Similar Transactions Between BMW and Other California Consumers

Plaintiff has requested detailed information about similar Lemon Law transactions between BMW and California consumers. *See* Feb. 28 Letter at Ex. 1, Interrogatory No. 7 and RFP Nos. 2-12. Nearly all of these requests focus on "INCIDENTS," defined to include a multitude of situations where BMW (a) took or attempted to take a deduction for wear and tear, (b) requested or required

---

[1] Plaintiff asserts all five claims against BMW. Plaintiff brings his UCL against both BMW and BBB.

2

repairs to a vehicle as a condition of repurchase, or © represented to any consumer that the same was permitted by law. Plaintiff's discovery requests seek:

- "All communications with BBB related to any INCIDENT . . . ." RFP No. 2.
- "All documents related to any BBB arbitration involving an INCIDENT." RFP No. 3.
- "All communications with BMW's agents . . . regarding an INCIDENT."
- "All communications with dealers . . . regarding an INCIDENT." RFP No. 5.
- "All communications with California Department of Consumer Affairs relating to an INCIDENT." RFP No. 6.
- "All internal email, correspondence, memoranda, database records, or other documents or communications related to an INCIDENT." RFP No. 7.
- "All communications with any other auto manufacturer regarding an INCIDENT." RFP No. 8.
- "All communications with any vehicle purchaser regarding an INCIDENT." RFP No. 9.
- "Documents sufficient to identify . . . all vehicle purchasers involved in an INCIDENT." RFP No. 10, Interrogatory No. 7.
- "All other documents related to any INCIDENT." RFP No. 11.
- "All documents related to BBB's Arbitration Rule 3(F) [permitting deductions for excess wear and tear]." RFP No. 12.

Plaintiff argues that these discovery requests are relevant for several reasons. First, they are relevant to Plaintiff's UCL claim, which alleges that BMW's conduct is not an isolated incident, but part of pervasive and continuing business practices that include "making unfair, deceptive, untrue, and/or misleading statements to consumers such as Plaintiff regarding vehicle repurchase rights and obligations" and "charging, permitting, and/or upholding unlawful and fraudulent deductions in vehicle repurchase transactions." Third Amended Complaint ("TAC") [Docket No. 60] ¶ 79; Feb. 28 Letter at 2. Plaintiff argues that the requested discovery will show that the public regularly has been deceived by BMW's practices. In addition, Plaintiff asserts that evidence of similar behavior toward other consumers could show that BMW acted in bad faith and deliberately violated the Lemon Law, supporting an award of a civil penalty and punitive damages.

Discovery must, of course, be relevant to a claim or defense. Fed. R. Civ. Proc. 26(b)(1). The information Plaintiff seeks generally is relevant to establishing the legal elements of his asserted claims. The UCL is "directed toward the public's right to protection from fraud, deceit, and unlawful conduct." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 877 (1999). Thus, to state a claim under the UCL, "a plaintiff need not plead and prove the elements of a tort. Instead, one need only show that members of the public are likely to be deceived." *Id.* at 878 (citations omitted). However, the plaintiff is not required to show that any members of the public

1 were *actually* deceived. "Allegations of actual deception, reasonable reliance, and damage are
2 unnecessary. Further, the statute authorizes courts to order restitution without individualized proof
3 of deception, reliance, and injury if necessary to prevent the use or employment of an unfair
4 practice." *Id.* at 878, 888 ("This means that a section 17200 violation, unlike common law fraud,
5 can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained
6 any damage."). A civil penalty under the Lemon Law should be awarded if Defendant "knew of its
7 obligations but intentionally declined to fulfill them." *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d
8 878, 894 (1989). In determining punitive damage liability, a trier of fact appropriately may consider
9 "illegal or wrongful conduct toward others that was similar to the tortious conduct that injured the
10 plaintiff," because "a civil defendant's recidivism remains pertinent to an assessment of culpability."
11 *Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1204 (2005). Thus, discovery regarding similar
12 incidents involving BMW and other California consumers is relevant to the claims asserted by
13 Plaintiff.

14 However, discovery must not only be relevant; it must also be proportional to the issues and
15 needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent
16 of discovery otherwise allowed by these rules or by local rule if it determines that . . . (I) the
17 discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other
18 source that is more convenient, less burdensome, or less expensive . . . or (iii) the burden or expense
19 of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount
20 in controversy, the parties' resources, the importance of the issues at stake in the action, and the
21 importance of the discovery in resolving the issues.").

22 Here, Plaintiff seeks extensive discovery regarding potentially hundreds of consumer
23 transactions.[2] BMW claims undue burden, in that each file would have to be reviewed for redaction

---

[2] BMW represents that it buys back 2,200 to 2,300 vehicles in California each year and maintains computerized files for each of these repurchase transactions. Of these, BMW confirmed that there are several hundred buy back transactions that would fall within the Plaintiff's description of consumers who were involved in "INCIDENTS." The parties attached an example of the type of document Plaintiff seeks for each such consumer. Exhibit 2 to the Feb. 28 Letter is a "Service Request Detail" that describes Plaintiff's interactions with BMW regarding his buy back request. It consists of 38 pages of small print type, excluding the eight attachments listed on the first page. The record includes the text of emails between Plaintiff, a representative assigned to the buy back request, and other

of non-responsive material, a process which could consume hundreds of hours. BMW also argues that Plaintiff's requests implicate the privacy rights of the third-party consumers. The court agrees that the breadth and burden presented by Plaintiff's discovery outweighs its benefits. During the December 20, 2012 status conference, this court stated that Plaintiff would be entitled to some information beyond the single buy back transaction at issue, but did not rule on the exact scope of that discovery, because that question had not yet been explored by the parties and presented to the court. The court also noted that this lawsuit involves a single plaintiff rather than a putative class, so discovery requests suitable to class actions would be inappropriate. Plaintiff's requests may well be appropriate for a class case, but not for this single transaction lawsuit.

None of the cases cited by Plaintiff involve pervasive discovery into the defendant's conduct toward other customers on the scale of Plaintiff's discovery requests. In *BMW of North America v. Gore*, where the respondent was awarded punitive damages, the respondent presented aggregated numerical data about BMW's failure to advise customers of predelivery damage to new cars. 517 U.S. 559 (1996) ("To support his claim for punitive damages, Dr. Gore introduced evidence that since 1983 BMW had sold 983 refinished cars as new, including 14 in Alabama, without disclosing that the cars had been repainted before sale at a cost of more than $300 per vehicle."). In *Johnson*, where plaintiffs were also awarded punitive damages, "plaintiffs at trial presented evidence of Ford's corporate policies and practices regarding reacquisition of vehicles" via the testimony of the defendant's regional customer service manager. 35 Cal. 4th at 1198.

Requiring BMW to respond with aggregated information on similar consumer transactions strikes the proper balance between permitting relevant discovery and limiting the scope and burdens of the discovery to what is proportional to the case. During the hearing, the court directed the parties to meet and confer regarding the exact aggregated data that BMW would produce to Plaintiff. As guidance, the court suggested that the data might include (1) the total number of buy backs that BMW had made in California during the relevant time period; (2) the number of those buy backs in

---

individuals involved in resolving the request. These communications address matters ranging from scheduling around Plaintiff's vacation dates and doctor's appointments to internal communications between the representative and the individual apparently responsible for representing BMW's interests at the BBB arbitration.

1 which BMW had charged a deduction for excess damage or wear and tear; (3) the number of those
2 buy backs in which the car was repurchased for an amount that included the deduction charged for
3 excess wear and tear; (4) the month and year in which each buy back occurred; (5) an indication of
4 whether the BBB was involved in the transaction; and (6) the nature of the BBB's involvement in
5 the transaction.

### B. Discovery Regarding BMW's Actions after *Gezalyan*

Another contested area of discovery investigates BMW's reaction to the decision in *Gezalyan v. BMW*, 697 F.Supp.2d 1168 (C.D. Cal. 2010). In that case, BMW offered to repurchase the plaintiff's car after it experienced repeated problems with its braking and traction control system. BMW imposed several conditions on repurchase, including a deduction for excess wear and tear. The plaintiff rejected the repurchase offer and sued under the Song-Beverly Consumer Warranty Act. A year later, BMW repurchased the car without the conditions. The *Gezalyan* court held that the plaintiff was the "prevailing party" for purposes of awarding fees and costs to her.

Plaintiff argues that "[c]ertainly no later than the date of that decision, BMW knew that its conduct was illegal: that charges or deductions for 'physical damage to the car' in the course of buy backs were not permitted by California law." March 8 Letter at 2. Plaintiff has served three interrogatories and one request for production of documents asking BMW to describe "all investigative or corrective steps taken by BMW . . . following [the *Gezalyan*] decision, to ensure that BMW's policies, procedures and practices did not require California consumers to 'pay to repair any physical damage'," related documents, and knowledgeable individuals. *Id* at Ex. 1.

BMW argues two points in response. First, BMW objects to Plaintiff's characterization of the *Gezalyan* decision and asserts that the portions of the *Gezalyan* opinion cited by Plaintiff are dicta because the court did not squarely address the legality of the repurchase conditions on the plaintiff. Second, BMW argues that it has substantively responded to the discovery requests. BMW's responses to the requests state:

> The repurchase offers made to Plaintiff, which were made subsequent to the Gezalyan [sic] case, differed from the terms set forth in the portion of the *Gezalyan* order quoted in this Interrogatory, in material respects. These differences are apparent from on [sic] the face of the agreement in plaintiffs [sic] possession . . . .

6

> [S]ome time after the *Gezalyan* decision, Defendant changed the terms under which it offered repurchases to certain California customers. The changes are embodied in the agreement that was negotiated and signed by Plaintiff in this matter. Prior to the *Gezalyan* decision, Defendant used a different vehicle repurchase agreement, which contained the terms referenced in the *Gezalyan* decision.

*Id.* at Interrogatory No. 1.

These responses are insufficient. As BMW's counsel stated at the hearing, BMW's policies regarding repurchases changed at some point after the *Gezalyan* decision was published. It is not enough to simply point to language in two repurchase agreements and state that a comparison of the two would reveal the changes. BMW must produce documents and interrogatory responses that respond directly and forthrightly to the requests. To the extent BMW asserts that the requested materials are subject to the attorney-client or attorney work product privileges, BMW must promptly produce a detailed privilege log pursuant to this court's Standing Order. If, however, BMW asserts an advice of counsel defense,[3] the attorney-client and attorney work product privileges may no longer attach.

With regard to the interrogatory which requests the identities of all persons with knowledge regarding similar incidents, BMW stated that it is "willing to supplement its response to identify the legal personnel involved, without waiving any privilege or conceding that depositions of its counsel would ever be proper." March 8 Letter at 4. BMW accordingly shall supplement its response to Interrogatory No. 3 to identify the legal personnel involved and also to specify the names and contact information of the people currently described in the response as the "Service representatives at BMW Concord . . . who serviced the subject vehicle."

**C. Discovery Regarding Communications re: Legality of Deductions**

Plaintiff's RFP No. 13 seeks "[a]ll documents related to whether it is lawful or permissible for an auto manufacturer" to (a) deduct wear and tear or (b) require repairs in the course of a repurchase, or represent to a consumer that (a) or (b) are permitted by California law. March 8 Letter at Ex. 1, RFP No. 13. "This includes (without limitation) internal correspondence and

---

[3] The parties did not brief the question of whether an advice of counsel defense may be asserted as to any of the claims in this case. At the hearing, the court flagged this as a potential issue. BMW's counsel stated at the ~~April 18, 2013~~ hearing that BMW had not yet determined whether it would be asserting such a defense.

7

memoranda, and communications with the California Department of Consumer Affairs, BBB, any auto manufacturer, or any vehicle purchaser." *Id.*

To the extent that this RFP seeks "the body of California statutory, decisional, and regulatory law that will determine Plaintiff's legal claims," as BMW believes it does, it is not appropriate to place the burden for the legal research on BMW. *Id.* at 5.

However, to the extent BMW has documents describing how employees should handle repurchase deductions for damages or wear and tear (e.g., policies, memoranda, guidelines or instructions), those documents are discoverable unless BMW asserts that they are protected by a privilege (subject to the same conditions for the assertion of privilege described above). BMW shall also produce communications between any individuals, including internal BMW communications or communications with other consumers, that involve the question of whether a deduction for damage or wear and tear is legal.

### D. Discovery Regarding Steps Taken to Ensure Conformity with Civil Code § 1793.20(d)(2)(C)

Plaintiff propounded discovery seeking a description of the "steps taken by BMW to ensure that its business practices in California are in conformity with California Civil Code § 1793.2(d)(2)(C) [the statute prescribing the formula for calculating the repurchase price of lemons]," and related documents and witnesses. *Id*. at Ex. 1, Interrogatory Nos. 8-10. BMW's response is as follows:

> Defendant's "business practices" in the state of California, as applied to the plaintiff in this action, were to calculate the amount directly attributable to use by the buyer in accord with the formula set forth in section 1793.2(d)(2)© and the terms of plaintiffs [sic] agreement, and to adjust the amount payable to the buyer in accord with that formula. Section 1793.2(d)(2)© does not preclude the application of other adjustments based on equitable principles, when a buyer, as here, returns a vehicle in damaged condition or with missing parts and accessories.

*Id.* at Ex. 1, Interrogatory No. 8. In addition, BMW states that "it adjusts a customer's repurchase price . . . in accordance with that formula . . . [and] has produced documents, including a document explicitly performing that calculation, in the plaintiff's case." *Id*. at 6. As with the responses to the discovery requests regarding *Gezalyan*, BMW's responses here are insufficient. BMW's responses must explain, at the least, its repurchase policies, any changes to the repurchase policies, and the

dates of those changes during the relevant time period. In addition, BMW must provide a more complete description of what is currently described as "other adjustments based on equitable principles . . . when a buyer . . . returns in vehicle in damaged condition or with missing parts and accessories."

### E. Relevant Time Frame

Plaintiff and BMW disagree about the relevant time frame for the discovery requests addressed above. Plaintiff wants a time frame of ten years; BMW wants five. The relevant temporal scope of discovery is late 2007 to the present, which is roughly five years back from the filing of the complaint. Such a time period should capture the last quarter of 2007, which is when BMW began tracking vehicles on which damage deductions were requested or paid. This time period is appropriate in light of the fact that Plaintiff purchased the Vehicle in July 2008, and Plaintiff's buy back dispute arose in 2011.

### F. Redaction of Identifying Information

Plaintiff and BMW also disagree about BMW's intention to assert consumer privacy rights as a basis for redacting customer identifying information from any communications by other consumers regarding the legality of damage deductions. April 30 Letter at 2. It is unclear to the court whether any responsive information actually exists. The court declines to rule on the issue in a vacuum. If, after BMW conducts a search for responsive documents, BMW discovers that those documents contain customer identifying information, it shall meet and confer with Plaintiff about the redaction of any customer identifying information. The parties shall submit a joint discovery letter pursuant to this court's Standing Order if they are still unable to resolve the issue.

//
//
//
//
//
//
//

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motions to compel further responses to discovery are granted in part. At the hearing, the parties were ordered to meet and confer regarding an appropriate response and production deadline.

IT IS SO ORDERED.

Dated: May 2, 2013

DONNA M. RYU
United States Magistrate Judge